1   ROBERT W. FERGUSON
*Attorney General*

2

3   RENE D. TOMISSER, WSBA #17509
*Senior Counsel*
JEFFREY T. SPRUNG, WSBA #23607

4   ZACHARY P. JONES, WSBA #44557
JOSHUA WEISSMAN, WSBA #42648

5   PAUL M. CRISALLI, WSBA #40681
NATHAN K. BAYS, WSBA #43025

6   BRYAN M.S. OVENS, WSBA #32901
*Assistant Attorneys General*

7   8127 W. Klamath Court, Suite A
Kennewick, WA 99336

8   (509) 734-7285

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON
AT RICHLAND**

| | |
|---|---|
| STATE OF WASHINGTON, et al., | NO. 4:19-cv-05210-RMP |
| Plaintiffs, | DECLARATION OF SARAH POLK IN SUPPORT OF PLAINTIFF STATES' MOTION FOR § 705 STAY PENDING JUDICIAL REVIEW OR FOR PRELIMINARY INJUNCTION |
| v. | |
| UNITED STATES DEPARTMENT OF HOMELAND SECURITY, a federal agency, et al. | |
| Defendants. | NOTED FOR: October 3, 2019 With Oral Argument at 10:00 a.m. |

I, Sarah Polk, M.D., Sc.M., declare as follows:

1. I am over the age of 18, competent to testify as to the matters herein and make this declaration based on my personal knowledge.

2. I submit this Declaration in support of the State of Maryland's litigation against the United States Department of Homeland Security regarding

DECLARATION OF SARAH POLK
NO. 4:19-CV-05210-RMP

1

ATTORNEY GENERAL OF WASHINGTON
8127 W. Klamath Court, Suite A
Kennewick, WA 99336
(509) 734-7285

the recently issued rule entitled Inadmissibility on Public Charge Grounds (Final Rule). The information in the statements set forth below is based on my personal knowledge.

3. I am a primary care pediatrician and Medical Director of the Children's Medical Practice at the Johns Hopkins Bayview Medical Center (JHBMC).[1] I am an Assistant Professor of Pediatrics at the Johns Hopkins' School of Medicine. I received my undergraduate degree at Amherst College, my medical degree at Johns Hopkins and training in Epidemiology and Clinical Investigations at the Johns Hopkins Bloomberg School of Public Health.

4. I co-founded and co-direct the Center for Salud/Health and Opportunity for Latinos (Centro SOL). The mission of Centro SOL is to promote equity in health and opportunity for Latinos by advancing clinical care, research, education, and advocacy at Johns Hopkins and beyond in active partnership with our Latino neighbors.

5. The Children's Medical Practice (CMP) and Centro SOL provide complementary services; services designed in consultation with community members. The CMP is a primary care pediatric practice while Centro SOL offers community programming that promotes the health and wellbeing of the Latino community beyond the healthcare setting. Centro SOL's activities also include efforts to improve healthcare delivery for limited English proficient Latino patients

---

[1] The opinions expressed herein are my own and do not necessarily reflect the views of The Johns Hopkins University.

DECLARATION OF SARAH POLK
NO. 4:19-CV-05210-RMP

2

ATTORNEY GENERAL OF WASHINGTON
8127 W. Klamath Court, Suite A
Kennewick, WA 99336
(509) 734-7285

and to increase the diversity of the healthcare workforce through educational outreach.

6. The CMP is an urban, academic general pediatric practice. The majority clinic population is Latino children in immigrant families. In 2015, the CMP served 11,979 Latino children, a 10% increase over 2014. Most Latino parents have limited English proficiency. The clinic has prioritized availability of language concordant services and has Spanish-speaking staff and clinicians, many of whom are also bicultural. Baltimore is a new-destination Latino immigrant city. The city's Latino population has nearly tripled since 2000. While Latinos comprise 4.4% of the total city population, the Latino population is concentrated around JHBMC; surrounding census tracts are 20-40% Latino.

