ROBERT W. FERGUSON
*Attorney General*

RENE D. TOMISSER, WSBA #17509
*Senior Counsel*
JEFFREY T. SPRUNG, WSBA #23607
ZACHARY P. JONES, WSBA #44557
JOSHUA WEISSMAN, WSBA #42648
PAUL M. CRISALLI, WSBA #40681
NATHAN K. BAYS, WSBA #43025
BRYAN M.S. OVENS, WSBA #32901
*Assistant Attorneys General*
8127 W. Klamath Court, Suite A
Kennewick, WA 99336
(509) 734-7285

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON
AT RICHLAND**

| | |
|---|---|
| STATE OF WASHINGTON, et al., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF HOMELAND SECURITY, a federal agency, et al. <br><br> Defendants. | NO. 4:19-cv-05210-RMP <br><br> DECLARATION OF PATRICK J. CAREY IN SUPPORT OF PLAINTIFF STATES' MOTION FOR § 705 STAY PENDING JUDICIAL REVIEW OR FOR PRELIMINARY INJUNCTION <br><br> NOTED FOR: October 3, 2019 With Oral Argument at 10:00 a.m. |

DECLARATION OF PATRICK J. CAREY
NO. 4:19-cv-05210-RMP

i

ATTORNEY GENERAL OF WASHINGTON
8127 W. Klamath Court, Suite A
Kennewick, WA 99336
(509) 734-7285

I, Patrick J. Carey, declare as follows:

1. I am over the age of 18, competent to testify as to the matters herein and make this declaration based on my personal knowledge.

2. I submit this Declaration in support of the Commonwealth of Virginia's litigation against the United States Department of Homeland Security (DHS) regarding the recently issued rule entitled Inadmissibility on Public Charge Grounds (Final Rule). I have compiled the information in the statements set forth below either through personal knowledge, through the Virginia Housing Development Authority (VHDA) personnel who have assisted me in gathering this information, or on the basis of documents that I have reviewed. I have also familiarized myself with the Final Rule in order to understand its immediate impact upon VHDA.

3. I am the Chief of Program Strategy and Chief Financial Officer for VHDA since February 2018. I joined VHDA in 1987 as Finance Manager and served as Finance Director or Director of Finance from June 2003 to February 2013 and then as the Managing Director of Finance until February 2018. I am a graduate of the University of Richmond and have a Master of Business Administration degree from Virginia Commonwealth University. I possess over 30 years of experience in affordable housing policy and administration.

4. As Chief of Program Strategy and Chief Financial Officer, I work directly with the Virginia Secretary of Commerce and Trade on high-level policy

DECLARATION OF VIRGINIA HOUSING DEVELOPMENT AUTHORITY
NO. 4:19-CV-05210-RMP

1

ATTORNEY GENERAL OF WASHINGTON
8127 W. Klamath Court, Suite A
Kennewick, WA 99336
(509) 734-7285

and strategic issues. I am on the leadership team of VHDA, which includes four offices, more than 400 staff members, and a wide range of programs and projects. VHDA oversees a broad portfolio of services and works extensively with state, local, tribal and community partners to improve the housing needs of all residents of the Commonwealth of Virginia. VHDA is completely self-supporting and receives no state appropriation (other than an initial advance, which VHDA has repaid) or direct federal funding. The Commonwealth of Virginia has no legal obligation for the debts (i.e. the notes and bonds) of VHDA.

5. The following is a description of VHDA, including the number of residents it serves, demographics of residents served, and services provided to residents that are relevant to the Final Rule.

VHDA was created in the Code of Virginia as political subdivision of the Commonwealth of Virginia constituting a public instrumentality. It was established in 1972 to assist in meeting the needs and achieving the objectives of the Commonwealth with respect to housing for persons and households of low and moderate income. The principal office of VHDA is located at 601 South Belvidere Street, Richmond, Virginia 23220, telephone: (804) 782-1986. VHDA's website address is www.vhda.com.

The following is a summary of VHDA's primary programs.

DECLARATION OF VIRGINIA HOUSING DEVELOPMENT AUTHORITY
NO. 4:19-CV-05210-RMP

2

ATTORNEY GENERAL OF WASHINGTON
8127 W. Klamath Court, Suite A
Kennewick, WA 99336
(509) 734-7285

### A. Mortgage Lending Programs

VHDA was established to serve as a state mortgage finance agency. VHDA has two primary mortgage lending programs, its rental housing (multi-family) program and its homeownership (single-family) program.

