ROBERT W. FERGUSON
*Attorney General*

RENE D. TOMISSER, WSBA #17509
*Senior Counsel*
JEFFREY T. SPRUNG, WSBA #23607
ZACHARY P. JONES, WSBA #44557
JOSHUA WEISSMAN, WSBA #42648
PAUL M. CRISALLI, WSBA #40681
NATHAN K. BAYS, WSBA #43025
BRYAN M.S. OVENS, WSBA #32901
*Assistant Attorneys General*
8127 W. Klamath Court, Suite A
Kennewick, WA 99336
(509) 734-7285

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WASHINGTON
# AT RICHLAND

| | |
|---|---|
| STATE OF WASHINGTON, et al., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF HOMELAND SECURITY, a federal agency, et al. <br><br> Defendants. | NO. 4:19-cv-05210-RMP <br><br> DECLARATION OF MARY M. BOURQUE IN SUPPORT OF PLAINTIFF STATES' MOTION FOR § 705 STAY PENDING JUDICIAL REVIEW OR FOR PRELIMINARY INJUNCTION <br><br> NOTED FOR: October 3, 2019 <br> With Oral Argument at 10:00 a.m. |

DECLARATION OF MARY M. BOURQUE
NO. 4:19-cv-05210-RMP

i

ATTORNEY GENERAL OF WASHINGTON
8127 W. Klamath Court, Suite A
Kennewick, WA 99336
(509) 734-7285

I, Mary M. Bourque, declare as follows:

1. I am over the age of 18, competent to testify as to the matters herein and make this declaration based on my personal knowledge.

2. I am the Superintendent of Schools for the Chelsea Public Schools ("CPS"), a school system serving a diverse population of about 6,000 students from prekindergarten through grade twelve. I have served as the Superintendent for more than eight years and have worked in CPS for more than 30 years.

3. Chelsea is an immigrant-rich community that prides itself on its diversity and inclusivity. About 66 percent of Chelsea's population is Hispanic or Latino, and 45 percent of its population is foreign born, the largest foreign-born population in Massachusetts. Eighty-two percent of CPS students have a first language other than English, compared to the statewide average of 22 percent.

4. Chelsea also has a large population of low-income families. Sixty-three percent of CPS students are low-income, whereas the statewide average is 31 percent. Access to benefits and services, including for our immigrant population, allows our dedicated and hard-working neighbors to support their families and fully participate in the economic life of the community.

5. The U.S. Department of Homeland Security has issued a new regulation on the public charge ground of inadmissibility under the Immigration and Nationality Act. As I understand it, the Public Charge Rule would allow the

federal government to consider a person's past use of a broad range of public benefits as a negative factor in an application for lawful permanent residency, a new visa, or for an extension of or change of stay from an existing visa. As a result, the Public Charge Rule will cause many Chelsea families to withdraw from crucial benefits and services, with a substantial negative impact on CPS and CPS students.

6. Many CPS students are beneficiaries of food assistance, housing assistance, state-funded healthcare, and other federal and state benefits. Of these students, many are noncitizens or U.S citizens living with noncitizen parents.

7. Access to benefits plays a positive role in supporting students' needs and their capacity to learn. When students come to school healthy, with enough food in their stomachs, and having had a good night's sleep in their homes, they are prepared to learn and thrive. Students who do not receive proper medical attention and are food and housing insecure have a hard time focusing, are more likely to act out, and tend to see diminished educational outcomes. Research shows that mental health problems, such as depression, anxiety, and behavioral problems among children, increase as food security decreases.

8. CPS students lacking health, food, and housing benefits are more likely to require additional services and supports, causing CPS to incur additional costs. The Commonwealth of Massachusetts, which funds CPS through a complex formula, will also incur additional costs. In Chelsea, state funding accounts for about 81 percent of educational spending.

