1    ROBERT W. FERGUSON
     *Attorney General*

2
     RENE D. TOMISSER, WSBA #17509
3    *Senior Counsel*
     JEFFREY T. SPRUNG, WSBA #23607
4    ZACHARY P. JONES, WSBA #44557
     JOSHUA WEISSMAN, WSBA #42648
5    PAUL M. CRISALLI, WSBA #40681
     NATHAN K. BAYS, WSBA #43025
6    BRYAN M.S. OVENS, WSBA #32901
     *Assistant Attorneys General*
7    8127 W. Klamath Court, Suite A
     Kennewick, WA 99336
8    (509) 734-7285

9    *[Additional counsel on signature page]*

10              **UNITED STATES DISTRICT COURT**
              **EASTERN DISTRICT OF WASHINGTON**
11                      **AT SPOKANE**

12   STATE OF WASHINGTON, et al.,          NO. 4:19-cv-05210-RMP

13              Plaintiffs,                REPLY IN SUPPORT OF
                                          PLAINTIFF STATES' MOTION
14        v.                               FOR § 705 STAY PENDING
                                          JUDICIAL REVIEW OR FOR
15   UNITED STATES DEPARTMENT             PRELIMINARY INJUNCTION
     OF HOMELAND SECURITY, et al.,
16                                         NOTED FOR: October 3, 2019
                Defendants.                With Oral Argument at 10:00 a.m.
17                                         USDC Spokane: Courtroom 901

18

19

20

21

22

REPLY IN SUPPORT OF
PLAINTIFF STATES' MOTION
FOR § 705 STAY PENDING
JUDICIAL REVIEW OR FOR PI
NO. 4:19-CV-05210-RMP

# TABLE OF CONTENTS

I. INTRODUCTION ...................................................................... 1

   A. The Plaintiff States Have Standing ................................. 2

      1. The Rule's harm to third parties does not prevent state standing ...................................................................... 2

      2. The Rule is ripe for review because it causes immediate injury to the Plaintiff States ...................................... 5

      3. The Plaintiff States are within the zone of interest of the INA ............................................................................ 6

   B. The Rule Is Contrary to Law ......................................... 7

      1. Congress has rejected the Rule's expansive definition of "public charge" .......................................................... 7

      2. Precedent does not support the Rule's expansive definition of public charge ........................................ 11

      3. DHS's definition is directly at odds with agency precedent 14

      4. The Rule violates Section 504 of the Rehabilitation Act by discriminating against individuals with disabilities ............ 16

   C. The Rule Is Arbitrary and Capricious ......................... 19

      1. DHS has failed to justify the Rule's potentially devastating effect on public health ......................... 19

      2. DHS has failed to justify severe and irreparable harm to children ................................................................. 21

      3. DHS has failed to justify harms to individuals with disabilities ............................................................... 22

      4. DHS relies on vague, arbitrary factors that prevent meaningful or even-handed enforcement of the Rule .......... 23

PLAINTIFF STATES' REPLY IN
SUPPORT OF MOT. FOR § 705
STAY PENDING JUDICIAL
REVIEW OR FOR PRELIM. INJ.
NO. 4:19-CV-05210-RMP

i

ATTORNEY GENERAL OF WASHINGTON
8127 W. Klamath Court, Suite A
Kennewick, WA 99336
(509) 734-7285

D.  The Plaintiff States Will Suffer Irreparable Harm Absent a Stay or Injunction ..................................................................................24

E.  Nationwide Relief Is Necessary to Afford Complete Relief ......28

II.    CONCLUSION ..................................................................................30

PLAINTIFF STATES' REPLY IN
SUPPORT OF MOT. FOR § 705
STAY PENDING JUDICIAL
REVIEW OR FOR PRELIM. INJ.
NO. 4:19-CV-05210-RMP

ATTORNEY GENERAL OF WASHINGTON
8127 W. Klamath Court, Suite A
Kennewick, WA 99336
(509) 734-7285

1

# TABLE OF AUTHORITIES

2

## <u>Cases</u>

3

4

*Alfred L. Snapp & Son, Inc. v. Puerto Rico*,
    458 U.S. 592 (1982) ............................................................................... 3

*Am. Wild Horse Pres. Campaign v. Perdue*,
5     873 F.3d 914 (D.C. Cir. 2017) ............................................................ 22

6

*Ariz. Cattle Growers Ass'n v. U.S. Fish & Wildlife Serv.*,
    273 F.3d 1229 (9th Cir. 2001) ............................................................ 24

7

8

*Ass'n of Data Processing Serv. Orgs. v. Camp*,
    397 U.S. 150 (1970) ............................................................................... 6

9

*Bob Jones Univ. v. United States*,
    461 U.S. 574 (1983) ............................................................................... 9

10

*Bresgal v. Brock*,
11     843 F.2d 1163 (9th Cir. 1987) ............................................................ 30

12

*California v. Azar*,
    911 F.3d 558 (9th Cir. 2018) ................................................. 3, 29, 30

13

*Chevron, U.S.A. v. Nat. Res. Def. Council, Inc.*,
14     467 U.S. 837 (1984) ............................................................................... 7

15

*Clark v. City of Seattle*,
    899 F.3d 802 (9th Cir. 2018) ............................................................... 5

16

*Clarke v. Sec. Indus. Ass'n*,
17     479 U.S. 388 (1987) ............................................................................... 6

18

*Comcast Corp. v. FCC*,
    300 F.3d 642 (D.C. Cir. 2010) ............................................................ 11

19

*Competitive Enter. Inst. v. U.S. Dep't of Transp.*,
20     863 F.3d 911 (D.C. Cir. 2017) ......................................................... 8, 9

21

*Cottonwood Envtl. Law Ctr. v. U.S. Forest Serv.*,
    789 F.3d 1075 (9th Cir. 2015) ............................................................. 5

22

PLAINTIFF STATES' REPLY IN
SUPPORT OF MOT. FOR § 705
STAY PENDING JUDICIAL
REVIEW OR FOR PRELIM. INJ.
NO. 4:19-CV-05210-RMP

iii

ATTORNEY GENERAL OF WASHINGTON
8127 W. Klamath Court, Suite A
Kennewick, WA 99336
(509) 734-7285

1  *Cuomo v. Clearing House Ass'n*,
       557 U.S. 519 (2009) ..................................................................9
2
   *Dep't of Commerce v. New York*,
3       139 S. Ct. 2551 (2019) ..........................................................3, 4

4  *E. Bay Sanctuary Covenant v. Trump*,
       932 F.3d 742 (9th Cir. 2018)...................................................28
5
   *E.E.O.C. v Arabian Am. Oil Co.*,
6       499 U.S. 244 (1991) ..............................................................11

7  *Ex parte Hosaye Sakaguchi*,
       277 F. 913 (9th Cir. 1922)......................................................12
8
   *Ex parte Mitchell*,
9       256 F. 229 (N.D.N.Y. 1919) ......................................10, 12, 13

10 *FCC v. Fox Television Stations, Inc.*,
       556 U.S. 502 (2009) ..............................................................19
11
   *Gegiow v. Uhl*,
12      239 U.S. 3 (1915) ..................................................................11

13 *Howe v. United States ex rel. Savitsky*,
       247 F. 292 (2d Cir. 1917)........................................................11
14
   *I.N.S. v. Cardoza-Fonseca*,
15      480 U.S. 421 (1987) ............................................................9, 10

16 *In re Feinkopf*,
       47 F. 447 (E.D.N.Y. 1891)......................................................13
17
   *Judulang v. Holder*,
18      565 U.S. 42 (2011)..................................................................24

19 *Lorillard v. Pons*,
       434 U.S. 575 (1978) ..............................................................10
20
   *Lujan v. Defenders of Wildlife*,
21      504 U.S. 555 (1992) ................................................................2

22

PLAINTIFF STATES' REPLY IN                iv
SUPPORT OF MOT. FOR § 705
STAY PENDING JUDICIAL
REVIEW OR FOR PRELIM. INJ.
NO. 4:19-CV-05210-RMP

ATTORNEY GENERAL OF WASHINGTON
8127 W. Klamath Court, Suite A
Kennewick, WA 99336
(509) 734-7285

*Lujan v. Nat'l Wildlife Fed.*,
 497 U.S. 871 (1990) ...................................................................................5

*Massachusetts v. EPA*,
 549 U.S. 497 (2007) ...................................................................................4

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*,
 567 U.S. 209 (2012) ...................................................................................6

*Matter of Martinez-Lopez*,
 10 I. & N. Dec. 409 (A.G. 1962) ..............................................................15

*McDonnell Douglas Corp. v. U.S. Dep't of the Air Force*,
 375 F.3d 1182 (D.C. Cir. 2004) ...............................................................20

*Missouri v. Illinois*,
 180 U.S. 208 (1901) ...................................................................................3

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co. (State Farm)*,
 463 U.S. 29 (1983) ....................................................................19, 20, 23

*Pub. Citizen v. Fed. Motor Carrier Safety Admin.*,
 374 F.3d 1209 (D.C. Cir. 2004) ...............................................................20

*Regents of the Univ. of Cal. v. U.S. Dep't of Homeland Sec.*,
 908 F.3d 476 (9th Cir. 2018)......................................................................29

*Sandison v. Michigan High Sch. Athletic Ass'n*,
 64 F.3d 1026 (6th Cir. 1995)......................................................................18

*Simula, Inc. v. Autoliv, Inc.*,
 175 F.3d 716 (9th Cir. 1999)...............................................................5, 26

*Spokeo, Inc., v. Robins*,
 136 S. Ct. 1540 (2016) ...............................................................................2

*Texas v. United States*,
 809 F.3d 134 (5th Cir. 2015), *aff'd*, 136 S. Ct. 2271 (2016) ...........................7

*Townley v. Miller*,
 722 F.3d 1128 (9th Cir. 2013).....................................................................2

PLAINTIFF STATES' REPLY IN
SUPPORT OF MOT. FOR § 705
STAY PENDING JUDICIAL
REVIEW OR FOR PRELIM. INJ.
NO. 4:19-CV-05210-RMP

v

ATTORNEY GENERAL OF WASHINGTON
8127 W. Klamath Court, Suite A
Kennewick, WA 99336
(509) 734-7285

