JOSEPH H. HUNT
Assistant Attorney General
WILLIAM D. HYSLOP
United States Attorney
ALEXANDER K. HAAS
Branch Director
ERIC J. SOSKIN
Senior Trial Counsel
KERI L. BERMAN
KUNTAL V. CHOLERA
JOSHUA M. KOLSKY, DC Bar No. 993430
JASON C. LYNCH
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON
### AT SPOKANE

STATE OF WASHINGTON, *et al.*,

Plaintiffs,

v.

UNITED STATES DEPARTMENT OF
HOMELAND SECURITY, *et al.*,

Defendants

No. 4:19-cv-5210-RMP

MOTION TO DISMISS
AMENDED COMPLAINT

Noted for: July 13, 2020
Without Oral Argument

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................... 1

BACKGROUND ..................................................................................................... 1

STANDARD OF REVIEW ..................................................................................... 5

ARGUMENT .......................................................................................................... 6

    I.   Plaintiffs' Claims Are Not Justiciable ................................................. 6

    A.   Plaintiffs Lack Standing .................................................................. 6

    B.   Plaintiffs Are Outside the Zone of Interests Regulated by the Rule ............. 9

    II.   The Court Should Dismiss Count One ......................................... 11

    A.   The Rule is Consistent with the INA's Public Charge Provision ............ 11

    B.   The Rule is Consistent with Other INA Provisions ................................... 13

    C.   The Rule is Consistent with PRWORA .................................................... 15

    D.   The Rule is Consistent with the Rehabilitation Act .................................. 16

    III.   The Court Should Dismiss Count Two ......................................... 17

    IV.   The Court Should Dismiss Count Three ........................................ 18

    A.   Plaintiffs' Allegations Do Not Suggest the Rule is Arbitrary or Capricious .................................................................................... 18

    B.   DHS Adequately Responded to Comments And Adequately Addressed the Costs and Benefits of the Rule .............................. 23

    V.   The Court Should Dismiss Count Four ......................................... 25

CONCLUSION ..................................................................................................... 28

# TABLE OF AUTHORITIES

## Cases

*Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez,*
  458 U.S. 592 (1982) ...................................................................................... 9

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) .................................................................................. 5, 6

*Ass'n of Private Sector Colls. & Univs. v. Duncan,*
  681 F.3d 427 (D.C. Cir. 2012)..................................................................... 24

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) .................................................................................. 5, 6

*Cholla Ready Mix, Inc. v. Civish,*
  382 F.3d 969 (9th Cir. 2004) ........................................................................ 6

*City & Cty. of S.F. v. U.S.C.I.S.,*
  408 F. Supp. 3d 1057 (N.D. Cal. 2019)................................................. 17, 25

*City and Cty. of San Francisco v. USCIS,*
  944 F.3d 773 (9th Cir. 2019) ................................................................*passim*

*Clapper v. Amnesty Int'l USA,*
  568 U.S. 398 (2013) ...................................................................................... 7

*Clarke v. Sec. Indus. Ass'n,*
  479 U.S. 388 (1987) ...................................................................................... 9

*Clearwater v. Indep. Sch. Dist. No. 166,*
  231 F.3d 1122 (8th Cir. 2000) ..................................................................... 28

*Fla. Bankers Ass'n v. U.S. Dep't of Treas.,*
  19 F. Supp. 3d 111 (D.D.C. 2014)............................................................... 23

*Food & Water Watch, Inc. v. Vilsack,*
  808 F.3d 905 (D.C. Cir. 2015)....................................................................... 8

*Havens Realty Corp. v. Coleman,*
  455 U.S. 363 (1982) ...................................................................................... 8

*Husted v. A. Philip Randolph Inst.*,
    138 S. Ct. 1833 (2018)............................................................ 12

*INS v. Legalization Assistance Proj.*,
    510 U.S. 1301 (1993) ............................................................ 10

*La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*,
    624 F.3d 1083 (9th Cir. 2010).................................................. 8

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    572 U.S. 118 (2014) .............................................................. 9

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) .............................................................. 6

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*,
    567 U.S. 209 (2012) .......................................................... 9, 10

*Meyer v. Bush*,
    981 F.2d 1288 (D.C. Cir. 1993)............................................... 23

*Native Vill. of Kivalina v. ExxonMobil Corp.*,
    696 F.3d 849 (9th Cir. 2012) ................................................... 7

*Pers. Adm'r of Massachusetts v. Feeney*,
    442 U.S. 256 (1979) ......................................................... 26, 27

*Pub. Citizen, Inc. v. FAA*,
    988 F.2d 186 (D.C. Cir. 1993)................................................. 24

*Sierra Forest Legacy v. Sherman*,
    646 F.3d 1161 (9th Cir. 2011) ................................................. 8

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009) ........................................................... 6, 7

*Trump v. Hawaii*,
    138 S. Ct. 2392 (2018)....................................................... 26, 27

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*,
    429 U.S. 252 (1977) ......................................................... 26, 28

iii

*Washington v. Davis*,
    426 U.S. 229 (1976) ................................................................. 26

*Whitmore v. Ark.*,
    495 U.S. 149 (1990) ................................................................... 6

### Statutes

8 U.S.C. § 1152(a)(1) ................................................................. 14

8 U.S.C. § 1182(a) ............................................................. *passim*

8 U.S.C. § 1182(s) ..................................................................... 12

8 U.S.C. § 1252 ......................................................................... 10

8 U.S.C. § 1258 ......................................................................... 18

8 U.S.C. § 1601(1) ....................................................................... 1

8 U.S.C. § 1641(b) ..................................................................... 15

8 U.S.C. § 1184 ......................................................................... 18

29 U.S.C. § 794(a) ..................................................................... 16

Pub. L. No. 104-193, 1110 Stat. 3009-546 (1996) ........................... 2

Pub. L. No. 104-193, 110 Stat. 2105 (1996) .................................... 3

Immigration Act of 1882,
    22 Stat. 214 (1882) ................................................................... 2

Immigration Act of 1891,
    26 Stat. 1084 (1891) ................................................................. 2

Immigration Act of 1907,
    34 Stat. 898 (1907) ................................................................... 2

Immigration Act of 1917,
    39 Stat. 874 (1917) ................................................................... 2

Immigration and Nationality Act of 1952,

U.S. DEP'T OF JUSTICE
1100 L St. NW, Washington, DC, 20003
(202) 353-0533

66 Stat. 163 (1952) .......................................................................................... 2

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ........................................................ 5