7. I understand that the U.S. Department of Homeland Security (DHS) has issued a new regulation on the public charge ground of inadmissibility under the Immigration and Nationality Act, which I have reviewed. As I understand it, the Public Charge Rule would allow the federal government to expand its consideration of a person's past use of public benefits and future need for public assistance in determining whether someone should be eligible for lawful permanent residency, a new visa, or for an extension of stay or change of stay from an existing visa. I understand that DHS would consider use of one of several specific benefits for a duration of 12 months within a 36 month period to be a heavily weighted negative factor in a public charge determination.

DECLARATION OF SARAH POLK
NO. 4:19-CV-05210-RMP

3

ATTORNEY GENERAL OF WASHINGTON
8127 W. Klamath Court, Suite A
Kennewick, WA 99336
(509) 734-7285

8. As a result of that change, I believe the Final Rule will reduce the use of Medicaid, nutritional assistance, and other critical services among the families that our clinic serves, including among groups of immigrants that are not actually covered by the Final Rule.

**Description of Centro SOL**

9. The mission of Centro SOL is to promote equity in health and opportunity for Latinos by advancing clinical care, research, education and advocacy at Johns Hopkins and beyond in active partnership with our Latino neighbors. Under the umbrella of Centro SOL, faculty, students, trainees and staff work in five core areas, Community Engagement, Research, Clinical Care, Pipeline Development and Equity.

10. The Centro SOL program serves all clients without respect to immigration status. Our vision is that all Latinos receive culturally competent healthcare that acknowledges the diversity of the community and respects the dignity of each individual.

11. Centro SOL receives grant support. The Children's Medical Practice, in which Centro SOL quality improvement efforts are embedded, receives reimbursement from public and private insurers for clinical care.

DECLARATION OF SARAH POLK
NO. 4:19-CV-05210-RMP

4

ATTORNEY GENERAL OF WASHINGTON
8127 W. Klamath Court, Suite A
Kennewick, WA 99336
(509) 734-7285

**Harms to Centro SOL and the Baltimore Community**

12. The Children's Medical Practice provides essential pediatric care for thousands of children in Baltimore. This care allows children to develop normally, succeed in school, and become productive adults.

13. The public charge rule fundamentally threatens the quality of care we provide and the community's access to services.

14. The rule seriously undermines access to care for our patients. If patients do not sign up for Medicaid services, we have far fewer options for referral and care, and some forms of treatment may be inaccessible to them. We expect that more families will forgo preventive care, leading to a greater risk of preventable outbreaks, asthma, and other ailments.

15. Under the Final Rule, The Department is proposing to expand the use of medical exams in the immigration process. I understand that DHS officials will search medical evaluations for evidence of conditions that "will require extensive medical treatment or institutionalization after arrival" or will "interfere with the ability to care for him or herself to attend school or to work." Such evidence can be used to support a determination that a person will become a "public charge," even if the conditions "are treatable and the person may in the future be able to work or attend school."

16. The definition of medical ailment adopted by the Department is so broad as to lack real meaning. What illness does not "interfere with the ability to

DECLARATION OF SARAH POLK
NO. 4:19-CV-05210-RMP

5

ATTORNEY GENERAL OF WASHINGTON
8127 W. Klamath Court, Suite A
Kennewick, WA 99336
(509) 734-7285

1 attend school or to work"? Even the common cold interferes. A patch of eczema 2 can interfere. The result is that virtually anything I or another physician might 3 write in an exam could be used to affect an immigration determination. Indeed, a 4 finding of any such condition, combined with a lack of health insurance, would 5 constitute a "heavily weighted factor" under the rule. While DHS may be focused 6 on more debilitating conditions than the common cold or eczema, the lack of 7 boundaries provokes great unease. Clinicians will care for patients under the 8 threat that their documentation of the care they provide may be used to harm the 9 same patients they are trying to heal.

17. In the case of pediatric patients with serious medical conditions, clinicians will find it difficult to fulfill their professional obligation to "first do no harm," as stated in the Hippocratic Oath. For example, for an immigrant child with chronic health conditions resulting from a brain tumor, does deportation or lack of treatment for their health condition pose a greater threat to their health and wellbeing? The clinician caring for this child faces bad choices. The clinician could continue their care, but not document that care. This choice would increase the risk of medical errors and undermine the coordination of care. The clinician could continue care as usual and hope the record is never reviewed. This choice passes the risk to the family.