(i) Rental Housing Loan Program. VHDA makes rental housing mortgage loans in Virginia to provide construction and permanent financing for multi-family housing developments. Such loans are financed from the proceeds of taxable bonds, tax-exempt bonds and its own net assets. Such developments are subject to the income limits and other regulatory requirements imposed by VHDA and, if applicable, the rules and regulations associated with tax-exempt bonds. VHDA is the allocating agency for the federal low-income housing tax credit program (LIHTC) in Virginia. Many developments financed under VHDA's rental housing loan program since 1987 are assisted under the LIHTC program and are subject to the income limits imposed by the federal-low income housing tax credit program. VHDA's enabling legislation authorizes VHDA to finance mixed income developments, and in connection therewith commercial space, subject to certain limitations. In addition, VHDA has financed and may in the future finance developments that are assisted by HUD's Rental Assistance

DECLARATION OF VIRGINIA
HOUSING DEVELOPMENT
AUTHORITY
NO. 4:19-CV-05210-RMP

3

ATTORNEY GENERAL OF WASHINGTON
8127 W. Klamath Court, Suite A
Kennewick, WA 99336
(509) 734-7285

Demonstration Program (the RAD Program), the HUD 236 Program, the U. S. Department of Agriculture's Section 515 program, the Section 8 Program and HUD Risk Share Program. VHDA services all of the rental housing loans it makes. As of June 30, 2019, there are approximately 1,165 rental housing mortgage loans outstanding comprised of approximately 60,000 units in the aggregate amount of approximately $3.3 billion that VHDA owns and services.

(ii) <u>Homeownership Loan Program</u>. VHDA also provides mortgage assistance to low- and moderate-income homebuyers. Under its current single family program, VHDA purchases and makes single family mortgage loans in Virginia from through the issuance of Government National Mortgage Association (Ginnie Mae) securities or securitizing through Federal National Mortgage Association (Fannie Mae) for financing and/or refinancing the ownership or rehabilitation, or ownership and rehabilitation, of owner-occupied single family residential housing, including condominium units, intended for occupancy by persons and households of low and moderate income. In addition, VHDA currently refinances certain single family mortgage loans. VHDA services all of the single family loans it purchases and makes. Prior to the implementation of the current homeownership program, VHDA made loans financed from the proceeds of taxable bonds, tax-exempt bonds and its own net

DECLARATION OF VIRGINIA
HOUSING DEVELOPMENT
AUTHORITY
NO. 4:19-CV-05210-RMP

4

ATTORNEY GENERAL OF WASHINGTON
8127 W. Klamath Court, Suite A
Kennewick, WA 99336
(509) 734-7285

assets. VHDA also makes down payment assistance loans and grants and has a mortgage credit certificate program. As of June 30, 2019, there are approximately 74,000 single-family mortgage loans outstanding in the aggregate amount of approximately $8.0 billion that VHDA either owns and services or services on behalf of Ginnie Mae or Fannie Mae.

B. <u>Federal Housing Rent Subsidy Programs</u>.

VHDA also administers the following federal housing rent subsidy programs in order to increase access to the housing units it finances for households with limited incomes.

(i) <u>Section 8 Housing Choice Voucher Program</u>. VHDA has contracted with the U. S. Department of Housing and Urban Development (HUD) to administer the Housing Choice Voucher program on behalf of local governments in Virginia not served by local public housing agencies. This program provides tenant-based rental subsidies for very-low income persons and families.

To participate in the program, eligible households apply to VHDA's local administrative agents. Once determined eligible, the household proceeds to locate an existing rental dwelling unit that meets the applicable housing quality standards. Once the household locates an acceptable unit, the administrative

DECLARATION OF VIRGINIA
HOUSING DEVELOPMENT
AUTHORITY
NO. 4:19-CV-05210-RMP

5

ATTORNEY GENERAL OF WASHINGTON
8127 W. Klamath Court, Suite A
Kennewick, WA 99336
(509) 734-7285

agent conducts a unit inspection; VHDA executes a Housing Assistance Payments Contract with the owner; the tenant and owner execute a Lease Agreement; the household takes occupancy; and the rental assistance payments are made directly to the owner. As long as the household remains in the program, income and household size verifications are performed at least annually, and each qualifying dwelling unit is likewise inspected at least annually.