9. CPS students whose basic needs aren't being met may be more likely to face suspension or expulsion and ultimately drop out of school. These consequences are harmful for these students, their families, our community, and the state as a whole. For instance, Massachusetts dropouts earn about $500,000 less over their lifetime than the average high school graduate and about $1.5 million less than the average bachelor's degree holder.

10. Other CPS students will suffer harm as well, if classrooms become more unsettled and schools must spread their resources more thinly.

11. CPS school personnel will likely attempt to make referrals for food and other assistance to local community organizations, stretching the organizations' already strapped resources. The community organizations may in turn require more funding from the City of Chelsea, the Commonwealth of Massachusetts, and private contributors to sustain their programs.

12. Upon the federal government's release of the draft Public Charge Rule, many Chelsea families expressed fear about using government benefits and some withdrew from benefits at that time. These withdrawals included benefits in the draft rule and those not in the draft rule. Chelsea families feared that enrolling in any benefits at all could subject them to negative immigration consequences. There was also confusion about which benefits were covered by the draft rule and which were not.

13. It is anticipated that many more families will withdraw from

government benefits because of the final Public Charge Rule. Fear and confusion will likely cause families to withdraw from benefits covered by the Public Charge Rule and those not covered.

14. Many CPS families will likely be in the untenable position of choosing between forgoing critical benefits or risking the chance to remain in the United States.

15. In addition, CPS students may lose access to important school-based food programs, and CPS may sustain a financial burden from a loss in funding and an increase in administrative costs.

16. CPS receives additional funds for students identified as "economically disadvantaged" through a complex state formula that recognizes students living in poverty often need extra services and supports. This "economically advantaged" identification is based on whether the student is enrolled in certain state benefits. Children whose families withdraw from benefits will no longer be identified as "economically disadvantaged," and as a result either CPS will lose significant financial support, potentially millions of dollars, and the state's calculation of students will be inaccurate, or Massachusetts will have to undergo a complex process of redefining how to qualify students as "economically disadvantaged."

17. Moreover, under Direct Certification through the United States Department of Agriculture ("USDA"), CPS can automatically enroll students in

the federal school food program if the students already receive benefits through other income-based programs, including Medicaid and the Supplemental Nutritional Assistance Program ("SNAP"). This process reduces the administrative burden on CPS because it does not need to collect and process paper forms. If students are no longer enrolled in public benefit programs, CPS won't be able to rely on Direct Certification and will incur additional administrative costs.

18. Additionally, with a dramatic decrease in students enrolled in Medicaid and SNAP, CPS schools may no longer qualify for the USDA's Community Eligibility program, which allows schools to provide free meals to all students if a certain percentage of students are enrolled in the qualifying benefits programs. Even if CPS schools are able to remain in the Community Eligibility program, they will receive less USDA funding for providing breakfasts and lunches because fewer students will be represented in their count of qualifying students.

19. As a result, with fewer students receiving Medicaid and SNAP benefits, CPS can expect fewer students to be able to access the federal school breakfast and lunch programs that keep them nourished throughout the school day. As discussed above, hungry children have less capacity to focus and learn and require additional supports, resulting in negative consequences for students and CPS.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

DATED this 27th day of August, 2019, at Chelsea, Massachusetts.

*[Signature: Mary M. Bourque]*

MARY M. BOURQUE
Superintendent, Chelsea Public Schools

DECLARATION OF MARY M. BOURQUE
NO. 4:19-cv-05210-RMP

6

## **DECLARATION OF SERVICE**

I hereby declare that on this day I caused the foregoing document to be electronically filed with the Clerk of the Court using the Court's CM/ECF System which will serve a copy of this document upon all counsel of record.

DATED this 6th day of September, 2019, at Tumwater, Washington.

*/s/ Sara M. Cearley*
SARA M. CEARLEY
Paralegal

DECLARATION OF MARY M. BOURQUE
NO. 4:19-cv-05210-RMP

7

ATTORNEY GENERAL OF WASHINGTON
8127 W. Klamath Court, Suite A
Kennewick, WA 99336
(509) 734-7285