*United States ex rel. Freeman v. Williams*,
   175 F.274 (S.D.N.Y. 1910) ........................................................................10

*United States v. Lipkis*,
   56 F. 427 (S.D.N.Y. 1893) ......................................................................13

*United States v. Williams*,
   175 F. 274 (S.D.N.Y. 1910) (L. Hand, J.) ...............................................12

### Statutes

8 U.S.C. § 1601(7) .........................................................................................11

29 U.S.C. § 705 .............................................................................................16

29 U.S.C. § 705(20)(A) .................................................................................17

29 U.S.C. § 705(20)(D) .................................................................................17

29 U.S.C. § 705(20)(F)(i-iii) ........................................................................17

29 U.S.C. § 705(21)(A)(i-iii) ........................................................................17

Immigration Act of 1882,
   ch. 376, 22 Stat. 214 ..............................................................................6, 7

### Regulations

Adjustment of Status for Certain Aliens,
   52 Fed. Reg. 16,205 (May 1, 1987) .......................................................14

64 Fed. Reg. 28,689 (Mar. 26, 1999) ...............................................15, 16, 25

84 Fed. Reg. 41,292 (Aug. 14, 2019) ...........................................3, 17, 23, 26

### Unpublished Decisions

*Mayor & City Council of Baltimore v. Trump*,
   No. ELH-18-3636, 2019 WL 4598011 (D. Md. Sept. 20, 2019) ...............4, 5

PLAINTIFF STATES' REPLY IN
SUPPORT OF MOT. FOR § 705
STAY PENDING JUDICIAL
REVIEW OR FOR PRELIM. INJ.
NO. 4:19-CV-05210-RMP

vi

ATTORNEY GENERAL OF WASHINGTON
8127 W. Klamath Court, Suite A
Kennewick, WA 99336
(509) 734-7285

1

## Other Authorities

2    Border Security, Economic Opportunity, and Immigration Modernization Act,
       S. 744, 113th Cong. (2013) ................................................................8

3

4    Br. for Appellant at 30, *United States of America v. State of California*, 2018
       WL 4641711 (9th Cir., filed Sept. 18, 2018) (No. 18-16196) ........................29

5    Br. for the United States at 24, *Arizona v. United States of America*, 2012 WL
       939048 (U.S., filed Mar. 19, 2012) ..................................................29

6

7    Hidetaka Hirota, *Expelling the Poor* (2017) .........................................7

8    Dep't of Homeland Security, Table 1. Persons Obtaining Lawful Permanent
       Resident Status: Fiscal Years 1820 to 2016, (Dec. 18, 2017),
       https://www.dhs.gov/immigration-statistics/yearbook/2016/table1 ..............16

9

10    https://law.jrank.org/pages/11309/Wickersham-Commission.html ..................15

11    Immigration and Naturalization Service, 2001 Statistical Yearbook of the
       Immigration and Naturalization Service 258 (2003),
       https://www.dhs.gov/sites/default/files/publications/Yearbook_Immigration_
12    Statistics_2001.pdf ....................................................................16

13    S. Rep. No. 104-249 (1996) ..............................................................8

14

15

16

17

18

19

20

21

22

PLAINTIFF STATES' REPLY IN      vii      ATTORNEY GENERAL OF WASHINGTON
SUPPORT OF MOT. FOR § 705                      8127 W. Klamath Court, Suite A
STAY PENDING JUDICIAL                           Kennewick, WA 99336
REVIEW OR FOR PRELIM. INJ.                      (509) 734-7285
NO. 4:19-CV-05210-RMP

# I.    INTRODUCTION

Unable to enact their agenda through the legislative process, Defendants (DHS) now seek to overhaul our nation's immigration system by dramatically redefining the term "public charge" through an unlawful Rule. DHS disputes neither that the Rule will harm the Plaintiff States financially and injure the health of their residents, nor that the States themselves operate and help fund the federal benefits programs included in the expanded definition of public charge. Instead, DHS trots out the argument this administration has made repeatedly without success—that an injury is too "attenuated" if the administration's rules target State residents, not the States themselves. But that argument has already been rejected, including just this year by the Supreme Court in the census case.

In attempting to defend the merits of its novel statutory interpretation, DHS similarly offers as the plain and unambiguous meaning of "public charge" a definition that Congress has twice explicitly rejected. DHS claims that the sources considered under *Chevron* demonstrate that Congress intended for *any* government support to qualify an immigrant as a public charge. It does so only by picking out ambiguous sentences from authorities whose overall meaning is demonstrably to the contrary and which support Plaintiff States' interpretation— that a public charge is someone primarily dependent on the government for subsistence. Not only is DHS's new Rule contrary to law, but in the face of thoroughly documented harms to public health and vulnerable populations, the

PLAINTIFF STATES' REPLY IN
SUPPORT OF MOT. FOR § 705
STAY PENDING JUDICIAL
REVIEW OR FOR PRELIM. INJ.
NO. 4:19-CV-05210-RMP

1

ATTORNEY GENERAL OF WASHINGTON
8127 W. Klamath Court, Suite A
Kennewick, WA 99336
(509) 734-7285

1  Rule is arbitrary and capricious based on the agency's failure to provide a

2  reasonable explanation for abandoning the longstanding usage of "public charge"

3  and the statutory interpretation it has applied for decades.

4      DHS's unlawful refashioning of immigration policy through regulation

5  should not take effect while the Plaintiff States' legal challenge is pending.

6  **A.    The Plaintiff States Have Standing**

7      **1.    The Rule's harm to third parties does not prevent state standing**

8      DHS asserts the Plaintiff States "have not met, or even tried to meet" the

9  burden to establish standing. ECF No. 155 at 9 (Defs.' Opp'n to Mot. for § 705

10  Stay Pending Judicial Review or for Prelim. Inj.). Not so.[1] The Plaintiff States

11  made a "clear showing of each element of standing" *Townley v. Miller*, 722 F.3d

12  1128, 1133 (9th Cir. 2013), and demonstrated the Rule will invade concrete and

13  particularized legally protected interests, causing harm that is actual or imminent,

14  *Spokeo, Inc., v. Robins*, 136 S. Ct. 1540, 1548 (2016), and which is "fairly

15  traceable to the challenged action of the defendant" and "likely will be redressed

16  by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61

17  (1992) (ellipses, brackets, and internal quotations omitted).

18

19  _____

20      [1] *See* ECF No. 31 (Am. Compl.) ¶¶ 36, 171–395; ECF No. 34 at 10–17

21  (Pls.' Mot. for § 705 Stay Pending Review or for Prelim. Inj.) (citing 51

22  declarations demonstrating injury).

PLAINTIFF STATES' REPLY IN
SUPPORT OF MOT. FOR § 705
STAY PENDING JUDICIAL
REVIEW OR FOR PRELIM. INJ.
NO. 4:19-CV-05210-RMP

2

1    Specifically, Plaintiff States have shown the Rule will lead to a cascade of

2    costs to states as immigrants disenroll from federal and state benefits programs,

3    *see* ECF No. 34 at 10–17, 51–55, thereby frustrating the States' missions in

4    creating such programs and harming state residents. *See Alfred L. Snapp & Son,*

5    *Inc. v. Puerto Rico*, 458 U.S. 592, 601–02 (1982) ("As a proprietor, [a state] is

6    likely to have the same interests as other similarly situated proprietors . . . , [a]nd

7    like other such proprietors it may at times need to pursue those interests in

8    court."); *id.* at 607 ("[A] state has a quasi-sovereign interest in the health and

9    well-being—both physical and economic—of its residents in general."); *Missouri*

10   *v. Illinois*, 180 U.S. 208, 241 (1901) ("[I]f the health and comfort of the

11   inhabitants of a state are threatened, the state is a proper party to represent and

12   defend them"); *California v. Azar*, 911 F.3d 558, 573 (9th Cir. 2018) (states

13   established standing by showing "that the threat to their economic interest is

14   reasonably probable").

15   Importantly, DHS does not dispute that the Rule will cause disenrollment,

16   *see* 84 Fed. Reg. 41,292, 41,463 (Aug. 14, 2019), but rather argues that the

17   "potential future harms" that follow therefrom are "spurred by decisions of third

18   parties not before the court." *See* ECF No. 155 at 9. The Supreme Court recently

19   rejected this argument in *Department of Commerce v. New York*, 139 S. Ct. 2551

20   (2019). In that case, the government raised the same standing arguments, namely

21   that the alleged harms were not traceable to the Department's actions but to the

22

PLAINTIFF STATES' REPLY IN
SUPPORT OF MOT. FOR § 705
STAY PENDING JUDICIAL
REVIEW OR FOR PRELIM. INJ.
NO. 4:19-CV-05210-RMP

3

ATTORNEY GENERAL OF WASHINGTON
8127 W. Klamath Court, Suite A
Kennewick, WA 99336
(509) 734-7285

1    independent actions of third parties. *Id.* at 2565–66. The Supreme Court rejected

2    the contention, holding the plaintiffs had "met their burden of showing that third

3    parties will likely react in *predictable* ways to the citizenship question, even if

4    they do so unlawfully and despite the requirement that the Government keep

5    individual answers confidential." *Id.* at 2566 (emphasis added). As a result, the

6    plaintiffs' theory of standing "d[id] not rest on mere speculation about the

7    decisions of third parties" but "instead on the predictable effect of Government

8    action on the decisions of third parties." *Id.*; *see also Mayor & City Council of*

9    *Baltimore v. Trump*, No. ELH-18-3636, 2019 WL 4598011, at *17–18 (D. Md.

10    Sept. 20, 2019) (applying the *Department of Commerce* decision to plaintiff's

11    claims that the Trump administration had violated the APA in amending the

12    Foreign Affairs Manual's section on public charge determinations, and

13    concluding the plaintiffs had established standing).