**Regulations**

64 Fed. Reg. 28676 (May 26, 1999) ................................................................ 3

64 Fed. Reg. 28689 (May 26, 1999) ...................................................... 3, 4, 15

83 Fed. Reg. 51114 (Oct. 10, 2018).......................................................*passim*

84 Fed. Reg. 41292 (Aug. 14, 2019).......................................................*passim*

**Legislative Materials**

S. Rep. No. 81-1515 (1950) ............................................................................. 2

MOT. TO DISMISS
NO. 4:19-CV-05210-RMP

U.S. DEP'T OF JUSTICE
1100 L St. NW, Washington, DC, 20003
(202) 353-0533

**INTRODUCTION**

The Court previously issued a preliminary injunction against the Department of Homeland Security's final rule *Inadmissibility on Public Charge Grounds* ("Rule"), 84 Fed. Reg. 41292 (Aug. 14, 2019). *See* Or. Granting Pl. States' Mot. for Section 705 Stay and Prelim. Inj. ("PI Order"), ECF No. 162. Since then, the Ninth Circuit Court of Appeals has issued a detailed opinion concluding that the Rule falls well within the Executive Branch's discretion to interpret and implement the public charge inadmissibility provision in the Immigration and Nationality Act ("INA") and is not arbitrary or capricious. *See City and Cty. of San Francisco v. USCIS*, 944 F.3d 773 (9th Cir. 2019). Particularly in light of the Ninth Circuit's ruling, and for the reasons discussed herein, Defendants respectfully request the Court to dismiss Plaintiffs' Amended Complaint.

**BACKGROUND**

"Self-sufficiency has been a basic principle of United States immigration law since this country's earliest immigration statutes." 8 U.S.C. § 1601(1). "[T]he immigration policy of the United States [is] that aliens within the Nation's borders not depend on public resources to meet their needs." *Id*. § 1601(2)(A). Rather, aliens must "rely on their own capabilities and the resources of their families, their sponsors, and private organizations." *Id*. Relatedly, "the availability of public benefits [is] not [to] constitute an incentive for immigration to the United States." *Id*. § 1601(2)(B).

These statutorily enumerated policies are effectuated in part through the public

charge ground of inadmissibility in the INA. With certain exceptions, the INA provides that "[a]ny alien who, in the opinion of the consular officer at the time of application for a visa, or in the opinion of the Attorney General, or the Secretary of Homeland Security, at the time of application for admission or adjustment of status, is likely at any time to become a public charge is inadmissible." 8 U.S.C. § 1182(a)(4)(A). An unbroken line of predecessor statutes going back to at least 1882 have contained a similar inadmissibility ground for public charges, and those statutes have, without exception, delegated to the Executive Branch the authority to determine who constitutes a public charge for purposes of that provision. *See* Immigration Act of 1882, 47th Cong. ch. 376, §§ 1-2, 22 Stat. 214 ("1882 Act"); 1891 Immigration Act, 51st Cong. ch. 551, 26 Stat. 1084 ("1891 Act"); Immigration Act of 1907, 59th Cong. ch. 1134, 34 Stat. 898 ("1907 Act"); Immigration Act of 1917, 64th Cong. ch. 29 § 3, 39 Stat. 874, 876 ("1917 Act"); INA of 1952, 82nd Cong. ch. 477, section 212(a)(15), 66 Stat. 163, 183. Indeed, in a Report leading up to the enactment of the INA, the Senate Judiciary Committee emphasized that because "the elements constituting likelihood of becoming a public charge are varied, there should be no attempt to define the term in the law," and that the public charge inadmissibility determinations properly "rest[] within the discretion of" the Executive Branch. S. Rep. No. 81-1515, at 349 (1950).

In 1996, Congress enacted immigration and welfare reform statutes that bear on the public charge inadmissibility determination. The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Division C of Pub. L. No. 104-208, 1110 Stat. 3009-546 (1996) strengthened the enforcement of the public charge

U.S. DEP'T OF JUSTICE
1100 L St. NW, Washington, DC, 20003
(202) 353-0533

inadmissibility ground in several ways. First, Congress instructed that, in making public charge inadmissibility determinations, "the consular officer or the Attorney General shall at a minimum consider the alien's: (1) age; (2) health; (3) family status; (4) assets, resources, and financial status; and (5) education and skills," 8 U.S.C. § 1182(a)(4)(B), but otherwise left in place the broad delegation of authority to the Executive Branch to determine who constitutes a public charge. IIRIRA also raised the standards and responsibilities for individuals who must "sponsor" an alien by pledging to provide support to maintain that immigrant at the applicable threshold for the period of enforceability and requiring that sponsors demonstrate the means to maintain an annual income at the applicable threshold. Contemporaneously, the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 ("PRWORA"), Pub. L. No. 104-193, 110 Stat. 2105, restricted most aliens from accessing many public support programs. PRWORA also made the sponsorship requirements in IIRIRA legally enforceable against sponsors.

In light of the 1996 legislative developments, the legacy Immigration and Naturalization Service ("INS") started in 1999 to engage in formal rulemaking to guide immigration officers, aliens, and the public in understanding public charge inadmissibility determinations. *See Inadmissibility and Deportability on Public Charge Grounds*, 64 Fed. Reg. 28676 (May 26, 1999) ("1999 NPRM"). No final rule was ever issued, however. Instead, the agency adopted the 1999 NPRM interpretation on an interim basis by publishing *Field Guidance on Deportability and Inadmissibility on Public Charge Grounds*, 64 Fed. Reg. 28689 (May 26, 1999) ("Field Guidance"). The Field

MOT. TO DISMISS
NO. 4:19-CV-05210-RMP

U.S. DEP'T OF JUSTICE
1100 L St. NW, Washington, DC, 20003
(202) 353-0533

Guidance dramatically narrowed the public charge inadmissibility ground by defining "public charge" as an alien who is likely to become "primarily dependent on the government for subsistence," and by barring immigration officers from considering any non-cash public benefits, regardless of the value or length of receipt, as part of the public charge inadmissibility determination. *See id.* at 28689. Under that standard, an alien receiving Medicaid (other than for institutionalization for long-term care), food stamps, and public housing, but not cash assistance, would have been treated as no more likely to become a public charge than an alien who was entirely self-sufficient.