18. This rule therefore creates a fundamental conflict with the primary obligation of physicians to their patients.

DECLARATION OF SARAH POLK
NO. 4:19-CV-05210-RMP

6

ATTORNEY GENERAL OF WASHINGTON
8127 W. Klamath Court, Suite A
Kennewick, WA 99336
(509) 734-7285

**Harms to Our Patients**

19. Many of our patients and their families are aware of the public charge rule and although it often does not apply to them given their documentation status, it has already affected their receipt of public benefits for their eligible children. While many families in our care are food insecure, there has been a precipitous decline in applications for SNAP. Families have weighed the known harm of hunger and the potential harm of deportation, and have chosen to forego SNAP. This trend has been well-documented in the lay press. As reported in the Baltimore Sun, receipt of SNAP is used to calculate the poverty rate for local schools. Schools with very high rates of students in poverty receive supplemental federal Title I funding. Several Baltimore City schools with high numbers of Latino children in immigrant families lost critical Title I funding due to a drop in receipt of SNAP by parents due to fear of the public charge evaluation.

20. Clinicians fear a similar drop in applications for Medicaid for eligible children and adults. We have already observed cases of adults foregoing care, again balancing the harm of untreated medical conditions against the harm of deportation. The harm of foregone care is not limited to individuals, but extends to families and communities—an example from my practice is illustrative. Mr. X has diabetes, is in the naturalization process, and has three children including an infant daughter. Mr. X has steady employment at a low-

DECLARATION OF SARAH POLK
NO. 4:19-CV-05210-RMP

7

ATTORNEY GENERAL OF WASHINGTON
8127 W. Klamath Court, Suite A
Kennewick, WA 99336
(509) 734-7285

wage job and Mrs. X cares for their children. The family previously received SNAP for their two eligible children. The family chose to stop receiving SNAP out of fear it would prejudice Mr. X's immigration case. They are considering suspending Mr. X's Medicaid for the same reason. They must balance the harm of the deportation of Mr. X with the harm of having his diabetes go untreated. It would be very hard for the family to survive without Mr. X's salary. His salary is contingent upon both his employment in the US and that he is healthy enough to work.

21. Because of the fear in our community, care for all of our patients will be affected.

22. Forgoing necessary medical care is dangerous for children. The consequences can range from trouble learning in school to serious, life-threatening challenges. The stakes are even higher for children with cancer, developmental abnormalities, and other chronic illnesses. There is no question that it is conceivable that the consequences can include serious illness, injury, and death.

23. Further, the Final Rule expressly counts benefits received as a child for a determination of whether an applicant will be a public charge in the future. Given that medical care, nutrition, and housing for children foster educational promise and economic performance, this policy runs counter to the purported objective of reducing future dependence. Moreover, this provision will have the

DECLARATION OF SARAH POLK
NO. 4:19-CV-05210-RMP

8

ATTORNEY GENERAL OF WASHINGTON
8127 W. Klamath Court, Suite A
Kennewick, WA 99336
(509) 734-7285

effect of harming the health and wellbeing of the children whose families choose not to apply for essential benefits.

I declare under penalty of perjury under the laws of the State of Washington and the United States that the foregoing is true and correct.

DATED this 29th day of August, 2019, at Baltimore, Maryland.

_____
SARAH POLK, M.D., Sc.M.

DECLARATION OF SARAH POLK
NO. 4:19-CV-05210-RMP

9

ATTORNEY GENERAL OF WASHINGTON
8127 W. Klamath Court, Suite A
Kennewick, WA 99336
(509) 734-7285

**DECLARATION OF SERVICE**

I hereby declare that on this day I caused the foregoing document to be electronically filed with the Clerk of the Court using the Court's CM/ECF System which will serve a copy of this document upon all counsel of record.

DATED this 6th day of September, 2019, at Tumwater, Washington.

*/s/ Sara M. Cearley*
SARA M. CEARLEY
Paralegal

DECLARATION OF SARAH POLK
NO. 4:19-CV-05210-RMP

10

ATTORNEY GENERAL OF WASHINGTON
8127 W. Klamath Court, Suite A
Kennewick, WA 99336
(509) 734-7285