VHDA's program is being implemented in partnership with 31 rural and urban administrative agencies in the state, and 9,400 households are being assisted with housing choice vouchers. Approximately $74 million of Section 8 Housing Assistance Payments subsidies was disbursed under this program in fiscal year 2018-2019. This represents 17% of the total HCVs in Virginia. The balance is administered by local public housing agencies.

(ii) <u>Section 8 Moderate Rehabilitation Housing Assistance Payments Program</u>. This program provides rental assistance to qualified families who occupy dwelling units rehabilitated with VHDA financing. This program is similar to the Section 8 Housing Choice Voucher Program described above, except that the Housing Assistance Payments Contract has a term of fifteen years and the subsidy is available only for the units which have been rehabilitated.

DECLARATION OF VIRGINIA
HOUSING DEVELOPMENT
AUTHORITY
NO. 4:19-CV-05210-RMP

6

ATTORNEY GENERAL OF WASHINGTON
8127 W. Klamath Court, Suite A
Kennewick, WA 99336
(509) 734-7285

Upon completion of the rehabilitation work, VHDA entered into a 15-year HAP Contract with the owner for the payment of rental subsidies based on HUD-approved rent levels. During the term of the HAP Contract, VHDA or its administrative agent adjusts rent levels and utility allowances, reviews tenant eligibility, inspects units, and performs other administrative responsibilities of contract administration.

VHDA is currently administering subsidy under this program for 40 housing units. Approximately $171,609 of Section 8 Housing Assistance Payments subsidies was disbursed under this program in fiscal year 2018-2019.

(iii) <u>Project-Based Section 8 Program</u>. This program provides rental subsidy to residents of newly constructed or substantially rehabilitated developments financed by VHDA prior to the mid-1980s. Under this program persons and families pay only 30% of their income as rent with the balance of the rental payment provided through a housing assistance payment from the federal government. In order to qualify, a person's income may generally not exceed 50% of the median income for the area as established by HUD. These Section 8 developments were subject to subsidy contracts with terms of 30 to 40 years co-terminus with their original VHDA mortgage loan. Expiring subsidy contracts

are being renewed on an annual basis and these housing developments are expected to remain a significant source of housing for very low income persons and families in the future.

VHDA is the contract administrator for 30 properties, totaling 2,111 units. The estimated number of tenants occupying these units is 4,397. The annual subsidy amount administered by VHDA is $18,184,512.

6. I understand that DHS has issued a new regulation on the public charge ground of inadmissibility under the Immigration and Nationality Act, which I have reviewed. As I understand it, the Final Rule would allow the federal government to expand its consideration of a person's past use of public benefits and future need for public assistance in determining whether someone should be eligible for lawful permanent residency, a new visa, or for an extension of stay or change of stay from an existing visa. I understand that DHS would consider use of one of several specific benefits for a duration of 12 months within a 36-month period to be a heavily weighted negative factor in a public charge determination. Most critically, these factors include programs crucial to resident health and basic needs, such as Section 8 Housing Choice Vouchers and Section 8 Project Based Rental Assistance.

DECLARATION OF VIRGINIA HOUSING DEVELOPMENT AUTHORITY
NO. 4:19-CV-05210-RMP

8

ATTORNEY GENERAL OF WASHINGTON
8127 W. Klamath Court, Suite A
Kennewick, WA 99336
(509) 734-7285

7. As a result of that change, I believe the Final Rule will deter low-income households containing both documented and undocumented immigrants from seeking essential housing assistance for which they are eligible.

**Description of Relevant Program(s)**

8. The following is an in-depth description of the programs and services VHDA provides that are relevant to the Final Rule, including an explanation as to how non-citizens are eligible for these programs, as well as how many non-citizens there are, if that data is available.

The Final Rule impacts the following federal programs that VHDA administers: Housing Choice Voucher Program and Section 8 Project Based Rental Assistance program.

Under the Welfare Reform Act and the Housing Community Development Act of 1980, lawful permanent residents and certain other qualified immigrants are eligible for Section 8 programs.

Regarding the Housing Choice Voucher Program, the program currently has 60 vouchers utilized/used by eligible non-citizen families. There are 6 non-eligible, non-citizen members in those households. In those 60 households, there are a total of 137 family members (6 of whom are the non-eligible, non-citizens).