14        Where, as here, the Plaintiff States have alleged and corroborated with

15    supporting declarations that immigrants will react in a *predictable* way to the

16    Rule, a way that DHS *concedes* they will react, and which causes significant

17    financial harm to the Plaintiff States and the health of their residents, standing is

18    established.[2] *See Massachusetts v. EPA*, 549 U.S. 497, 520 (2007) (concluding

19    _____

20        [2] The Plaintiff States' contentions supporting the negative health and

21    financial outcomes resulting from the Rule are corroborated by amici curiae in

22    this case. *See, e.g.*, ECF No. 152 at 17 (Br. of Amici Curiae Am. Academy of

PLAINTIFF STATES' REPLY IN
SUPPORT OF MOT. FOR § 705
STAY PENDING JUDICIAL
REVIEW OR FOR PRELIM. INJ.
NO. 4:19-CV-05210-RMP

4

1   that states receive "special solicitude in our standing analysis"); *Simula, Inc. v.*

2   *Autoliv, Inc.*, 175 F.3d 716, 725 (9th Cir. 1999) (preliminary injunction may be

3   granted "irrespective of the magnitude of the injury").

      **2.**     **The Rule is ripe for review because it causes immediate injury**
              **to the Plaintiff States**

4

5        The Plaintiff States have likewise established their claims are ripe for

6   decision by this Court. The question of ripeness is a corollary of standing, and a

7   party that has proven an "actual or imminent" injury in fact has established its

8   claims are ripe. *Clark v. City of Seattle*, 899 F.3d 802, 809 (9th Cir. 2018).

9        The issues before this Court also are prudentially ripe under *Cottonwood*

10  *Environmental Law Center v. U.S. Forest Service*, 789 F.3d 1075, 1083 (9th Cir.

11  2015). First, delayed review would cause hardship to Plaintiff States because

12  "[p]ostponing review will only exacerbate [the alleged] harms." *Mayor & City*

13  *Council of Baltimore*, 2019 WL 4598011, at *21. Second, the Rule is the

14  agency's final action, so judicial intervention does not inappropriately interfere

15  with further administrative action. Third, DHS does not identify any factual

16  development necessary for the Court to review the legal issues. *Lujan v. Nat'l*

17  *Wildlife Fed.*, 497 U.S. 871, 891 (1990) ("[A] substantive rule which as a

18

19  _____

20  Pediatrics) ("Disincentivizing the use of SNAP or other public food security

21  benefits by immigrant families will result in enduring damage to the collective

22  health and proper development of all children in such families.").

PLAINTIFF STATES' REPLY IN
SUPPORT OF MOT. FOR § 705
STAY PENDING JUDICIAL
REVIEW OR FOR PRELIM. INJ.
NO. 4:19-CV-05210-RMP

5

1    practical matter requires the plaintiff to adjust his conduct immediately . . . is

2    'ripe' for review at once . . . .").

3    **3.      The Plaintiff States are within the zone of interest of the INA**

4    The Plaintiff States have established they have "prudential standing" under

5    the APA, because their interests are "arguably within the zone of interests to be

6    protected or regulated by the statute or constitutional guarantee in question."

7    *Ass'n of Data Processing Serv. Orgs. v. Camp*, 397 U.S. 150, 153 (1970) (citing

8    5 U.S.C. § 702). Because this test is "not meant to be especially demanding,"

9    *Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 399–400 & n.16 (1987), agency action

10   is "presumptively reviewable" and "the benefit of any doubt goes to the plaintiff,"

11   *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S.

12   209, 225 (2012). A party has prudential standing unless its interests are "so

13   marginally related to or inconsistent with the purposes implicit in the statute that

14   it cannot reasonably be assumed that Congress intended to permit the suit." *Id.*

15   The purpose of the public charge exclusion is to prevent immigrants from

16   becoming primarily dependent on state governments for subsistence—and thus

17   to protect state fiscs.[3] By imposing significant uncompensated costs on the

18   _____

19   [3] Congress enacted the original 1882 public charge exclusion in response

20   to the U.S. Supreme Court's invalidation of materially identical public charge

21   exclusions in state laws—at the behest of state governments. *See* Immigration

22   Act of 1882, ch. 376, 22 Stat. 214; Hidetaka Hirota, *Expelling the Poor* 185

PLAINTIFF STATES' REPLY IN
SUPPORT OF MOT. FOR § 705
STAY PENDING JUDICIAL
REVIEW OR FOR PRELIM. INJ.
NO. 4:19-CV-05210-RMP

6

ATTORNEY GENERAL OF WASHINGTON
8127 W. Klamath Court, Suite A
Kennewick, WA 99336
(509) 734-7285

1    Plaintiff States and undermining their comprehensive public assistance programs,

2    the Rule undermines the very interests advanced by the statutes on which DHS

3    relies. The States are thus well within the zone of interests. *See Texas v. United*

4    *States*, 809 F.3d 134, 163 (5th Cir. 2015), *aff'd*, 136 S. Ct. 2271 (2016)

5    (recognizing states' economic interests in immigration policy).

6    **B.    The Rule Is Contrary to Law**

7    The Rule fails under *Chevron*, as DHS's unprecedented interpretation of

8    "public charge" is inconsistent with the term's plain meaning and unlawful. *See*

9    *Chevron, U.S.A. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984).

10    **1.    Congress has rejected the Rule's expansive definition of
            "public charge"**

11

12    To accomplish its fundamental overhaul of the public charge doctrine,

13    DHS necessarily disregards Congress's express and repeated rejection of the

14    ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

15    (2017) ("Immediately after the *Henderson* decision, immigration officials in

16    Atlantic seaboard states campaigned to secure national immigration legislation

17    as a substitute for state passenger laws."). The 1882 statute also relied on state

18    officials to enforce its provisions, such as inspecting the condition of arriving

19    passengers, excluding "any convict, lunatic, idiot, or . . . public charge," and

20    collecting the head tax used to "provide for the support and relief of such

21    immigrants" who "may fall into distress or need public aid." 22 Stat. 214, ch. 376

22    § 2.

PLAINTIFF STATES' REPLY IN
SUPPORT OF MOT. FOR § 705
STAY PENDING JUDICIAL
REVIEW OR FOR PRELIM. INJ.
NO. 4:19-CV-05210-RMP

7

1   same legislative framework DHS now seeks to implement. ECF No. 155 at 33

2   (dismissing repeated Congressional refusals to adopt a similar legal framework

3   as inconclusive and "lack[ing] persuasive significance"). But Congress's

4   rejection of DHS's current interpretation is not, as DHS asserts, subject to

5   "several equally tenable inferences," especially where the last Congress to

6   reenact the public charge provision rejected the very interpretation DHS now

7   claims is plain and unambiguous. *Id.*; *see also Competitive Enter. Inst. v. U.S.*

8   *Dep't of Transp.*, 863 F.3d 911, 917 (D.C. Cir. 2017).

9          In 1996, Congress rejected proposals that would have expanded the public

10  charge doctrine to encompass immigrants receiving non-cash benefits such as

11  Medicaid or SNAP in the context of the Illegal Immigration Reform and

12  Immigrant Responsibility Act, *see* ECF No. 34 at 29–30. At the time, members

13  made explicit their reasons for rejecting such proposals. *See* S. Rep. No. 104-249,

14  at 64 (1996) (Senator Leahy explaining the proposed framework went "too far in

15  including a vast array of programs none of us think of as welfare"); *see also* ECF

16  No. 34 at 39 (noting the same Congress also enacted the Welfare Reform Act

17  expressly *authorizing* qualified immigrants to access the very benefits it had

18  declined to include in an expanded public charge analysis). In 2013, Congress

19  again refused to enact similar restrictions in amendments to the Border Security,

20  Economic Opportunity, and Immigration Modernization Act, S. 744, 113th

21  Cong. (2013). *See* ECF No. 34 at 30.

22

PLAINTIFF STATES' REPLY IN
SUPPORT OF MOT. FOR § 705
STAY PENDING JUDICIAL
REVIEW OR FOR PRELIM. INJ.
NO. 4:19-CV-05210-RMP

8

1    DHS may not simply dismiss Congress's deliberate legislative judgments

2    and then unilaterally enact the same rejected policies through rulemaking. *See*

3    *Cuomo v. Clearing House Ass'n*, 557 U.S. 519, 533 (2009) (an agency may not

4    do through administrative action "what Congress declined to do"); *Bob Jones*

5    *Univ. v. United States*, 461 U.S. 574, 600–01 (1983) ("In view of its prolonged

6    and acute awareness of so important an issue, Congress' failure to act on the bills

7    proposed on this subject provides added support for concluding that Congress"

8    expressed a preference for the prevailing agency interpretation); *I.N.S. v.*

9    *Cardoza-Fonseca*, 480 U.S. 421, 442–43 (1987).

10    The one case DHS cites is inapplicable. *See* ECF No. 155 at 33. In

11    *Competitive Enterprise Institute*, the statutory term at issue was sufficiently

12    ambiguous to leave open "the inference that the existing legislation already

13    incorporated the offered change." 863 F.3d at 917. In contrast, here there is no

14    ambiguity that Congress rejected the very policy DHS now proposes to make

15    law.

16    DHS also fails to address the fact that when Congress repeatedly rejected

17    these proposals, it did so against a backdrop of the agency's long-term

18    interpretation at the time—namely, that supplemental, non-cash benefits were not

19    considered in the public charge analysis. *Cardoza-Fonseca*, 480 U.S. at 442–43

20    ("Few principles of statutory construction are more compelling than the

21    proposition that Congress does not intend *sub silentio* to enact statutory language

22

PLAINTIFF STATES' REPLY IN                    9                    ATTORNEY GENERAL OF WASHINGTON
SUPPORT OF MOT. FOR § 705                                          8127 W. Klamath Court, Suite A
STAY PENDING JUDICIAL                                              Kennewick, WA 99336
REVIEW OR FOR PRELIM. INJ.                                         (509) 734-7285
NO. 4:19-CV-05210-RMP

1    that it has earlier discarded in favor of other language."). In 2013, when Congress

2    for a second time refused to adopt a framework similar to the Rule, it acted with

3    knowledge of the prevailing 1999 Field Guidance, which expressly directed that

4    temporary, non-cash benefits such as SNAP were supplemental in nature and

5    would not render an immigrant likely to become a public charge. *Id.* at 442;

6    *Lorillard v. Pons*, 434 U.S. 575, 580 (1978) ("Congress is presumed to be aware

7    of an administrative or judicial interpretation of a statute and to adopt that

8    interpretation when it re-enacts a statute without change.").