The Rule revises this approach and adopts, through notice-and-comment rulemaking, a well-reasoned definition of public charge providing practical guidance to DHS officials making public charge inadmissibility determinations. DHS began by publishing a Notice of Proposed Rulemaking, comprising 182 pages of description, evidence, and analysis. *See Inadmissibility on Public Charge Grounds*, 83 Fed. Reg. 51114 (Oct. 10, 2018) ("NPRM"). The NPRM provided a 60-day public comment period, during which 266,077 comments were received. *See* Rule at 41297. After considering these comments, DHS published the Rule, addressing comments, making several revisions to the proposed rule, and providing over 200 pages of analysis in support of its decision. Among the Rule's major components are provisions defining "public charge" and "public benefit" (which are not defined in the statute), an enumeration of factors to be considered in the totality of the circumstances when making a public charge inadmissibility determination, and a requirement that aliens seeking an extension of stay or a change of status show that they have not received public benefits in excess of the

MOT. TO DISMISS
NO. 4:19-CV-05210-RMP

U.S. DEP'T OF JUSTICE
1100 L St. NW, Washington, DC, 20003
(202) 353-0533

Rule's threshold since obtaining nonimmigrant status. The Rule supersedes the Interim Field Guidance definition of "public charge," establishing a new definition based on a minimum time threshold for the receipt of public benefits. Under this "12/36 standard," a public charge is an alien who receives designated public benefits for more than 12 months in the aggregate within any 36-month period. *Id*. at 41297. Such "public benefits" are extended by the Rule to include many non-cash benefits: with some exceptions, an alien's participation in the Supplemental Nutrition Assistance Program ("SNAP"), Section 8 Housing Programs, Medicaid, and Public Housing may now be considered as part of the public charge inadmissibility determination. *Id*. at 41501-02. The Rule also enumerates a non-exclusive list of factors for assessing whether an alien is likely at any time to become a public charge and explains how DHS officers should apply these factors as part of a totality of the circumstances determination.[1]

## STANDARD OF REVIEW

To survive a challenge under Federal Rule of Civil Procedure 12(b)(6), a complaint must have sufficient factual allegations to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must provide "more than labels and conclusions,

---

[1] A correction to the Rule was published in the Federal Register on October 2, 2019.  *See* https://www.federalregister.gov/documents/2019/10/02/2019-21561/inadmissibility-on-public-charge-grounds-correction.

MOT. TO DISMISS
NO. 4:19-CV-05210-RMP

U.S. DEP'T OF JUSTICE
1100 L St. NW, Washington, DC, 20003
(202) 353-0533

and a formulaic recitation of the elements of a cause of action will not do," *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678; *see also Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 973 (9th Cir. 2004) ("[T]he court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged. Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.") (citations and internal quotation marks omitted).

## ARGUMENT

### I.   Plaintiffs' Claims Are Not Justiciable

#### A. Plaintiffs Lack Standing

Plaintiffs bear the burden of establishing standing, "an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "To seek injunctive relief, a plaintiff must show that [it] is under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action . . . ; and it must be likely that a favorable judicial decision will prevent or redress the injury." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). The "threatened injury must be certainly impending to constitute injury in fact"; allegations of "possible future injury do not satisfy . . . Art. III." *Whitmore v. Ark.*, 495 U.S. 149, 158 (1990). Where, as here, "the plaintiff is not [itself] the object of the government action," standing "is ordinarily 'substantially more difficult' to establish." *Lujan*, 504 U.S. at 562.

U.S. DEP'T OF JUSTICE
1100 L St. NW, Washington, DC, 20003
(202) 353-0533

1   Here, the Rule governs DHS personnel and certain aliens. It "neither require[s] nor

2   forbid[s] any action on the part of" Plaintiffs, *Summers*, 555 U.S. at 493, nor does it

3   expressly interfere with any of their programs applicable to aliens. Plaintiffs rely on the

4   theory that certain aliens may unnecessarily choose to forgo all federal benefits—such as

5   Medicaid—thereby resulting in greater reliance on state benefits). *See* Am. Compl., ECF

6   No. 31, ¶¶ 173, 175. But a "causal chain involv[ing] numerous third parties whose

7   independent decisions collectively" create injuries is "too weak to support standing."

8   *Native Vill. of Kivalina v. ExxonMobil Corp.*, 696 F.3d 849, 867 (9th Cir. 2012); *see also*

9   *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410, 414 (2013) (courts are "reluctan[t] to

10  endorse standing theories that rest on speculation about the decisions of independent

11  actors"). Additionally, Plaintiffs fail to adequately allege that the Rule would produce a

12  net increase in costs for the Plaintiffs. Medicaid disenrollment, for example, is not

13  ordinarily regarded as likely to increase costs to States, who pay a portion of Medicaid

14  expenses. And although DHS predicted that States would incur some costs, it also

15  estimated that the Rule would decrease state benefit outlays by several billion dollars. 83

16  Fed. Reg. at 51,228. Indeed, Plaintiffs' other allegations confirm that the Rule would

17  conserve Plaintiffs' resources since it would have "broader chilling effects among *all*

18  *state-run assistance programs*," thus *discouraging* reliance on State-benefits. Am.

19  Compl. ¶ 175 (emphasis added); *see also id.* ¶ 225 (the Rule will have "a chilling effect

20  on assistance programs that are not considered 'public benefits' under the analysis"); *id.*

21  ¶ 355 (alleging that the Rule may reduce the use of State cash-assistance programs).

22

1    As a separate category of harm, the States gesture towards an organizational

2    standing theory, yet they provide no authority supporting the novel extension of this

3    theory of standing from the private organizations to whom it has always been applied to

4    the Plaintiffs here, sovereign *States*. Generally, "[a]n organization suing on its own behalf

5    can establish an injury when it suffered both a diversion of its resources and a frustration

6    of its mission." *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*,

7    624 F.3d 1083, 1088 (9th Cir. 2010). The alleged injury to its mission must be "more

8    than simply a setback to the organization's abstract social interests." *Havens Realty Corp.*

9    *v. Coleman*, 455 U.S. 363, 379 (1982). Such plaintiffs must show that the challenged

10   "conduct perceptibly impaired the organization's ability to provide services," not just that

11   its "mission has been compromised" in the abstract. *Food & Water Watch, Inc. v. Vilsack*,

12   808 F.3d 905, 919 (D.C. Cir. 2015). There is a compelling reason to believe that a State

13   may not avail itself of these principles by defining itself as an "organization"; namely,

14   the longstanding doctrines that tightly cabin the circumstances in which a State may bring

15   suit against the United States. *See Sierra Forest Legacy v. Sherman*, 646 F.3d 1161, 1178

16   (9th Cir. 2011) (explaining that *parens patriae* suits are unavailable and describing the

17   circumstances in which a State may sue to protect "its territory [or] its proprietary

18   interests"). Insofar as every State's mission includes the protection of its citizens'

19   interests, limitations on State standing would not be recognized in the law if a State could

20

21

22

U.S. DEP'T OF JUSTICE
1100 L St. NW, Washington, DC, 20003
(202) 353-0533

simply rely on "organizational" standing. Further, Plaintiffs do not even allege that the Rule frustrates the performance of any specific State activity.[2]

### B. Plaintiffs Are Outside the Zone of Interests Regulated by the Rule

Even if Plaintiffs could establish standing, their claims would fail because they are outside the zone of interests of the "public charge" inadmissibility provision in § 1182(a)(4)(A). The "zone-of-interests" requirement limits the plaintiffs who "may invoke [a] cause of action" to enforce a particular statutory provision or its limits. *Lexmark Int'l, Inc. v. Static Control Components, Inc*., 572 U.S. 118, 129-30 (2014). Under the APA, a plaintiff falls outside this zone when its "interests are . . . marginally related to or inconsistent with the purposes implicit in the statute." *Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 399 (1987). This standard applies with equal force where, as here, Plaintiffs seek to challenge the government's adherence to statutory provisions in the guise of an APA claim. *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 224 (2012).