DECLARATION OF VIRGINIA HOUSING DEVELOPMENT AUTHORITY
NO. 4:19-CV-05210-RMP

9

ATTORNEY GENERAL OF WASHINGTON
8127 W. Klamath Court, Suite A
Kennewick, WA 99336
(509) 734-7285

Corresponding information on the Section 8 Project Based Rental Assistance program is not available at this time.

9. The Center on Budget and Policy Priorities (CBPP) regularly collects data from HUD on federal rental assistance usage across the nation. CBPP's most recent tabulation of data for the State of Virginia shows that as of 2018, approximately 106,000 Virginia households used federal rental assistance in order to afford adequate shelter. Nationally, CBPP along with the National Low-Income Housing Coalition and other organizations that monitor both housing needs and rental subsidy usage, estimate that only 1 in 4 to 1 in 5 eligible households are able to obtain rental assistance. VHDA's analysis of rental housing needs in Virginia in 2013 was consistent with national estimates. Therefore, it can be assumed that between 400,000 and 500,000 Virginia households are currently eligible for federal rent subsidy assistance.

10. The Final Rule enumerates factors that will generally weigh heavily in favor of a finding that an immigrant is likely at any time to become a public charge. One such factor is that the immigrant has received, or has been certified or approved to receive, one or more public benefits for more than 12 months in the aggregate within any 36-month period, beginning no earlier than 36 months before the immigrant applied for admission or adjustment of status on or

DECLARATION OF VIRGINIA HOUSING DEVELOPMENT AUTHORITY
NO. 4:19-CV-05210-RMP

10

ATTORNEY GENERAL OF WASHINGTON
8127 W. Klamath Court, Suite A
Kennewick, WA 99336
(509) 734-7285

after Oct. 15, 2019. Because the HCVs and Section 8 Project-Based Rental Assistance are specifically defined as public benefits, this makes the individuals participating in such programs that much more vulnerable to the Final Rule.

**Harms to VHDA's Mission or Broader Harms**

11. The Final Rule will have a significant negative impact on the VHDA's mission to ensure the housing needs of all Virginians.

These negative impacts include:

    a. The Final Rule penalizes legally present immigrant families who access federally funded programs, even briefly, and despite the fact that they are legally eligible for such benefits;

    b. The Final Rule is likely to have a disparate impact on immigrants without wealth (including working families and families with children) and immigrants of color;

    c. The Final Rule may have a chilling effect on immigrant families accessing any public benefits, even those not expressly included in the Final Rule as "public benefits"; and

    d. The Final Rule has a negative impact on immigrants' ability to become upwardly mobile, impacting such programs as VHDA's homeownership programs.

All of the foregoing are at odds with VHDA's mission of providing affordable housing to Virginians.

DECLARATION OF VIRGINIA HOUSING DEVELOPMENT AUTHORITY
NO. 4:19-CV-05210-RMP

11

ATTORNEY GENERAL OF WASHINGTON
8127 W. Klamath Court, Suite A
Kennewick, WA 99336
(509) 734-7285

**Pecuniary or Direct Harms to VHDA and the Commonwealth of Virginia**

12. The Final Rule will create tangible harm to VHDA. Specifically, VHDA relies on federal rent subsidy programs to bridge the gap between the rents that the very low-income households can afford to pay and the market rents achieved through the capital and mortgage subsidies provided by VHDA. Needed federal rent subsidy assistance is provided both through the Housing Choice Voucher and project-based Section 8 subsidies administered by VHDA, but also through the same subsidies administered by other public housing agencies in Virginia. Assuming that the households served by the VHDA-administered Housing Choice Voucher program are generally comparable to the overall population receiving federal rent subsidies through other public housing agencies, then at least 658 eligible non-citizen households comprising 1,500 family members could be assumed to be receiving federal rental assistance in Virginia in 2018. However, the numbers are likely much higher since VHDA administers the Housing Choice Voucher program mainly in suburban and rural areas of the state, while Virginia's foreign-born population is more heavily concentrated in the areas of Northern Virginia and Hampton Roads served by local public housing agencies.