9         Equally unavailing is DHS's argument that Congress intended to delegate

10   to the agency broad authority to interpret the term, whether implicitly or

11   explicitly. ECF No. 155 at 31–32. The cases DHS cites directly contradict its

12   argument, as they make clear the only deference appropriately afforded to the

13   agency in this context is based on the agency's fact-finding function in individual

14   cases. *See id.* at 32–33; *see also United States ex rel. Freeman v. Williams*, 175

15   F.274, 275 (S.D.N.Y. 1910) (deferring to the agency's factual findings regarding

16   whether an individual was a public charge, but exercising the court's authority to

17   "construe the act"); *Ex parte Mitchell*, 256 F. 229, 232 (N.D.N.Y. 1919)

18   (deferring to agency's factual findings, but reversing based on court's

19   construction of the public charge doctrine).

20        Finally, DHS's fundamental premise—that the Rule is intended to promote

21   Congress's stated goal of "self-sufficiency"—is without merit. First, DHS has no

22

PLAINTIFF STATES' REPLY IN
SUPPORT OF MOT. FOR § 705
STAY PENDING JUDICIAL
REVIEW OR FOR PRELIM. INJ.
NO. 4:19-CV-05210-RMP

10

ATTORNEY GENERAL OF WASHINGTON
8127 W. Klamath Court, Suite A
Kennewick, WA 99336
(509) 734-7285

1     basis for attempting to construe 8 U.S.C. § 1601, since Congress did not delegate

2     it authority to interpret a statute designed to address U.S. social welfare policy.

3     *See E.E.O.C. v Arabian Am. Oil Co.*, 499 U.S. 244, 257 (1991). Second, DHS

4     has no expertise in welfare reform and whether public benefits programs lead to

5     self-sufficiency, and the Rule contradicts its earlier position, so its interpretation

6     is not entitled to even minimal deference. *Id.* Third, DHS may not use a statement

7     of policy in a different statute to interpret the Immigration and Nationality Act

8     (INA), because that "would virtually free [DHS] from its congressional tether."

9     *Comcast Corp. v. FCC*, 300 F.3d 642, 655 (D.C. Cir. 2010); *see also id.* at 654

10    ("Policy statements are just that—statements of policy. They are not delegations

11    of regulatory authority"). Lastly, even section 1601 clearly sets forth Congress's

12    judgment that offering certain limited, non-cash, supplemental benefits to

13    qualifying immigrants constitutes "the least restrictive means available for

14    achieving the compelling governmental interest of assuring that aliens be self-

15    reliant in accordance with national immigration policy." 8 U.S.C. § 1601(7).

16        **2.    Precedent does not support the Rule's expansive definition of
                  public charge**

17

18        DHS misstates and omits widespread judicial authority showing the term

19    "public charge" has been understood for over a century to refer to individuals

20    who are primarily dependent on the government for survival. *See, e.g.*, *Gegiow*

21    *v. Uhl*, 239 U.S. 3, 10 (1915); *Howe v. United States ex rel. Savitsky*, 247 F. 292,

22    294 (2d Cir. 1917) (public charge category only "exclude[s] persons who were

PLAINTIFF STATES' REPLY IN
SUPPORT OF MOT. FOR § 705
STAY PENDING JUDICIAL
REVIEW OR FOR PRELIM. INJ.
NO. 4:19-CV-05210-RMP

ATTORNEY GENERAL OF WASHINGTON
8127 W. Klamath Court, Suite A
Kennewick, WA 99336
(509) 734-7285

1   likely to become occupants of almshouses"); *Ex parte Mitchell*, 256 F. at 233

2   (interpreting "public charge" as "generically similar to 'paupers,' . . .

3   'professional beggars,' [and] . . . 'occupants of almshouses' "); *United States v.*

4   *Williams*, 175 F. 274, 275 (S.D.N.Y. 1910) (L. Hand, J.) (noting that "the primary

5   meaning of the words, ['likely to become a public charge']" was probably

6   "likelihood of . . . becoming a pauper").[4]

7        DHS's counter-arguments are unavailing. For example, DHS claims

8   Congress amended the public charge grounds for exclusion in 1917 in response

9   to a Supreme Court decision holding the phrase should be read in parallel with

10   its surrounding terms, such as "paupers and professional beggars." *See* ECF No.

11   155 at 21–22. According to DHS, this shows Congress's intent that "public

12   charge" refers to more than just paupers. DHS overstates the import of the 1917

13   amendment, however, by failing to recognize that courts—including the Ninth

14   Circuit—afterward declined to apply any modified definition to the term. *See Ex*

15   *parte Hosaye Sakaguchi*, 277 F. 913, 916 (9th Cir. 1922) ("Although in the act

16   _____

17        [4] DHS misleadingly uses dictionary definitions of "charge" as a financial

18   term (*e.g.*, a "burden, incumbrance, or lien") to muddy the plain meaning of

19   "public charge" as a legal category of persons. ECF No. 155 at 19. Even DHS's

20   own definitions, however, reveal the original meaning of public charge, when

21   referring to a person, was closely related to a "pauper . . . chargeable to the parish

22   or town." *Id.* (quoting Stewart Rapalje et al., Dict. of Am. & English Law (1888)).

PLAINTIFF STATES' REPLY IN
SUPPORT OF MOT. FOR § 705
STAY PENDING JUDICIAL
REVIEW OR FOR PRELIM. INJ.
NO. 4:19-CV-05210-RMP

12

ATTORNEY GENERAL OF WASHINGTON
8127 W. Klamath Court, Suite A
Kennewick, WA 99336
(509) 734-7285

1    of February 5, 1917 . . . the location of the words 'persons likely to become a

2    public charge' is changed . . . this change of location of the words does not change

3    the meaning that should be given them . . ."); *Ex parte Mitchell*, 256 F. at 232

4    (explaining the court is "unable to see that this change of location of these words

5    in the act changes the meaning that is to be given them").

6        Further, the cases on which DHS relies do not support the agency's

7    unprecedented expansion of the doctrine. *See* ECF No. 155 at 22 (citing *Ex parte*

8    *Horn*, 292 F. 455, 457 (W.D. Wash. 1923) (affirming public charge finding where

9    immigrant was imprisoned and thus "committed to the custody of a department

10    of the government")); *In re Feinkopf*, 47 F. 447, 447–48 (E.D.N.Y. 1891)

11    (holding that immigration inspector wrongly determined person a public charge

12    without a scintilla of evidence); *United States v. Lipkis*, 56 F. 427, 428 (S.D.N.Y.

13    1893) (public charge finding due to immigrant's "poverty and inefficiency" and

14    "earning more or less as a peddler" living in "extreme poverty," not earning a

15    modest living but needing assistance).

16        Instead, the widespread understanding among courts that the public charge

17    doctrine requires primary dependence on the government for subsistence has

18    continued from colonial times through the present day. ECF No. 34 at 24–26

19    (discussing colonial and early state cases). Indeed, when amendments were

20    introduced in 1996 to expand the doctrine in the fashion DHS now seeks to enact,

21    it was with the express intent of overturning the settled understanding in case law.

22

PLAINTIFF STATES' REPLY IN
SUPPORT OF MOT. FOR § 705
STAY PENDING JUDICIAL
REVIEW OR FOR PRELIM. INJ.
NO. 4:19-CV-05210-RMP

13

1   Yet these amendments were rejected. *Id.* at 30. Thus, just as with evidence of

2   Congressional intent, judicial decisions interpreting the term undermine DHS's

3   attempt to enact its unlawful policy changes through rulemaking.

4   **3.     DHS's definition is directly at odds with agency precedent**

5          In addition to contravening Congressional and judicial precedent, the Rule

6   is irreconcilable with the agency's own pronouncements and interpretations of

7   the public charge doctrine, which provide context for determining the meaning

8   of the term. ECF No. 34 at 30–34. Specifically, DHS falsely characterizes its

9   1999 Field Guidance as "novel and anomalous." *See* ECF No. 155 at 25–27. It is

10  incorrect that the 1999 Field Guidance marked the "introduction" of the common

11  understanding of public charge as involving primary dependence on public

12  assistance, as evidenced by the long line of precedent demonstrating the term's

13  established meaning. *See* cases cited *supra* at 11–12.

14         Tellingly, the agency's predecessor regulations are consistent with the

15  1999 Field Guidance. After Congress passed the Immigration Control and

16  Reform Act of 1986, INS promulgated regulations making clear that the public

17  charge analysis would not take into account in-kind assistance. Adjustment of

18  Status for Certain Aliens, 52 Fed. Reg. 16,205 (May 1, 1987) (public charge

19  analysis would not extend to the receipt of "assistance in kind, such as food

20  stamps, public housing, or other non-cash benefits, nor does it include work-

21  related compensation or certain types of medical assistance (Medicare, Medicaid,

22

PLAINTIFF STATES' REPLY IN                              14                 ATTORNEY GENERAL OF WASHINGTON
SUPPORT OF MOT. FOR § 705                                                          8127 W. Klamath Court, Suite A
STAY PENDING JUDICIAL                                                                  Kennewick, WA 99336
REVIEW OR FOR PRELIM. INJ.                                                                 (509) 734-7285
NO. 4:19-CV-05210-RMP

1    emergency treatment . . .")). When INS issued the 1999 Field Guidance, it

2    confirmed what had already been made plain—that it had "never been [INS]

3    policy that *any* receipt of services or benefits paid for in whole or in part from

4    public funds renders an alien a public charge, or indicates that the alien is likely

5    to become a public charge." 64 Fed. Reg. 28,689, 28,692 (Mar. 26, 1999)

6    (explaining that "non-cash benefits . . . are by their nature supplemental and do

7    not, alone or in combination, provide sufficient resources to support an individual

8    or a family" and are "not evidence of poverty or dependence").