---

[2] Plaintiffs further claim that the Rule will adversely affect the health of certain persons living within the Plaintiff States. *See* Am. Compl. ¶¶ 15-21. But this is an injury born by those individuals, not the Plaintiff States. And the Supreme Court has concluded that "[a] State does not have standing as parens patriae to bring an action against the Federal Government." *Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*, 458 U.S. 592, 610 n.16 (1982). For the same reason, the Plaintiff States independently lack standing to assert their equal protection claim (which implicates the rights of their citizens, not the States themselves).

U.S. DEP'T OF JUSTICE
1100 L St. NW, Washington, DC, 20003
(202) 353-0533

Plaintiffs plainly fall outside the zone of interests served by the limits of the meaning of public charge in the inadmissibility statute. It is aliens improperly determined to be inadmissible, not States, who "fall within the zone of interests protected" by any limitations implicit in § 1182(a)(4)(A) and § 1183, because they are the "reasonable—indeed, predictable—challengers" to DHS's inadmissibility decisions. *Patchak*, 567 U.S. at 227; *see* 8 U.S.C. § 1252 (providing individuals who have a final order of removal from the United States based on a public charge determination an opportunity to file a petition for review before a federal court of appeals to contest the definition of public charge as applied to them). The purported harms "ultimately to state treasuries" asserted by the States are not even "marginally related" to those of an alien seeking to demonstrate that the "public charge" inadmissibility ground has been improperly applied to his detriment. *Cf. INS v. Legalization Assistance Proj.*, 510 U.S. 1301, 1304-05 (1993) (O'Connor, J., in chambers) (concluding that relevant INA provisions were "clearly meant to protect the interests of undocumented aliens, not the interests of organizations [that provide legal help to immigrants]," and that the fact that a "regulation may affect the way an organization allocates its resources . . . does not give standing to an entity which is not within the zone of interests the statute meant to protect").

In its PI Order, the Court noted that Plaintiffs fall within the relevant zone of interests since the public charge inadmissibility provision seeks, in part, to "protect state fiscs." PI Order at 29. But the provision seeks to protect the public fisc by rendering inadmissible those likely to be public charges, thereby decreasing the burden on both federal and state benefit programs. Here, Plaintiffs assert an injury that is almost the

precise inverse: to allegedly protect the public fisc by rendering *more* aliens admissible, and ensuring that they depend *more* on federal benefits.

## II.    The Court Should Dismiss Count One

Plaintiffs' primary claim is that the Rule is contrary to law. *See* Am. Compl. ¶¶ 415-18 (Count 1). They allege that the Rule violates the INA's public charge inadmissibility provision and five other statutory provisions. *Id.* ¶ 417(a)-(f). None of those allegations is plausible.

### A. The Rule is Consistent with the INA's Public Charge Provision

Plaintiffs allege that, by defining "public charge" as "an alien who receives one or more public benefits, in even modest amounts," the Rule "unmoors" the term from "its original public meaning." *Id.* ¶ 417. But as the Ninth Circuit recently held, the Rule's definition of "public charge" is well within the bounds of the statute. *San Francisco*, 944 F.3d at 799 ("We conclude that DHS's interpretation of 'public charge' is a permissible construction of the INA.").

The Ninth Circuit made four principal observations: (1) that the word "opinion" is classic "language of discretion," under which immigration "officials are given broad leeway"; (2) that "public charge" is neither a "term of art" nor "self-defining," and is thus ambiguous under *Chevron* as "capable of a range of meanings"; (3) that Congress set out five factors for consideration but expressly did not limit officials to those factors, which gave officials "considerable discretion"; and (4) that Congress granted DHS the power to adopt regulations, by which "Congress intended that DHS would resolve any ambiguities in the INA." *Id.* at 791-92.

Following these observations and a comprehensive, detailed account of the history

U.S. DEP'T OF JUSTICE
1100 L St. NW, Washington, DC, 20003
(202) 353-0533

1    of the "public charge" provision, *id.* at 792-97, the Ninth Circuit had little trouble

2    concluding either that "the phrase 'public charge' is ambiguous," *id.* at 798, or that

3    "DHS's interpretation of 'public charge' is a permissible construction of the INA," *id.* at

4    799. The same result should follow here, and Count One should be dismissed.

5         There are additional reasons, not expressly relied on by the Ninth Circuit, why the

6    Rule is consistent with the INA. First, Congress expressly instructed that, when making

7    a public charge inadmissibility determination, DHS "shall not consider any benefits the

8    alien may have received," 8 U.S.C. § 1182(s), including various noncash benefits, if the

9    alien "has been battered or subjected to extreme cruelty in the United States by [specified

10   persons]," *id.* § 1641(c); *see also id.* §§ 1611-1613 (specifying the public benefits for

11   which battered aliens and other qualified aliens are eligible). The prohibition on

12   considering a battered alien's receipt of any benefits presupposes that DHS would,

13   ordinarily, consider the receipt of benefits in making public charge inadmissibility

14   determinations. *Cf. Husted v. A. Philip Randolph Inst.*, 138 S. Ct. 1833, 1844 (2018)

15   ("There is no reason to create an exception to a prohibition unless the prohibition would

16   otherwise forbid what the exception allows.").

17        In addition, Congress mandated that many aliens seeking admission or applying

18   for adjustment of status submit an affidavit of support executed by a sponsor to avoid a

19   public charge inadmissibility determination. *See* 8 U.S.C. § 1182(a)(4)(C) (requiring

20   most family-sponsored immigrants to submit enforceable affidavits of support);

21   § 1182(a)(4)(D) (same for certain employment-based immigrants), § 1183a (affidavit of

22   support requirements). Aliens who fail to submit a required affidavit of support are

inadmissible on the public charge ground by operation of law, regardless of their individual circumstances. *Id.* § 1182(a)(4). Congress further specified that the sponsor must agree "to maintain the sponsored alien at an annual income that is not less than 125 percent of the Federal poverty line," *id.* § 1183a(a)(1)(A), and it granted federal and state governments the right to seek reimbursement from the sponsor for "any means-tested public benefit" that the government provides to the alien during the period of enforceability, *id.* § 1183a(b)(1)(A); *see also id.* § 1183a(a) (affidavits of support are legally binding and enforceable contracts "against the sponsor by the sponsored alien, the Federal Government, any State (or any political subdivision of such State), or by any other entity that provides any means-tested public benefit").

The import of the affidavit of support provision is clear: To avoid being found inadmissible on the public charge ground, an alien governed by the affidavit of support provision must submit a sufficient affidavit of support executed by a sponsor—generally the individual who filed the immigrant visa petition on the alien's behalf—who has agreed to reimburse the government for *any* means-tested public benefits the alien receives while the sponsorship obligation is in effect, even if the alien receives those benefits only briefly and only in minimal amounts. Congress thus provided that the mere *possibility* that an alien might obtain unreimbursed, means-tested public benefits in the future was sufficient to render that alien inadmissible on the public charge ground, regardless of the alien's other circumstances.