The inability to provide legally present immigrant households with very low-incomes with federal rent subsidy assistance will pressure VHDA to allocate finite internally generated subsidy resources to provide deeper capital subsidies

to further lower base rents in the housing developments it finances. The same pressure will be put on the Virginia Department of Housing and Community Development to reallocate the finite state and federal capital subsidy funds it administers for this purpose. However, most very low income households served by the Housing Choice Voucher and Section 8 project-based rental assistance programs, have incomes too low to fully cover just the operating costs of the units they occupy. Therefore, capital subsidies alone cannot produce rents they can afford. If legally present immigrant households lose access to rental assistance, then they will be at high risk of housing instability and eviction or outright homelessness. In either instance, the cost will be borne by VHDA and our partner state agencies that are seeking to reduce these problems in Virginia.

Currently, VHDA is actively working in partnership with other state agencies to address the high priority Virginia has put on: 1) reducing homelessness; 2) reducing high rates of tenant eviction; and 3) providing permanent supportive housing for vulnerable populations with serious mental illness and developmental disabilities, as well individuals and families at risk of homelessness. Virginia's focus is on providing affordable, permanent supportive housing both because it best addresses the needs of individuals and families, and because it is substantially less costly than the alternatives of: 1) providing state and locally funded emergency services to homeless populations; 2) providing institutional care to persons with mental illness or developmental disabilities; or

3) having critical unmet shelter needs result in incarceration. In order to successfully address these challenges, federal rental assistance is required to meet household needs. The rental housing that VHDA is currently financing as part of state plans to address these needs cannot be made affordable for either homeless or unstably housed, at-risk households in the absence of households being able to access federal rent subsidies. The Final Rule will pressure Virginia to appropriate higher amounts of funding for state rental assistance in order to off-set the inability to use federal rent subsidy funds to serve the needs of legally present immigrant individuals and families in need of housing assistance.

**Harms to Individuals Served by Agency**

13. As described above, very low-income individuals and households unable to access federal rent subsidies, or deterred from requesting them, will be at high risk of housing instability, eviction and homelessness. They will also be unable to access the permanent supportive housing being developed by VHDA and its state partner agencies to address their needs. There is substantial, documented evidence that individuals and families that are homeless or unstably housed suffer worse health outcomes than people able to reside in quality, affordable housing. Likewise, children in families that are homeless or unstably housed have difficulty in school and achieve weaker educational outcomes than those living in quality housing that their families are able to afford. The long-

term social costs of poor health and education far outweigh the cost of providing rental assistance. Reference is made to the following study conducted by Harvard University's Raj Chetty: Chetty, Raj, Nathaniel Hendren, and Lawrence Katz. 2016. "The Effects of Exposure to Better Neighborhoods on Children: New Evidence from the Moving to Opportunity Project." American Economic Review 106 (4).

**Administrative Challenges**

14. Implementation of the Final Rule is expected to create additional administrative challenges for VHDA in the form of additional information collection, reporting requirements and compliance monitoring responsibilities.

**[Signature appears on following page]**

**SIGNATURE PAGE DECLARATION OF VIRGINIA HOUSING DEVELOPMENT AUTHORITY IN SUPPORT OF PLAINTIFF STATES' MOTION FOR PRELIMINARY INJUNCTION**

I declare under penalty of perjury under the laws of the Commonwealth of Virginia and the United States that the foregoing is true and correct.

DATED this 27th day of August, 2019, at Richmond, Virginia.

VIRGINIA HOUSING DEVELOPMENT AUTHORITY
(DECLARANT)

By: Patrick J. Carey
Its: Chief of Program Strategy and Chief Financial Officer

DECLARATION OF VIRGINIA HOUSING DEVELOPMENT AUTHORITY
NO. 4:19-CV-05210-RMP

16

ATTORNEY GENERAL OF WASHINGTON
8127 W. Klamath Court, Suite A
Kennewick, WA 99336
(509) 734-7285

## **DECLARATION OF SERVICE**

I hereby declare that on this day I caused the foregoing document to be electronically filed with the Clerk of the Court using the Court's CM/ECF System which will serve a copy of this document upon all counsel of record.

DATED this 6th day of September, 2019, at Tumwater, Washington.

*/s/ Sara M. Cearley*
SARA M. CEARLEY
Paralegal

DECLARATION OF PATRICK J. CAREY
NO. 4:19-cv-05210-RMP

17

ATTORNEY GENERAL OF WASHINGTON
8127 W. Klamath Court, Suite A
Kennewick, WA 99336
(509) 734-7285