9          The sources DHS identifies do not support its position that the 1999 Field

10    Guidance introduced a novel standard. It mischaracterizes a brief excerpt from

11    *Matter of Martinez-Lopez*, 10 I. & N. Dec. 409, 421–22 (A.G. 1962). *See id.* ("the

12    [INA] requires more than a showing of a possibility that the alien will require

13    public support"); *see generally* ECF No. 35-3 at 59 (*Make the Road New York*

14    Compl., Bays Decl., Ex. DDD) ¶ 70. To dispute the State Department's own data

15    showing negligible exclusions based on public charge (*see* ECF No. 34 at 5 n.5),

16    DHS also cites a report by a panel appointed by President Herbert Hoover in

17    1929, the main purpose of which was to address organized crime and resolve the

18    debate over continuing Prohibition. *See* https://law.jrank.org/pages/11309/

19    Wickersham-Commission.html (last visited Sept. 26, 2019); ECF No. 155 at 27.

20    DHS's own data, however, show that between 1892 and 1980 less than one

21    percent of immigrants were deemed inadmissible as likely to become public

22

PLAINTIFF STATES' REPLY IN
SUPPORT OF MOT. FOR § 705
STAY PENDING JUDICIAL
REVIEW OR FOR PRELIM. INJ.
NO. 4:19-CV-05210-RMP

15

1    charges. *See* Dep't of Homeland Security, Table 1. Persons Obtaining Lawful

2    Permanent Resident Status: Fiscal Years 1820 to 2016, (Dec. 18, 2017),

3    https://www.dhs.gov/immigration-statistics/yearbook/2016/table1 (last visited

4    Sept. 27, 2019); Immigration and Naturalization Service, 2001 Statistical

5    Yearbook of the Immigration and Naturalization Service 258 (2003),

6    https://www.dhs.gov/sites/default/files/publications/Yearbook_Immigration_Sta

7    tistics_2001.pdf (last visited Sept. 27, 2019); ECF No. 35-3 at 57, ¶ 65.

8        As evidenced by over a century of public charge enforcement and

9    legislation, what is novel and anomalous is *not* the 1999 Field Guidance but the

10    Rule itself. *Compare* 64 Fed. Reg. at 28,692 (noting that as a result of the 1999

11    Field Guidance, INS did "not expect to substantially change the number of aliens

12    who will be found deportable or inadmissible as public charges") *with* ECF No.

13    35-1 at 489 of 661 (Ex. T) (reporting results of study showing that a staggering

14    "40 percent of U.S.-born individuals . . . [had] participated in one of the five

15    [proposed public charge benefits] programs over the 1998-2014 period") *and*

16    ECF No. 35-1 at 366 of 661 (Ex. S) ("When recent green card recipients are

17    compared to the new criteria, over two-thirds would have at least one negative

18    factor and more than 40% had two or more.").

19        **4.    The Rule violates Section 504 of the Rehabilitation Act by**
20             **discriminating against individuals with disabilities**

21        The Rule is also unlawful because it violates Section 504's prohibition

22    against disability-based discrimination. *See* 29 U.S.C. § 705. In contravention of

PLAINTIFF STATES' REPLY IN
SUPPORT OF MOT. FOR § 705
STAY PENDING JUDICIAL
REVIEW OR FOR PRELIM. INJ.
NO. 4:19-CV-05210-RMP

16

ATTORNEY GENERAL OF WASHINGTON
8127 W. Klamath Court, Suite A
Kennewick, WA 99336
(509) 734-7285

1    Section 504, DHS concedes that (1) an individual's disability will be expressly

2    considered in the public charge analysis, and (2) such consideration might have

3    a "potentially outsized impact" on individuals with disabilities. 84 Fed. Reg. at

4    41,368. DHS argues these disparate and discriminatory effects are justified,

5    however, by Congress's direction in the INA that the relevant public charge

6    factors include an individual's "health." ECF No. 155 at 50. Without offering any

7    citation to governing authority, DHS theorizes that by including "health" as a

8    factor, the statute "certainly includes an alien's disability." *Id.* Thus, according

9    to DHS, the INA takes precedence over Section 504 because "[a] specific, later

10   statutory command, such as that contained in the INA, supersedes section 504's

11   general proscription to the extent the two are in conflict." *Id.* at 61.

12        The reality is actually the inverse. As between the two statutes, Section

13   504's narrow prohibition against disability-based discrimination is far more

14   specific and targeted than the INA's generalized direction to consider "health" as

15   a factor in the public charge analysis. For example, Section 504 contains express

16   definitions for what constitutes a disability, *see* 29 U.S.C. § 705(20)(A); what

17   does *not* constitute a disability, *see* 29 U.S.C. § 705(20)(D), (F)(i-iii); and what

18   constitutes a "significant disability," *see* 29 U.S.C. § 705(21)(A)(i-iii). By

19   contrast, even DHS concedes that in the context of the INA, Congress "le[ft] the

20   meaning of 'health' undefined." *See* ECF No. 155 at 36 n.11; *see also id.* at 36.

21

22

PLAINTIFF STATES' REPLY IN
SUPPORT OF MOT. FOR § 705
STAY PENDING JUDICIAL
REVIEW OR FOR PRELIM. INJ.
NO. 4:19-CV-05210-RMP

17

ATTORNEY GENERAL OF WASHINGTON
8127 W. Klamath Court, Suite A
Kennewick, WA 99336
(509) 734-7285

1    For the proposition that DHS should be able to consider disabilities in

2  making public charge determinations, it relies on a case addressing a rule that

3  was upheld in large part because it did *not* consider disabilities. *See* ECF No. 155

4  at 51–52. In *Sandison v. Michigan High School Athletic Association*, the Sixth

5  Circuit overturned the preliminary injunction of a statute barring 19-year-olds

6  from playing high school sports. 64 F.3d 1026, 1030 (6th Cir. 1995) (reasoning

7  that although the statute had the effect of disadvantaging students with learning

8  disabilities, it did not violate Section 504, in large part because it focused solely

9  on the students' ages and did not consider their disabilities in the analysis).

10    Here, in contrast to *Sandison*, DHS not only seeks to consider an

11  individual's disability in the public charge analysis, but even intends to double-

12  and triple-count factors frequently related to and overlapping with disabilities,

13  such as an individual's use of Medicaid or lack of private insurance. *See* ECF No.

14  35-1 at 222 of 661 (Ex. L) (Comment by ACLU) ("In our nation's complex

15  system of disability and health care, receipt of Medicaid is inseparable from the

16  status of being disabled."). Thus, despite DHS's head-in-the-sand argument that

17  an individual's disability will be just one factor "among many," *see* ECF No. 155

18  at 51, the Rule ensures individuals with disabilities will suffer a cascade of

19  negative and heavily-weighted negative factors, all because of their disability.

20  The Rule discriminates against persons with disabilities and violates the

21  Rehabilitation Act.

22

PLAINTIFF STATES' REPLY IN
SUPPORT OF MOT. FOR § 705
STAY PENDING JUDICIAL
REVIEW OR FOR PRELIM. INJ.
NO. 4:19-CV-05210-RMP

18

ATTORNEY GENERAL OF WASHINGTON
8127 W. Klamath Court, Suite A
Kennewick, WA 99336
(509) 734-7285

**C.     The Rule Is Arbitrary and Capricious**

DHS's response makes clear it lacks any reasonable justification for the dramatic harms the Rule will inflict on vulnerable populations, as well as the unfettered discretion its arbitrary and unreliable factors will afford to immigration officials enforcing the Rule. An agency's action will be deemed arbitrary and capricious if the agency "entirely failed to consider an important aspect of the problem [or] offered an explanation for its decision that runs counter to the evidence before the agency." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co. (State Farm)*, 463 U.S. 29, 43 (1983). Here, DHS has failed to address significant parts of the problem and has not offered reasoned explanations to justify the choices it made based on the facts it found. *Id.* Further, where an agency departs from prior policy that has engendered serious reliance interests, it must provide an even more "detailed justification" for its actions. *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009). DHS's response falls far short of the mark.

**1.     DHS has failed to justify the Rule's potentially devastating effect on public health**

Despite being presented with overwhelming evidence the Rule would lead to severe public health crises, including reduced vaccinations and the increased spread of communicable diseases such as tuberculosis, DHS largely shrugged off these concerns and proceeded to finalize the Rule. For example, instead of attempting to substantively address the potential harms to public health, DHS

PLAINTIFF STATES' REPLY IN SUPPORT OF MOT. FOR § 705 STAY PENDING JUDICIAL REVIEW OR FOR PRELIM. INJ. NO. 4:19-CV-05210-RMP

19

ATTORNEY GENERAL OF WASHINGTON
8127 W. Klamath Court, Suite A
Kennewick, WA 99336
(509) 734-7285

1    contends it cannot "measure the immeasurable" or "respond to every single
2    example cited in every single comment." *See* ECF No. 155 at 39–40. The issue
3    is not, however, the lack of precise measurement, but that, given the dire public
4    health risks, DHS is required to demonstrate a reasonable attempt to grasp the
5    magnitude of the problem along with a cogent justification of the harms. *See State*
6    *Farm*, 463 U.S. at 43; *Pub. Citizen v. Fed. Motor Carrier Safety Admin.*, 374 F.3d
7    1209, 1219 (D.C. Cir. 2004) (the "mere fact" that a rule's effect is "*uncertain* is
8    no justification for *disregarding* the effect entirely" (emphasis in original)). DHS
9    essentially concedes it has done neither, instead falling back on its token refrain
10   that the goal of self-sufficiency justifies whatever unknown harms the Rule might
11   inflict. *See McDonnell Douglas Corp. v. U.S. Dep't of the Air Force*, 375 F.3d
12   1182, 1187 (D.C. Cir. 2004) (explaining that courts will not defer to [an] agency's
13   conclusory or unsupported suppositions").