## B. The Rule is Consistent with Other INA Provisions

Plaintiffs also allege, albeit briefly, that the Rule violates INA Sections 202(a)(1),

U.S. DEP'T OF JUSTICE
1100 L St. NW, Washington, DC, 20003
(202) 353-0533

1    8 U.S.C. § 1152, and 212(a)(1), 8 U.S.C. § 1182(a)(1). *See* Am. Compl. ¶ 417(b)-(c).

2    Neither of these claims is plausibly alleged.

3    The only reference to INA Section 202(a)(1) is in Am. Compl. ¶ 61 & n.43.

4    Plaintiffs explain that INA Section 202, as amended by the Hart-Celler Immigration Act

5    of 1965, Pub. L. 89-236, § 201, 79 Stat. 911, forbids per-country preferences or priorities

6    based on race, sex, nationality, place of birth, or place of residence. 8 U.S.C. § 1152(a)(1).

7    But beyond that statutory history, Plaintiffs never allege *how* the Rule adopts one of those

8    forbidden preferences—which it plainly does not. Section 202 of the INA governs visa

9    applications and grants, which is far afield of the Rule's providence. This claim should

10   be dismissed.

11   As for Plaintiffs' reference to INA Section 212(a)(1), Am. Compl. ¶ 145 & n.178,

12   it seems the allegation is that the Rule "engraft[s]" a new, "broad[] health-based

13   exclusion[]." *Id.* ¶ 145 n.178. But that argument proceeds from a faulty premise: that "the

14   medical condition negative factor [is] likely to be dispositive." *Id.* ¶ 145. The defining

15   feature of a totality of the circumstances assessment is that *no* factor is dispositive, and

16   the Rule makes that clear: "The presence of a single positive or negative factor, or heavily

17   weighted negative or positive factor, *will never*, on its own, create a presumption that an

18   applicant is inadmissible . . . or determine the outcome of the . . . inadmissibility

19   determination. Rather, a public charge inadmissibility determination must be based on

20   the totality of the circumstances presented." Rule at 41295 (emphasis added). More than

21   that, the INA expressly requires DHS to consider "health" among those circumstances. 8

22   U.S.C. § 1182(a)(4)(B)(i)(II). This claim, too, should be dismissed.

MOT. TO DISMISS
NO. 4:19-CV-05210-RMP

U.S. DEP'T OF JUSTICE
1100 L St. NW, Washington, DC, 20003
(202) 353-0533

1

## C. The Rule is Consistent with PRWORA

2       Plaintiffs also contend that the Rule is contrary to PRWORA because the Rule

3   allegedly "punish[es] immigrants for using public benefits for which Congress itself

4   made them eligible." Am. Compl. ¶¶ 7, 417(d).  But that argument is obviously incorrect

5   because *all* public assistance is authorized by law.  For instance, under the 1999 Field

6   Guidance, an alien could be deemed a public charge if he or she were likely to be

7   primarily dependent on cash assistance for income maintenance or institutionalized, even

8   though those forms of support were authorized.  Field Guidance at 28689.  The Rule's

9   consideration of receipt of public benefits, as defined by the Rule, does not limit or

10  prohibit aliens' entitlement to such benefits or alter states' authority to determine aliens'

11  eligibility. Rather, the Rule directs immigration authorities to consider whether aliens

12  have used such benefits as part of the totality of the circumstances analysis required by 8

13  U.S.C. § 1182(a)(4)(B). *See* Rule at 41365-66. Although individual aliens may choose,

14  for a variety of reasons related or unrelated to the Rule, not to access certain benefits to

15  which they are entitled, the Rule does nothing to alter the nature or extent of that

16  entitlement or States' authority to administer those programs, and there is therefore no

17  conflict between the Rule and PRWORA.[3]

18

19  [3] Plaintiffs' argument also ignores that the "qualified aliens" to whom PRWORA's

20  authorization of certain public benefits applies are generally not subject to the public

21  charge ground of inadmissibility. *See* 8 U.S.C. § 1641(b) ("qualified alien" includes, *inter*

22  *alia*, lawful permanent residents, asylum recipients, and refugees).

U.S. DEP'T OF JUSTICE
1100 L St. NW, Washington, DC, 20003
(202) 353-0533

1

### D. The Rule is Consistent with the Rehabilitation Act

2          Plaintiffs contend that the Rule is contrary to Section 504 of the Rehabilitation Act

3   of 1973, which provides that "[n]o otherwise qualified individual with a disability in the

4   United States . . . shall, solely by reason of her or his disability, be excluded from the

5   participation in, be denied the benefits of, or be subjected to discrimination . . . under any

6   program or activity conducted by any Executive agency." Am. Compl. ¶ 417(f) (quoting

7   29 U.S.C. § 794(a)). Critically, however, the requirement of § 504 is premised on the

8   denial of services or discrimination "*solely* by reason of . . . disability." 29 U.S.C. § 794(a)

9   (emphasis added).

10          In staying this Court's preliminary injunction, the Ninth Circuit ruled that "DHS

11   has shown a strong likelihood that the Final Rule does not violate the Rehabilitation Act"

12   and that Plaintiffs' argument to the contrary "need not detain us long." *San Francisco*,

13   944 F.3d at 800. The Court of Appeals explained that the INA requires immigration

14   officers to consider aliens' health and "to the extent that inquiry may consider an alien's

15   disability officers have been specifically directed by Congress to do so." *Id.* It then held

16   that "nothing in the Final Rule suggests that aliens will be denied admission or adjustment

17   of status 'solely by reason of her or his disability,'" because the Rule repeatedly

18   "confirms that the public charge determination is a totality-of-the-circumstances test." *Id.*

19   Likewise, the Northern District of California ruled in similar litigation that the plaintiffs

20   there "had not demonstrated even serious question going to the merits" of a materially

21

22

U.S. DEP'T OF JUSTICE
1100 L St. NW, Washington, DC, 20003
(202) 353-0533

identical Rehabilitation Act challenge to the Rule. *City & Cty. of S.F. v. U.S.C.I.S.*, 408 F. Supp. 3d 1057, 1103 (N.D. Cal. 2019).[4]

## III.    The Court Should Dismiss Count Two

Plaintiffs allege that the Rule "expands the public charge exclusion to reach applicants for extension of stay and change of status." Am. Compl. ¶ 421. This claim should be dismissed for two reasons.