14       DHS also responds that it exempted children and pregnant women's
15   receipt of Medicaid benefits from the analysis, which it contends "should
16   eliminate much of the concern that children will forgo vaccinations as a result of
17   the Rule." ECF No. 155 at 39. This response, however, fails to address many of
18   the public health crises warned about in the comments, *see* ECF No. 34 at 42–43,
19   and it does nothing to remedy the concern that *adults* who do not obtain
20   vaccinations may give rise to an outbreak. Without adequate supporting
21   information, evidence, or context, DHS speculates there might be sufficient state
22

PLAINTIFF STATES' REPLY IN
SUPPORT OF MOT. FOR § 705
STAY PENDING JUDICIAL
REVIEW OR FOR PRELIM. INJ.
NO. 4:19-CV-05210-RMP

20

ATTORNEY GENERAL OF WASHINGTON
8127 W. Klamath Court, Suite A
Kennewick, WA 99336
(509) 734-7285

or local government providers that will administer affordable vaccinations absent Medicaid coverage. ECF No. 155 at 39–40. But given the overwhelming evidence of public health consequences that are likely to result from implementation of the Rule—and are in fact *already* resulting from it, *see, e.g.*, ECF No. 35-1 at 97–107 of 661 (Ex. F) (describing disenrollment resulting from chilling effect of the proposed rule); ECF No. 60 (Batayola Decl.) at 9–10 (describing patients and clients who have already requested disenrollment from benefits programs)—DHS's lack of any reasonable effort to consider the magnitude of the problem is facially deficient.

### 2. DHS has failed to justify severe and irreparable harm to children

DHS also has failed to offer any meaningful justification in response to overwhelming evidence showing the Rule will have devastating effects for children who benefit from food and housing assistance. As commenters explained, the Rule will lead to increased childhood hunger, malnutrition, and homelessness, which are associated with a litany of related effects and lifelong traumas, including depression, poor performance in school, mental illness, substance abuse disorder, and chronic health conditions such as asthma. *See, e.g.*, ECF No. 35-1 at 607–12 of 661 (Ex. V) (Comment by Childhood Asthma Leadership Coalition).

DHS argues that any potential harms the Rule might inflict on such children are justified by the need to promote the purported goal of "self-

PLAINTIFF STATES' REPLY IN
SUPPORT OF MOT. FOR § 705
STAY PENDING JUDICIAL
REVIEW OR FOR PRELIM. INJ.
NO. 4:19-CV-05210-RMP

21

ATTORNEY GENERAL OF WASHINGTON
8127 W. Klamath Court, Suite A
Kennewick, WA 99336
(509) 734-7285

1    sufficiency." ECF No. 155 at 41–42. There is no logical basis, however, for

2    penalizing a young child for her receipt of food or housing assistance in the hopes

3    that doing so will prompt her to someday become "self-sufficient." *Am. Wild*

4    *Horse Pres. Campaign v. Perdue*, 873 F.3d 914, 932 (D.C. Cir. 2017) (vacating

5    agency action that failed "to consider or to adequately analyze [the]

6    consequences" of agency decision).

7         DHS similarly fails to offer a coherent justification for its decision to

8    exempt children's Medicaid benefits from the public charge analysis but count

9    their receipt of SNAP or housing assistance against them. Instead, DHS largely

10   relies on irrelevant facts that have nothing to do with the problem. ECF No. 155

11   at 42–43 (arguing that the distinction is justified in part because unlike Medicaid,

12   SNAP contains only a limited waiver of the waiting period). DHS's reasoning

13   reflects the arbitrariness of a Rule that would promote so absurd a goal as

14   childhood "self-sufficiency" at so great a cost.

15        **3.    DHS has failed to justify harms to individuals with disabilities**

16        In response to evidence that the Rule will be devastating for individuals

17   living with disabilities, DHS contends that "[o]nly if an alien, disabled or not, is

18   likely to use one or more covered federal benefits for the specific period of time

19   will that individual be found inadmissible as a public charge." ECF No. 155 at

20   50–52. In other words, presented with overwhelming evidence that individuals

21   with disabilities rely on Medicaid for services that are not covered by private

22

PLAINTIFF STATES' REPLY IN
SUPPORT OF MOT. FOR § 705
STAY PENDING JUDICIAL
REVIEW OR FOR PRELIM. INJ.
NO. 4:19-CV-05210-RMP

22

ATTORNEY GENERAL OF WASHINGTON
8127 W. Klamath Court, Suite A
Kennewick, WA 99336
(509) 734-7285

1    insurance and which allow them to work and be self-sufficient, DHS crafted a

2    Rule aimed at "self-sufficiency" but accomplished the inverse. *See State Farm*,

3    463 U.S. at 43. The most the agency does is acknowledge the Rule might have a

4    "potentially outsized impact" on such individuals. 84 Fed. Reg. at 41,368. For

5    the reasons set forth above, this is deficient. *See supra* at 17–19 (arguing the Rule

6    violates Section 504 of the Rehabilitation Act).

### 4. DHS relies on vague, arbitrary factors that prevent meaningful or even-handed enforcement of the Rule

8    DHS attempts to justify its consideration of factors such as English

9    proficiency and credit scores even despite evidence showing the factors are

10   vague, unreliable, and have no reasonable relation to the Rule's purported goal.

11   *Compare, e.g.*, ECF No. 35-1 at 655–57 of 661 (Ex. Y) (Comment from

12   Consumer Reports) ("Credit scores are designed to measure the likelihood that a

13   borrower will become 90 days late on a credit obligation [and] do not contain

14   information about an individual's earnings or other income.") *and id.* at 659–61

15   of 661 (Ex. Z) (Comment from Credit Builders Alliance) (noting that credit

16   scores are "a poor indicator of one's ability to provide for themselves and their

17   family" and that "25 percent of credit reports have 'potentially material errors'

18   that could affect a consumer's score") *with* ECF No. 155 at 49–50 (arguing that,

19   "notwithstanding occasional flaws, credit reports are probative of an individual's

20   financial condition, as evidenced by their widespread use throughout the

21   American economy"). Similarly, the Rule's use of vague and undefined

22

PLAINTIFF STATES' REPLY IN
SUPPORT OF MOT. FOR § 705
STAY PENDING JUDICIAL
REVIEW OR FOR PRELIM. INJ.
NO. 4:19-CV-05210-RMP

23

1    benchmarks such as "English proficiency" demonstrates the Rule is arbitrary and

2    capricious. *See Ariz. Cattle Growers Ass'n v. U.S. Fish & Wildlife Serv.*, 273 F.3d

3    1229 (9th Cir. 2001) (holding rule was arbitrary and capricious because the

4    question of "whether there has been compliance with [its] vague directive [was]

5    within the unfettered discretion of the [agency], leaving no method by which the

6    applicant . . . can gauge their performance").

7          In response, DHS argues that factors such as "English proficiency" are not

8    vague, as DHS has "specif[ied] this and other factors to be considered,"

9    "explain[ed] which factors are to be afforded greater weight," and "specifically

10   explained how it will implement" the Rule. *See* ECF No. 155 at 48. But this

11   argument is conclusory and fails to address the issue. Moreover, DHS ignored

12   that by incorporating such vague and undefined factors into the public charge

13   analysis, the Rule gives immigration officers unfettered discretion when

14   conducting public charge assessments, making each applicant's assessment a

15   "sport of chance" that "the APA's 'arbitrary and capricious' standard is designed

16   to thwart." *Judulang v. Holder*, 565 U.S. 42, 58–59 (2011).

17   **D.    The Plaintiff States Will Suffer Irreparable Harm Absent a Stay or
         Injunction**

18

19         Through 51 declarations from state officials who administer Medicaid and

     other public health programs, food and cash assistance programs, and housing

20   programs, along with non-profit organizations on the front lines helping

21

22   immigrants to thrive, the Plaintiff States have made a powerful showing of the

PLAINTIFF STATES' REPLY IN                24         ATTORNEY GENERAL OF WASHINGTON
SUPPORT OF MOT. FOR § 705                             8127 W. Klamath Court, Suite A
STAY PENDING JUDICIAL                                      Kennewick, WA 99336
REVIEW OR FOR PRELIM. INJ.                                  (509) 734-7285
NO. 4:19-CV-05210-RMP

1    irreparable injury that the Rule will cause. These harms are certain to occur, and,

2    in fact are already occurring, even though the Rule has not yet gone into effect.

3    *See* ECF No. 60 (Batayola Decl.) at 9–10 (patients and clients have already

4    requested disenrollment from programs such as the Special Supplemental

5    Nutrition Program for Women, Infants, and Children, even where benefits are not

6    actually enumerated in Rule); ECF No. 152 (Br. of Amici Curiae Am. Academy

7    of Pediatrics) at 13 (explaining significant 2018 disenrollment rates upon

8    announcement of the proposed rule, and stating this demonstrated "chilling effect

9    is real, measurable, and exacerbated by the final Regulation.").

10          Immigrants have already withdrawn from federal and state programs,

11    thereby endangering their health and wellbeing and frustrating the missions of

12    the state programs meant to ensure healthy communities. *See, e.g.*, ECF No. 35-

13    1 at 97–107 of 661 (Ex. F) (describing chilling effect of the proposed rule); *see*

14    *also* 1999 Field Guidance, 64 Fed. Reg. at 28,692 (explaining INS's conclusion

15    that "reluctance to access benefits" on the part of "eligible aliens and their

16    families, including [their] U.S. citizen children," "has an adverse impact not just

17    on the potential recipients, but on public health and the general welfare"). This

18    *predictable* reaction in turn imposes *predictable* and specific costs on the Plaintiff

19    States. *See supra* at 2–5.

20

21

22

PLAINTIFF STATES' REPLY IN
SUPPORT OF MOT. FOR § 705
STAY PENDING JUDICIAL
REVIEW OR FOR PRELIM. INJ.
NO. 4:19-CV-05210-RMP

25

1    The greatest defect in DHS's argument is its confusion of *whether* these

2    harms will occur with the *extent* of the harm that will occur.[5] But there can be no

3    dispute that harm will occur. Indeed, DHS concedes disenrollment will occur, 84

4    Fed. Reg. at 41,463, medical care will shift to the emergency room, 84 Fed. Reg.

5    at 41,384, and the prevalence of disease will increase, 84 Fed. Reg. at 41,384 and

6    51,270. It is well-established that if the Plaintiff States are able to prove that these

7    harms are fairly traceable to the defendants, as they have amply done, the

8    magnitude of the harm is irrelevant to the Court's analysis. *See Simula, Inc.*, 175

9    F.3d at 725 (preliminary injunction may be granted "irrespective of the

10   magnitude of the injury").