First, DHS is *not* expanding the public charge inadmissibility provision to cover nonimmigrants who seek to extend their visas or change their statuses. *See generally* Rule at 41329. Rather, DHS is independently setting a new condition for approval of extension of stay and change of status applications and petitions pursuant to its ample statutory authority to impose such conditions. Although that condition requires such an applicant or petitioner to establish that the nonimmigrant has not received more than 12 months of public benefits within any 36-month period since obtaining the nonimmigrant status, that is manifestly not a public charge inadmissibility determination—which involves a forward-looking prediction about an alien's use of benefits *in the future*, and which only applies to applicants for visas, admission, and adjustment of status and which imposes other statutory considerations. *See* 8 U.S.C. § 1182(a)(4). At bottom, the Rule imposes a condition of approval, not a public charge inadmissibility determination, on

---

[4] Plaintiffs also allege that the Rule is contrary to IIRIRA, Am. Compl. ¶ 417(e), but the complaint contains no allegations explaining Plaintiffs' theory or suggesting any violation of that Act.

nonimmigrant visa holders who seek to change or extend their nonimmigrant status.

Second, this condition is a reasonable exercise of DHS's authority. *See* Rule at 41329 (citing 8 U.S.C. §§ 1184, 1258). DHS governs "[t]he admission to the United States of any alien as a nonimmigrant." 8 U.S.C. § 1184(a)(1). But DHS's role does not end upon the nonimmigrant's admission; DHS also governs how long, and under what conditions, the nonimmigrant can stay, *id.*, or change nonimmigrant statuses, *id.* § 1258. And because it is national policy "that aliens *within the Nation's borders* not depend on public resources to meet their needs," *id.* § 1601(2)(A) (emphasis added), it is reasonable and consistent with the statute that DHS require, as a condition of obtaining an extension of stay or change of status, evidence that nonimmigrants inside the United States have remained self-sufficient during their stay.

## IV.    The Court Should Dismiss Count Three

Claim Three of Plaintiffs' Complaint alleges that the Rule is arbitrary and capricious in violation of the APA for numerous reasons.  *See* Am. Compl. ¶¶ 423-27. Claim Three should be dismissed because none of the theories alleged in the Complaint plausibly suggest the Rule is arbitrary or capricious.

### A. Plaintiffs' Allegations Do Not Suggest the Rule is Arbitrary or Capricious

First, Plaintiffs' allege that the Rule's definition of public charge is arbitrary and capricious. Am. Compl. ¶ 427(a). As discussed above, however, the Rule's definition is easily a permissible definition of the statutory term. *See* Section II(A) *supra*. Also, there is nothing arbitrary or capricious about including non-cash public benefits in that

U.S. DEP'T OF JUSTICE
1100 L St. NW, Washington, DC, 20003
(202) 353-0533

definition.  *See* Am. Comp. ¶ 427(b). As the Ninth Circuit explained, "it is a short leap in logic for DHS to go from considering in-cash public assistance to considering both in-cash and in-kind public assistance." *San Francisco*, 944 F.3d at 800. Plaintiffs fail to explain why a public charge determination should distinguish between a person who relies on the government for food, housing, and/or medical care and a person who relies on the government for cash assistance that is used to pay for food, housing, and/or medical care.

Next, DHS did not arbitrarily select the 12/36 standard. Am. Compl. ¶ 427(c). In developing that standard, DHS relied on studies regarding patterns of benefits usage which offered "insight into the length of time that recipients of public benefits tend to remain on those benefits, and lend support to the notion that this rule's standard provides meaningful flexibility to aliens who may require one or more of the public benefits for relatively short periods of time, without allowing an alien who is not self-sufficient to avoid facing public charge consequences." Rule at 41360. The 12/36 standard accommodates a significant proportion of short-term benefits use, while also providing a clear, administrable cut-off point.  *Id*.

Plaintiffs' allegation that the Rule creates heavily weighted factors "that are not among the enumerated factors Congress directed the Department to consider," Am. Compl. ¶ 427(d), is baseless. The factors enumerated by Congress are the "minimum" to consider. 8 U.S.C. § 1182(a)(4)(B). Congress "expressly did not limit the discretion of officials to those factors." *San Francisco*, 944 F.3d at 792. "Other factors may be considered as well, giving officials considerable discretion in their decisions." *Id*.

MOT. TO DISMISS
NO. 4:19-CV-05210-RMP

U.S. DEP'T OF JUSTICE
1100 L St. NW, Washington, DC, 20003
(202) 353-0533

1  Likewise, Plaintiffs' allegation that the Rule improperly considers whether an alien is

2  likely to become a public charge "at any time in the future," Am. Compl. ¶ 427(e), is also

3  directly refuted by the statute. The statute expressly requires DHS to consider whether

4  the alien "likely at any time to become a public charge[.]" 8 U.S.C. § 1182(a)(4)(A).

5  Also, there is certainly nothing irrational with relying on an applicant's credit

6  history or financial liabilities where the statute expressly requires DHS to consider, *inter*

7  *alia*, the alien's "assets, resources, and financial status." *Id*. § 1182(a)(4)(B)(IV). Credit

8  reports provide an indication of the relative strength or weakness of an individual's

9  financial status, and thus provide insight into whether the alien will be able to support

10 himself or herself financially in the future. NPRM at 51189; Rule at 41425.

11 Plaintiffs also challenge DHS's selection of certain income thresholds. Am.

12 Compl. ¶ 427(g)-(h). Under the Rule, "[a]ny household income between 125 percent and

13 250 percent of the [Federal Poverty Guidelines ("FPG")] is considered a positive factor

14 in the totality of the circumstances." Rule at 41448. Income above 250 percent of FPG is

15 considered a heavily weighted positive factor. *Id*. at 41446. If household income is less

16 than 125 percent of the FPG, it will generally be a heavily weighted negative factor, *id*.

17 at 41323, although DHS will consider whether the alien has sufficient assets and

18 resources to offset the lower income, *id*. at 41413. DHS adequately explained why it

19 chose those income thresholds. The 125 percent threshold is based on the income

20 threshold set by Congress for sponsors of aliens. *Id*. at 41447-48. The Rule's use of the

21 125 percent threshold therefore maintains consistency with the threshold in the sponsor

22 context. *Id*. at 41448. In addition, both thresholds are supported by data establishing a

MOT. TO DISMISS
NO. 4:19-CV-05210-RMP

correlation between low incomes and the receipt of public benefits. *Id*. at 41416-17; NPRM at 51204-06.

Also, it is not arbitrary or capricious for the Rule to consider past immigration-related fee waivers. Am. Compl. ¶ 427(i). As DHS explained, "requesting or receiving a fee waiver for an immigration benefit suggests a weak financial status," because "fee waivers are based on an inability to pay, [and] seeking or obtaining a fee waiver for an immigration benefit suggests an inability to be self-sufficient." Rule at 41424-25. DHS also discussed a Senate Appropriations Report that noted that "those unable to pay USCIS fees are less likely to live in the United States independent of government assistance." *Id*. at 41425.