11   Furthermore, the declarations submitted by the States provide more than the

12   requisite amount of certainty, imminence, and irreparability regarding the Rule's

13   resulting harms. For example, the public health injuries to residents are obvious

14   and are described through numerous declarations. *See, e.g.*, ECF No. 71 (Oliver

15   Decl.) at 11 (". . . People will die."); ECF No. 37 (Linke Decl.) at 11 ("Families

16   will not seek preventative care services. . ."); ECF No. 38 (Sharfstein Decl.) at 5

17

---

18   [5] It is notable that at the same time DHS criticizes the Plaintiff States for

19   not providing exact measurements of the precise harms the Rule will inflict, it

20   excuses its own *de minimus* response to the over 266,000 comments largely in

21   opposition to the Rule, asserting it could not "obtain the unobtainable" or

22   "measure the immeasurable." ECF No. 155 at 50.

PLAINTIFF STATES' REPLY IN
SUPPORT OF MOT. FOR § 705
STAY PENDING JUDICIAL
REVIEW OR FOR PRELIM. INJ.
NO. 4:19-CV-05210-RMP

26

1    ("[F]amilies will not sign up for the Medicaid program, even for their children

2    who are entitled to care. . . [and] the result will be unnecessary illness").[6]

3        The Plaintiff States have made the same overwhelming showing of harm to

4    their missions, *see, e.g.*, ECF No. 37 (Linke Decl.) at 14 (The Rule would

5    "unwind[] all the progress that has been achieved to ensure that all

6    Washingtonians have access to affordable care."); ECF No. 43 (MacEwan Decl.)

7    at 7 (describing how the reduction of "lawfully present enrollees will result in a

8    sicker risk pool and increase premium costs for all remaining residents enrolled

9    in commercial insurance coverage through Washington Healthplanfinder"), and

10   harm to their fiscs, *see, e.g.*, ECF No. 66 (Peterson Decl.) at 19 (explaining that

11   changes to food and cash assistance programs alone would result in a reduction

12   of up to $97.5 million annually in total economic output in Washington).

13       While DHS portrays the issue as one of speculative harm to individuals, the

14   Court should instead find that immigrants, when confronted with the threat of

15   _____

16       [6] The submissions by amici curiae likewise paint a vivid picture of the

17   harms to vulnerable groups. *See, e.g.*, ECF No. 110 (Br. of Amici Curiae ACLU)

18   (harms to disabled individuals); ECF No. 111 (Br. of Amici Curiae Nonprofit

19   Anti-Domestic Violence & Sexual Assault Organizations) (harms to domestic

20   violence victims); ECF Nos. 149 (Amici Curiae Br. of AHA), 152 (Br. of Amici

21   Curiae Am. Academy of Pediatrics) (harms to children and pregnant women);

22   ECF No. 150 (Br. of Amici Curiae Justice in Aging) (harms to elderly).

PLAINTIFF STATES' REPLY IN
SUPPORT OF MOT. FOR § 705
STAY PENDING JUDICIAL
REVIEW OR FOR PRELIM. INJ.
NO. 4:19-CV-05210-RMP

27

ATTORNEY GENERAL OF WASHINGTON
8127 W. Klamath Court, Suite A
Kennewick, WA 99336
(509) 734-7285

1    deportation, will react predictably in forgoing benefits to which they are

2    otherwise legally entitled. ECF No. 153 (Br. of Amici Curiae Fiscal Policy Inst.)

3    at 10–11 (projecting economic losses of up to $24 billion for the United States as

4    a whole). Accordingly, the Plaintiff States have met their burden of establishing

5    irreparable injury.

6         In a last ditch effort to show the remaining equitable interests weigh in its

7    favor, DHS asserts "there can be no doubt that Defendants have a substantial

8    interest in administering the national immigration system, a *solely federal*

9    prerogative." ECF No. 155 at 57. But a stay would not prevent DHS from

10   "administering the national immigration system"—it would only require DHS to

11   maintain the status quo. DHS's argument also presumes its rulemaking was

12   lawful. If DHS were correct that such a vague assertion were sufficient to balance

13   the equities in its favor, the analysis would be rendered meaningless, as the

14   government could always allege an overriding interest in enforcing its own

15   decisions. Here, the balance of equities weighs heavily in the Plaintiff States'

16   favor. *See* ECF No. 34 at 55–56; *see also E. Bay Sanctuary Covenant v. Trump*,

17   932 F.3d 742, 778–79 (9th Cir. 2018) (affirming grant of TRO in immigration

18   case and explaining the stay did not harm the government but instead

19   "temporarily restored the law to what it had been for many years prior").

20   **E.    Nationwide Relief Is Necessary to Afford Complete Relief**

21        Nationwide relief, whether in the form of a stay pursuant to APA § 705 or

22

PLAINTIFF STATES' REPLY IN                    28           ATTORNEY GENERAL OF WASHINGTON
SUPPORT OF MOT. FOR § 705                                        8127 W. Klamath Court, Suite A
                                                                     Kennewick, WA 99336
STAY PENDING JUDICIAL                                                  (509) 734-7285
REVIEW OR FOR PRELIM. INJ.
NO. 4:19-CV-05210-RMP

1    a preliminary injunction, is appropriate in this case. "The scope of an injunction

2    is 'dependent as much on the equities of a given case as the substance of the legal

3    issues it presents,' and courts must tailor the scope 'to meet the exigencies of the

4    particular case.'" *Azar*, 911 F.3d at 584 (quoting *Trump v. Int'l Refugee*

5    *Assistance Project*, 137 S. Ct. 2080, 2087 (2017)). Here, a stay or injunction

6    applied to only the fourteen Plaintiff States would not afford complete relief, and,

7    to the contrary, would compound the harms on the state fiscs.

8         The Court should not credit DHS's about-face on the necessity of

9    "uniformity in immigration policy." *Regents of the Univ. of Cal. v. U.S. Dep't of*

10   *Homeland Sec.*, 908 F.3d 476, 511 (9th Cir. 2018). DHS's assertion that any relief

11   should be limited to the Plaintiff States is undermined by its consistent previous

12   arguments in other immigration cases advocating a uniform nationwide

13   immigration system. *See, e.g.*, Br. for Appellant at 30, *United States of America*

14   *v. State of California*, 2018 WL 4641711 (9th Cir., filed Sept. 18, 2018) (No. 18-

15   16196) (arguing for release of information regarding federal immigration

16   detainees under a uniform federal scheme rather than the varying laws of fifty

17   states); Br. for the United States at 24, *Arizona v. United States of America*, 2012

18   WL 939048 (U.S., filed Mar. 19, 2012) ("scheme that depends on national

19   uniformity cannot coexist with a patchwork of different state regimes").

20        Furthermore, beyond the need to avoid a disjointed and unworkable

21   nationwide immigration system, nationwide relief is necessary to afford the

22

PLAINTIFF STATES' REPLY IN            29        ATTORNEY GENERAL OF WASHINGTON
SUPPORT OF MOT. FOR § 705                          8127 W. Klamath Court, Suite A
STAY PENDING JUDICIAL                                    Kennewick, WA 99336
REVIEW OR FOR PRELIM. INJ.                                (509) 734-7285
NO. 4:19-CV-05210-RMP

1    Plaintiff States effective relief. *Bresgal v. Brock*, 843 F.2d 1163, 1170–71 (9th

2    Cir. 1987). Here, the harm alleged by the Plaintiff States is not only financial. *See*

3    *Azar*, 911 F.3d at 584 (holding that a nationwide injunction was not proper where

4    a localized injunction would sufficiently remedy the alleged financial harm). The

5    disenrollment and resulting harms to health caused by the Rule's chilling effect

6    can only be sufficiently addressed with a nationwide remedy.

7        This is true, first, because any immigrant residing in one of the Plaintiff

8    States who may in the future wish to move to another state not among them would

9    be deterred from accessing public benefits if relief were limited in geographic

10   scope. Second, a geographically limited injunction could spur immigrants now

11   living elsewhere to move to one of the Plaintiff States, compounding their

12   economic injuries. Third, a public health crisis or outbreak resulting from the

13   Rule's implementation in another state may quickly spread to the Plaintiff States.

14   Fourth, and finally, if the injunction applied only in the fourteen Plaintiff States,

15   a lawful permanent resident returning to the United States from a trip abroad of

16   more than 180 days would be subject to DHS's new Rule at a point of entry.

17   Therefore, the scope of the injunction must be universal to afford the Plaintiff

18   States the meaningful and effective relief to which they are entitled.

19                           **II.    CONCLUSION**

20       For the foregoing reasons, the Plaintiff States' motion for § 705 relief

21   pending judicial review or for preliminary injunction should be granted.