Next, the Rule appropriately treats the fact that an alien has private health insurance as a heavily weighted positive factor because it is a strong indicator of self-sufficiency. *Id*. at 41448-49 (discussing data showing that "individuals who have private health insurance are significantly less likely to be receiving one or more enumerated public benefits in this rule than those individuals who do not have private health insurance").

Plaintiffs also challenge the Rule's consideration of whether the applicant has a high school degree. Am. Compl. ¶ 427(k). But the statute expressly requires DHS to consider an applicant's "education." 8 U.S.C. § 1182(a)(4)(B)(V).

Next, in concluding that English proficiency was a relevant factor in the public charge inadmissibility calculus, DHS cited Census Bureau data and other studies indicating that non-English speakers earned considerably less money and were more likely to be unemployed than English speakers, thus supporting the conclusion that non-

U.S. DEP'T OF JUSTICE
1100 L St. NW, Washington, DC, 20003
(202) 353-0533

English speakers were more likely to become public charges than their English-proficient counterparts. NPRM at 51195-96. DHS also cited evidence indicating that noncitizens who reside in households where English is spoken "[n]ot well" or "[n]ot at all" received public benefits at much higher rates than noncitizens residing in households where English was spoken "[w]ell" or "[v]ery well." *Id*. at 51196.

Plaintiffs also challenge the Rule's weighing framework as "vague and irrational." Am. Compl. ¶ 427(p). DHS explained that the NPRM had "provided specific examples of various concepts and laid out in great detail the applicability of the rule to different classes of aliens," and "also provided an exhaustive list of the additional non-cash public benefits that would be considered[.]" Rule at 41321. DHS also discussed the various changes it made to address the vagueness concerns, including revising the list of public benefits, simplifying the benefits threshold, and deciding not to consider receipt of benefits not listed in the Rule. *Id*. Further, DHS stated that it intends to provide "clear guidance to ensure that there is adequate knowledge and understanding among the regulated public regarding which benefits will be considered and when, as well as to ensure that aliens understand whether they are or are not subject to the public charge ground of inadmissibility." *Id*. In any event, the Rule cannot possibly be unlawfully vague when it is more specific than the statute, which Plaintiffs do not challenge.

Also, there is nothing irrational with DHS considering an alien's application for public benefits. Am. Compl. ¶ 427(q). An application for benefits, though "not the same as receipt," is nonetheless "indicative of an alien's intent to receive such a benefit." Rule at 41422. The fact that an alien believed he or she needed public assistance to support his

U.S. DEP'T OF JUSTICE
1100 L St. NW, Washington, DC, 20003
(202) 353-0533

1  or her basic needs is a relevant factor when considering the likelihood that that person

2  will become a public charge. *Id.*

3      Lastly, Plaintiffs cannot maintain a claim for "the failure to engage in proper

4  analysis of the Department's obligations under Executive Order 13,132" concerning

5  federalism, Am. Compl. ¶ 427(u), because "Executive Orders cannot give rise to a cause

6  of action" under the APA. *Fla. Bankers Ass'n v. U.S. Dep't of Treas.*, 19 F. Supp. 3d 111,

7  118 n.1 (D.D.C. 2014), vacated on other grounds, 799 F.3d 1065 (D.C. Cir. 2015); *Meyer*

8  *v. Bush*, 981 F.2d 1288, 1296 n.8 (D.C. Cir. 1993) ("An Executive Order devoted solely

9  to the internal management of the executive branch—and one which does not create any

10  private rights—is not subject to judicial review.").  As DHS explained, the Rule "does

11  not have federalism implications because it does not have substantial direct effects on the

12  States, on the relationship between the Federal Government and the States, or on the

13  distribution of power and responsibilities among the various levels of government."  Rule

14  at 41481.

15      ## B. DHS Adequately Responded to Comments And Adequately Addressed the Costs and Benefits of the Rule

16      Plaintiffs next allege that the Rule is arbitrary and capricious because they claim

17  Defendants failed to adequately assess the costs of the Rule and overestimated the

18  benefits. Am. Compl. ¶ 427(t), (v). But the Ninth Circuit has rejected that argument,

19  ruling that "DHS addressed at length the costs and benefits associated with the Final

20  Rule." *San Francisco*, 944 F.3d at 801; *see also id.* at 803 (discussing DHS's analysis of

21  costs and benefits).  The Ninth Circuit noted three points. "First, the costs that the states,

22

U.S. DEP'T OF JUSTICE
1100 L St. NW, Washington, DC, 20003
(202) 353-0533

localities, and various entities (such as healthcare providers) may suffer are indirect" and the consequence of the "(1) free choice of aliens who wish to avoid any negative repercussions for their immigration status that would result from accepting public benefits, or (2) the mistaken disenrollment of aliens or U.S. citizens who can receive public benefits without any consequences for their residency status." *Id*. at 803 (explaining that DHS addressed both groups). Second, DHS acknowledged the potential indirect costs from the Rule. *Id*. (citing Rule at 41486). "It did not attempt to quantify those costs, but it recognized the overall effect of the Final Rule, and that is sufficient." *Id*. And, third, DHS is not tasked with regulation of public benefits; in the Rule, it was "defining a simple statutory term—'public charge'—to determine whether an alien is inadmissible." *Id*. at 803-04. "Even if it could estimate the costs to the states, localities, and healthcare providers, DHS has a mandate from Congress with respect to admitting aliens to the United States." *Id*. at 804. Accordingly, "it was sufficient—and not arbitrary and capricious—for DHS to consider whether, in the long term, the overall benefits of its policy change will outweigh the costs of retaining the current policy." *Id*.

Relatedly, Plaintiffs fail to plausibly allege that DHS did not sufficiently respond to public comments about harms or other topics. An agency's obligation to respond to comments on a proposed rulemaking is "not 'particularly demanding.'" *Ass'n of Private Sector Colls. & Univs. v. Duncan*, 681 F.3d 427, 441–42 (D.C. Cir. 2012). "[T]he agency's response to public comments need only 'enable [courts] to see what major issues of policy were ventilated . . . and why the agency reacted to them as it did.'" *Pub. Citizen, Inc. v. FAA*, 988 F.2d 186, 197 (D.C. Cir. 1993). DHS plainly met this standard here. As

U.S. DEP'T OF JUSTICE
1100 L St. NW, Washington, DC, 20003
(202) 353-0533

discussed above, DHS thoroughly addressed comments that the Rule would cause harm

from, *inter alia*, disenrollment in public benefits. And although Plaintiffs discuss various

other comments to which they claim DHS failed to respond, Am. Compl. ¶¶ 138-60, the

Rule plainly shows that DHS provided sufficient responses.  *See* Rule at 41357-58 (15%

threshold); 41441-46 (heavily weighted negative factors); 41428-29, 41448-49 (private

health insurance); 41328-29 (public benefits condition); 41327 (permanent residents

returning from trips abroad); 41308-09 (disparate impact); 41425-26 (credit reports);

41424-25 (fee waivers); 41430 (high school education); 41432-35 (English language

proficiency); *see also City & Cty. of S.F.*, 408 F. Supp. 3d at 1113 (finding that "DHS

adequately responded" to comments about fee waivers and applications for public

benefits).