22

PLAINTIFF STATES' REPLY IN
SUPPORT OF MOT. FOR § 705
STAY PENDING JUDICIAL
REVIEW OR FOR PRELIM. INJ.
NO. 4:19-CV-05210-RMP

30

ATTORNEY GENERAL OF WASHINGTON
8127 W. Klamath Court, Suite A
Kennewick, WA 99336
(509) 734-7285

1          RESPECTFULLY SUBMITTED this 27th day of September, 2019.

2    ROBERT W. FERGUSON
    Attorney General of Washington

3

4    */s/ Jeffrey T. Sprung*
    JEFFREY T. SPRUNG, WSBA #23607
    Assistant Attorney General

5    RENE D. TOMISSER, WSBA #17509
    Senior Counsel

6    ZACHARY P. JONES, WSBA #44557
    JOSHUA WEISSMAN, WSBA #42648

7    PAUL M. CRISALLI, WSBA #40681
    NATHAN K. BAYS, WSBA #43025

8    BRYAN M.S. OVENS, WSBA #32901
    Assistant Attorneys General

9    8127 W. Klamath Court, Suite A
    Kennewick, WA 99336

10   (509) 734-7285
    Jeff.Sprung@atg.wa.gov

11   Rene.Tomisser@atg.wa.gov
    Zach.Jones@atg.wa.gov

12   Joshua.Weissman@atg.wa.gov
    Paul.Crisalli@atg.wa.gov

13   Nathan.Bays@atg.wa.gov
    Bryan.Ovens@atg.wa.gov

14   *Attorneys for Plaintiff State of Washington*

15

16

17

18

19

20

21

22

PLAINTIFF STATES' REPLY IN
SUPPORT OF MOT. FOR § 705
STAY PENDING JUDICIAL
REVIEW OR FOR PRELIM. INJ.
NO. 4:19-CV-05210-RMP

31

1    MARK R. HERRING
     Attorney General of Virginia
2
     */s/ Michelle S. Kallen*
3    MICHELLE S. KALLEN, VSB #93286
     Deputy Solicitor General
4    RYAN SPREAGUE HARDY, VSB #78558
     ALICE ANNE LLOYD, VSB #79105
5    MAMOONA H. SIDDIQUI, VSB #46455
     Assistant Attorneys General
6    Office of the Attorney General
     202 North Ninth Street
7    Richmond, Virginia 23219
     (804) 786-7240
8    MKallen@oag.state.va.us
     RHardy@oag.state.va.us
9    ALloyd@oag.state.va.us
     MSiddiqui@oag.state.va.us
10   SolicitorGeneral@oag.state.va.us
     *Attorneys for Plaintiff Commonwealth of Virginia*

11

12   PHIL WEISER
     Attorney General of Colorado
13
     */s/ Eric R. Olson*
14   ERIC R. OLSON, #36414
     Solicitor General
15   Office of the Attorney General
     Colorado Department of Law
16   1300 Broadway, 10th Floor
     Denver, CO 80203
17   (720) 508 6548
     Eric.Olson@coag.gov
18   *Attorneys for Plaintiff the State of Colorado*

19

20

21

22

PLAINTIFF STATES' REPLY IN                32
SUPPORT OF MOT. FOR § 705
STAY PENDING JUDICIAL
REVIEW OR FOR PRELIM. INJ.
NO. 4:19-CV-05210-RMP

ATTORNEY GENERAL OF WASHINGTON
8127 W. Klamath Court, Suite A
Kennewick, WA 99336
(509) 734-7285

1    KATHLEEN JENNINGS
     Attorney General of Delaware
2    AARON R. GOLDSTEIN
     State Solicitor
3    ILONA KIRSHON
     Deputy State Solicitor
4
     */s/ Monica A. Horton*
5    MONICA A. HORTON, #5190
     Deputy Attorney General
6    820 North French Street
     Wilmington, DE 19801
7    Monica.horton@delaware.gov
     *Attorneys for Plaintiff the State of Delaware*
8

9    KWAME RAOUL
     Attorney General State of Illinois
10
     */s/ Liza Roberson-Young*
11   LIZA ROBERSON-YOUNG, #6293643
     Public Interest Counsel
12   Office of the Illinois Attorney General
     100 West Randolph Street, 11th Floor
13   Chicago, IL 60601
     (312) 814-5028
14   ERobersonYoung@atg.state.il.us
     *Attorneys for Plaintiff State of Illinois*
15

16   CLARE E. CONNORS
     Attorney General of Hawaiʻi
17
     */s/ Lili A. Young*
18   LILI A. YOUNG, #5886
     Deputy Attorney General
19   Department of the Attorney General
     425 Queen Street
20   Honolulu, HI 96813
     (808) 587-3050
21   Lili.A.Young@hawaii.gov
     *Attorneys for Plaintiff State of Hawaiʻi*
22

PLAINTIFF STATES' REPLY IN              33         ATTORNEY GENERAL OF WASHINGTON
SUPPORT OF MOT. FOR § 705                              8127 W. Klamath Court, Suite A
STAY PENDING JUDICIAL                                      Kennewick, WA 99336
REVIEW OR FOR PRELIM. INJ.                                   (509) 734-7285
NO. 4:19-CV-05210-RMP

1    BRIAN E. FROSH
     Attorney General of Maryland
2
     */s/ Jeffrey P. Dunlap*
3    JEFFREY P. DUNLAP
     D. MD Bar #20846
4    MD State Bar #1812100004
     Assistant Attorney General
5    200 St. Paul Place
     Baltimore, MD 21202
6    T: (410) 576-6325
     F: (410) 576-6955
7    JDunlap@oag.state.md.us
     *Attorneys for Plaintiff State of Maryland*
8

9    MAURA HEALEY
     Attorney General of Commonwealth of Massachusetts
10
     */s/ Abigail B. Taylor*
11   ABIGAIL B. TAYLOR, #670648
     Chief, Civil Rights Division
12   DAVID UREÑA, #703076
     Special Assistant Attorney General
13   ANGELA BROOKS, #663255
     Assistant Attorney General
14   Office of the Massachusetts Attorney General
     One Ashburton Place
15   Boston, MA 02108
     (617) 963-2232
16   abigail.taylor@mass.gov
     david.urena@mass.gov
17   angela.brooks@mass.gov
     *Attorneys for Plaintiff Commonwealth of Massachusetts*
18

19

20

21

22

PLAINTIFF STATES' REPLY IN          34          ATTORNEY GENERAL OF WASHINGTON
SUPPORT OF MOT. FOR § 705                              8127 W. Klamath Court, Suite A
STAY PENDING JUDICIAL                                       Kennewick, WA 99336
REVIEW OR FOR PRELIM. INJ.                                      (509) 734-7285
NO. 4:19-CV-05210-RMP

1  DANA NESSEL
   Attorney General of Michigan
2
   */s/Toni L. Harris*
3  FADWA A. HAMMOUD, #P74185
   Solicitor General
4  TONI L. HARRIS, #P63111
   *First Assistant Attorney General*
5  Michigan Department of Attorney General
   P.O. Box 30758
6  Lansing, MI 48909
   (517) 335-7603 (main)
7  HarrisT19@michigan.gov
   Hammoudf1@michigan.gov
8  *Attorneys for the People of Michigan*

9
   KEITH ELLISON
10 Attorney General of Minnesota

11 */s/ R.J. Detrick*
   R.J. DETRICK, #0395336
12 *Assistant Attorney General*
   Minnesota Attorney General's Office
13 Bremer Tower, Suite 100
   445 Minnesota Street
14 St. Paul, MN 55101-2128
   (651) 757-1489
15 (651) 297-7206
   Rj.detrick@ag.state.mn.us
16 *Attorneys for Plaintiff State of Minnesota*

17

18

19

20

21

22

PLAINTIFF STATES' REPLY IN            35            ATTORNEY GENERAL OF WASHINGTON
SUPPORT OF MOT. FOR § 705                            8127 W. Klamath Court, Suite A
STAY PENDING JUDICIAL                                Kennewick, WA 99336
REVIEW OR FOR PRELIM. INJ.                           (509) 734-7285
NO. 4:19-CV-05210-RMP

1  AARON D. FORD
   Attorney General of Nevada

2
   */s/ Heidi Parry Stern*
3  HEIDI PARRY STERN, #8873
   Solicitor General
4  Office of the Nevada Attorney General
   555 E. Washington Ave., Ste. 3900
5  Las Vegas, NV 89101
   HStern@ag.nv.gov
6  *Attorneys for Plaintiff State of Nevada*

7

   GURBIR SINGH GREWAL
8  Attorney General of New Jersey

9  */s/ Glenn J. Moramarco*
   GLENN J. MORAMARCO, #030471987
10 Assistant Attorney General
   Office of the Attorney General
11 Richard J. Hughes Justice Complex
   25 Market Street, 1st Floor, West Wing
12 Trenton, NJ 08625-0080
   (609) 376-3232
13 Glenn.Moramarco@law.njoag.gov
   *Attorneys for Plaintiff State of New Jersey*
14

15 HECTOR BALDERAS
   Attorney General of New Mexico
16
   */s/ Tania Maestas*
17 TANIA MAESTAS, #20345
   Chief Deputy Attorney General
18 P.O. Drawer 1508
   Santa Fe, New Mexico 87504-1508
19 tmaestas@nmag.gov
   *Attorneys for Plaintiff State of New Mexico*
20

21

22

PLAINTIFF STATES' REPLY IN            36            ATTORNEY GENERAL OF WASHINGTON
SUPPORT OF MOT. FOR § 705                              8127 W. Klamath Court, Suite A
STAY PENDING JUDICIAL                                     Kennewick, WA 99336
REVIEW OR FOR PRELIM. INJ.                                  (509) 734-7285
NO. 4:19-CV-05210-RMP

1  PETER F. NERONHA
   Attorney General of Rhode Island
2
   */s/ Lauren E. Hill*
3  LAUREN E. HILL, #9830
   Special Assistant Attorney General
4  Office of the Attorney General
   150 South Main Street
5  Providence, Rhode Island 02903
   (401) 274-4400 x 2038
6  E-mail: lhill@riag.ri.gov
   *Attorneys for Plaintiff State of Rhode Island*
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

PLAINTIFF STATES' REPLY IN              37
NO. 4:19-CV-05210-RMP

1

## <u>DECLARATION OF SERVICE</u>

2          I hereby declare that on this day I caused the foregoing document to be

3    electronically filed with the Clerk of the Court using the Court's CM/ECF System

4    which will serve a copy of this document upon all counsel of record.

5          DATED this 27th day of September, 2019, at Seattle, Washington.

6

7                              */s/ Jeffrey T. Sprung*
                              JEFFREY T. SPRUNG, WSBA #23607
8                              Senior Counsel

9

10

11

12

13

14

15

16

17

18

19

20

21

22

PLAINTIFF STATES' REPLY IN                38        ATTORNEY GENERAL OF WASHINGTON
SUPPORT OF MOT. FOR § 705                              8127 W. Klamath Court, Suite A
STAY PENDING JUDICIAL                                      Kennewick, WA 99336
REVIEW OR FOR PRELIM. INJ.                                  (509) 734-7285
NO. 4:19-CV-05210-RMP