## V.    The Court Should Dismiss Count Four

Plaintiffs allege the Rule violates the Equal Protection component of the Fifth

Amendment to the Constitution. Plaintiffs fail to state an equal protection claim because

their complaint includes no well-pled allegation that DHS issued the Rule based on any

improper discriminatory motive. Plaintiffs do not deny that the Rule is facially neutral,

but claim that the Rule violates the equal protection clause because its alleged purpose is

to disproportionately affect a particular racial subset of immigrants. *See* Am. Compl.

¶ 154. In support, Plaintiffs rely primarily on a handful of stray comments by certain non-

DHS government officials concerning immigration in general, rather than the Rule in

particular. *See*, *e.g.*, *id.* ¶ 432. Plaintiffs' allegations are insufficient to establish a

plausible equal protection claim.

"[O]fficial action will not be held unconstitutional solely because it results in a racially disproportionate impact." *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264-65 (1977). "Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *Id.* at 265. "Discriminatory purpose . . . implies more than intent as volition or intent as awareness of consequences." *Pers. Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979). "It implies that the *decisionmaker* . . . selected . . . a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Id.* (emphasis added). Additionally, strict scrutiny does not apply simply because a plaintiff alleges a disproportionate impact on a particular racial or ethnic group; rational basis applies unless Plaintiffs establish discriminatory intent. *See Washington v. Davis*, 426 U.S. 229, 242 (1976) ("Disproportionate impact . . . [s]tanding alone . . . . does not trigger the rule . . . that racial classifications are to be subjected to the strictest scrutiny").

A narrow standard of review here is particularly appropriate because this case implicates the Executive Branch's authority over the admission and exclusion of foreign nationals, "a matter within the core of executive responsibility." *Trump v. Hawaii*, 138 S. Ct. 2392, 2418 (2018); *id.* at 2419 (highly deferential standard is appropriate "[g]iven the authority of the political branches over admission"). Indeed, this "deferential standard of review" applies "across different contexts and constitutional claims" because "'it is not the judicial role in cases of this sort to probe and test the justifications of immigration policies." *Id.* "A conventional application of" this standard, "asking only whether the policy is facially legitimate and bona fide," would plainly require dismissal of Plaintiffs'

equal protection claims because Plaintiffs do not contend there is anything facially discriminatory about the Rule. *Id*. at 2420. But dismissal is also appropriate if the Court were to apply rational basis review to Plaintiffs' claim.  Under that standard, the Court considers only whether the policy is "plausibly related to the Government's stated objective" and must "uphold the policy so long as it can reasonably be understood to result from a justification independent of unconstitutional grounds." *Id*. The Complaint contains no allegations suggesting that the Rule is not at least plausibly related to DHS's stated objectives.

Under any potentially-applicable standard, however, this claim fails because Plaintiffs' allegations do not suggest that DHS issued the Rule "because of" any alleged "adverse effects upon an identifiable" racial or ethnic group. First, "the [stated] purposes of the" Rule "provide the surest explanation for its" design and implementation. *Feeney*, 442 U.S. at 279. The Rule's preamble (spanning roughly 200 pages) thoroughly explains the Rule's non-discriminatory justifications, including the need to facilitate self-sufficiency among immigrants. *See* Rule at 41295 ("DHS is revising its interpretation of 'public charge' . . . to better ensure that aliens subject to the public charge inadmissibility ground are self-sufficient"); Rule at 41308 ("DHS believes [the] broader definition [of public charge] is consistent with Congress' intention that aliens should be self-sufficient. Self-sufficiency is, and has long been, a basic principle of immigration law in this country. DHS believes that this rule aligns DHS regulations with that principle."). Additionally, the Rule's construction was guided by an extensive notice-and-comment process, following a NPRM that was just under 200 pages long. *See* NPRM. The Rule

included a number of changes from the proposed rule in response to public comments. *See*, *e.g.*, Rule at 41297. The Rule's procedural history undermines Plaintiffs' conclusory assertion that the Rule's design may somehow be attributed to any alleged improper bias.

Second, to show that DHS issued the rule due to improper motives, Plaintiffs rely almost exclusively on alleged public statements by non-DHS officials. The alleged public statements in the Complaint do not reference the Rule, and do not otherwise reveal why any particular official supported the Rule. *See*, *e.g.*, Am. Compl. ¶ 85 (expressing support for "moving the country to a merit-based entry system"); *id.* ¶ 89 (comments on refugee policy). In addition, "contemporary statements" may be relevant to the question of whether an "invidious discriminatory purpose was a motivating factor," if made "by members of the decisionmaking body." *Arlington Heights*, 429 U.S. at 268; *see also Clearwater v. Indep. Sch. Dist. No. 166*, 231 F.3d 1122, 1126 (8th Cir. 2000) ("Evidence demonstrating discriminatory animus in the decisional process needs to be distinguished from stray remarks . . . statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process."). Here, Plaintiffs rely largely on statements (and prior policies) of non-DHS personnel, and Plaintiffs provide no explanation for how these allegations suggest that *DHS* harbored an improper motive in implementing the Rule. Accordingly, Plaintiffs' equal protection claims should be dismissed.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' Amended Complaint.

U.S. DEP'T OF JUSTICE
1100 L St. NW, Washington, DC, 20003
(202) 353-0533

1

2    Dated: May 22, 2020                    Respectfully submitted,

3                                           JOSEPH H. HUNT
                                            Assistant Attorney General
4
5                                           WILLIAM D. HYSLOP
                                            United States Attorney
6
                                            ALEXANDER K. HAAS
7                                           Branch Director

8                                           _____*s/ Joshua Kolsky*_____
                                            ERIC J. SOSKIN
9                                           Senior Trial Counsel
                                            KERI L. BERMAN
10                                          KUNTAL V. CHOLERA
                                            JOSHUA M. KOLSKY, DC Bar No. 993430
11                                          JASON C. LYNCH
                                            Trial Attorneys
12                                          United States Department of Justice
                                            Civil Division, Federal Programs Branch
13                                          1100 L Street NW
                                            Washington, D.C. 20005
14                                          Tel: (202) 305-7664
                                            Fax: (202) 616-8470
15                                          joshua.kolsky@usdoj.gov

16
                                            *Attorneys for Defendants*
17

18

19

20

21

22

MOT. TO DISMISS                                      U.S. DEP'T OF JUSTICE
NO. 4:19-CV-05210-RMP                         1100 L St. NW, Washington, DC, 20003
                                                          (202) 353-0533

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

**CERTIFICATE OF SERVICE**

I hereby certify that on May 22, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all users receiving ECF notices for this case.

*/s/ Joshua Kolsky*

United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005

*Attorney for Defendants*