1   ROBERT W. FERGUSON
    *Attorney General*

2

3   JEFFREY T. SPRUNG, WSBA #23607
    JOSHUA WEISSMAN, WSBA #42648
    PAUL M. CRISALLI, WSBA #40681

4   NATHAN K. BAYS, WSBA #43025
    BRYAN M.S. OVENS, WSBA #32901

5   *Assistant Attorneys General*
    800 Fifth Ave., Ste. 2000

6   Seattle, WA  98104
    (206) 464-7744

7

8                    **UNITED STATES DISTRICT COURT**
                     **EASTERN DISTRICT OF WASHINGTON**
9                            **AT SPOKANE**

10  STATE OF WASHINGTON, et al.,          NO. 4:19-cv-05210-RMP

11                  Plaintiffs,            PLAINTIFF STATES' RESPONSE
                                           TO DEFENDANTS' MOTION TO
12          v.                             DISMISS AMENDED COMPLAINT

13  UNITED STATES DEPARTMENT
    OF HOMELAND SECURITY, a
14  federal agency, et al.

15                  Defendants.

16

17

18

19

20

21

22

PLAINTIFF STATES' RESPONSE                    ATTORNEY GENERAL OF WASHINGTON
TO DEFENDANTS' MOTION TO                            Complex Litigation Division
DISMISS AMENDED                                    800 Fifth Avenue, Suite 2000
COMPLAINT                                              Seattle, WA  98104
NO. 4:19-cv-05210-RMP                                   (206) 464-7744

# TABLE OF CONTENTS

I.    INTRODUCTION ....................................................................... 1

II.   BACKGROUND ........................................................................ 1

III.  ARGUMENT ............................................................................. 2

    A.  Standard of Review ........................................................... 2

    B.  The Court Properly Twice Rejected the Majority of Defendants' Arguments and Should Not Reconsider These Rulings ............... 3

    C.  The Court Should Not Reconsider Its Conclusion That Plaintiffs Have Article III and Prudential Standing ...................................... 5

        1.  The Plaintiff States have suffered injuries traceable to the Final Rule that would be redressed by a favorable decision .. 5

        2.  The Plaintiff States are within the zone of interests ............... 7

    D.  Count I States a Valid Claim for Relief ........................................ 8

        1.  Congress addressed the precise question presented ............. 9

        2.  The statutory text is inconsistent with the Final Rule .......... 11

        3.  The Final Rule contradicts a consistent line of judicial decisions ............................................................................... 12

        4.  The Final Rule is contradicted by uniform agency action .... 15

        5.  Congress ratified the historical understanding of public charge ................................................................................. 18

        6.  The two other INA provisions cited by DHS do not support the Final Rule ........................................................................ 19

        7.  The Plaintiff States plausibly allege the Final Rule violates Section 504 of the Rehabilitation Act ................................... 21

        8.  The Final Rule Also Fails Under *Chevron* Step Two ........... 23

PLAINTIFF STATES' RESPONSE
TO DEFENDANTS' MOTION TO
DISMISS AMENDED
COMPLAINT
NO. 4:19-cv-05210-RMP

i

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

E.   Count II States a Valid Claim for Relief.................................... 24

F.   Count III States a Valid Claim for Relief .................................. 26

   1.   The Plaintiff States plausibly allege DHS failed to address the Rule's devastating effects on public health ................... 28

   2.   The Plaintiff States plausibly allege DHS failed to address the Rule's devastating effects on vulnerable populations .... 30

G.   Count IV States a Valid Claim for Relief ................................... 32

   1.   The factual allegations in the Amended Complaint support a reasonable inference of discriminatory purpose.................. 33

   2.   Defendants misconstrue the governing standard ................. 37

CONCLUSION.......................................................................... 41

PLAINTIFF STATES' RESPONSE
TO DEFENDANTS' MOTION TO
DISMISS AMENDED
COMPLAINT
NO. 4:19-cv-05210-RMP

ii

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

# TABLE OF AUTHORITIES

<u>Cases</u>

*Abourezk v. Reagan,*
  785 F.2d 1043 (D.C. Cir. 1986) *aff'd*, 484 U.S. 1 (1987)..............................39

*Albemarle Paper Co. v. Moody,*
  422 U.S. 405 (1975) ...................................................................................11

*Am. Wild Horse Pres. Campaign v. Perdue,*
  873 F.3d 914 (D.C. Cir. 2017) .......................................................27, 30, 32

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ............................................................................2, 33, 37

*Ave. 6E Investments, LLC v. City of Yuma, Ariz.,*
  818 F.3d 493 (9th Cir. 2016)......................................................................33

*B.C. v. Mount Vernon Sch. Dist.,*
  837 F.3d 152 (2d Cir. 2016)........................................................................21

*Bankers Life & Cas. Co. v. U.S.,*
  142 F.3d 973 (7th Cir. 1998).......................................................................23

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) .......................................................................................2

*Bob Jones Univ. v. U.S.,*
  461 U.S. 574 (1983) .....................................................................................11

*Calderon v. Barbarino,*
  No. C 12-05819 JSW, 2013 WL 12176842 (N.D. Cal. May 2, 2013) ..........40

*California v. Azar,*
  911 F.3d 558 (9th Cir. 2018)........................................................................5

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.,*
  467 U.S. 837 (1984) ................................................................................9, 23

*City and Cty. of San Francisco v. U.S. Citizenship and Immigration Servs.,*
  944 F.3d 773 (9th Cir. 2019)...............................................................passim

PLAINTIFF STATES' RESPONSE
TO DEFENDANTS' MOTION TO
DISMISS AMENDED
COMPLAINT
NO. 4:19-cv-05210-RMP

iii

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

*City of Boston v. Capen*,
    61 Mass. 116 (1851)......................................................................................12

*Clarke v. Sec. Indus. Ass'n*,
    479 U.S. 388 (1987).......................................................................................7

*Comcast Corp. v. F.C.C.*,
    600 F.3d 642 (D.C. Cir. 2010).....................................................................25

*Conservation Force v. Salazar*,
    646 F.3d 1240 (9th Cir. 2011)........................................................................2

*Cook Cty., Illinois v. McAleenan*,
    417 F. Supp. 3d 1008 (N.D. Ill. 2019), *aff'd sub nom. Cook Cty., Illinois v.*
    *Wolf*, No. 19-3169, 2020 WL 3072046 (7th Cir. June 10, 2020) ...................14

*Cook Cty., Illinois v. Wolf*,
    No. 19-6334, 2020 WL 2542155 (N.D. Ill. May 19, 2020).....................passim

*Cook Cty., Illinois Wolf*,
    No. 19-3169, 2020 WL 3072046 (7th Cir. June 10, 2020).........................4, 14

*Ctr. for Biological Diversity v. Zinke*,
    900 F.3d 1053 (9th Cir. 2018)................................................................29, 32

*Cuomo v. Clearing House Ass'n, L.L.C.*,
    557 U.S. 519 (2009) .....................................................................................11

*Davies v. State ex rel. Boyles*,
    1905 WL 629 (Ohio Cir. Ct. July 8, 1905), 17 Ohio C.D. 593, 595-96 (July 8,
    1905)............................................................................................................13

*Dent v. Sessions*,
    900 F.3d 1075 (9th Cir. 2018) *cert. denied sub nom. Dent v. Barr*, 139 S. Ct.
    1472 (2019) .................................................................................................40

*Dep't of Commerce v. New York*,
    139 S. Ct. 2551 (2019) ...................................................................................6

*Dir., Office of Workers' Comp. Programs, Dep't of Labor v. Greenwich*
    *Collieries*,
    512 U.S. 267 (1994) .....................................................................................12

PLAINTIFF STATES' RESPONSE
TO DEFENDANTS' MOTION TO
DISMISS AMENDED
COMPLAINT
NO. 4:19-cv-05210-RMP

iv

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

*E. Bay Sanctuary Covenant v. Trump,*
   950 F.3d 1242 (9th Cir. 2020)........................................................................4

*Eli Lilly & Co. v. Arla Foods Inc.,*
   No. 17-C-703, 2017 WL 2976697 (E.D. Wis. July 11, 2017).........................3

*Ex parte Hosaye Sakaguchi,*
   277 F. 913 (9th Cir. 1922).............................................................................13

*Ex parte Mitchell,*
   256 F. 229 (N.D.N.Y. 1919) ..........................................................................13

*F.D.A. v. Brown & Williamson Tobacco Corp.,*
   529 U.S. 120 (2000) .........................................................................................9

*Faith Action for Cmty. Equity v. Hawaii,*
   No. CIV 13-00450 SOM, 2014 WL 1691622 (D. Haw. Apr. 28, 2014)........40

*Forest Grove Sch. Dist. v. T.A.,*
   557 U.S. 230 (2009) .......................................................................................19

*Gegiow v. Uhl,*
   239 U.S. 3 (1915)...........................................................................................13

*Getty v. Fed. Sav. & Loans Ins. Corp.,*
   805 F.2d 1050 (D.C. Cir. 1986) ....................................................................27

*Howe v. U.S.,*
   247 F. 292 (2d Cir. 1917)..............................................................................13

*I.N.S. v. Cardoza-Fonseca,*
   480 U.S. 421 (1987) .......................................................................................11

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig,*
   546 F.3d 981 (9th Cir. 2008)...........................................................................2

*In re O'Sullivan,*
   31 F. 447 (C.C.S.D.N.Y. 1887)......................................................................12

PLAINTIFF STATES' RESPONSE
TO DEFENDANTS' MOTION TO
DISMISS AMENDED
COMPLAINT
NO. 4:19-cv-05210-RMP

v

*Johnson v. Wickersham,*
  No. 13-13672, 2014 WL 4897387 (E.D. Mich. Sept. 11, 2014), *report and
  recommendation adopted,* No. 13-CV-13672, 2014 WL 4897433 (E.D. Mich.
  Sept. 30, 2014) ..........................................................................................................3

*K.M. ex rel. Bright v. Tustin Unified Sch. Dist.,*
  725 F.3d 1088 (9th Cir. 2013)..........................................................................21

*Law v. Siegel,*
  571 U.S. 415 (2014) .........................................................................................23

*Leary v. Daeschner,*
  228 F.3d 729 (6th Cir. 2000)..............................................................................3

*Lorillard v. Pons,*
  434 U.S. 575 (1978) .........................................................................................19

*Lujan v. Defs. of Wildlife,*
  504 U.S. 555 (1992) .......................................................................................2, 5

*Mark H. v. Lemahieu,*
  513 F.3d 922 (9th Cir. 2008).............................................................................21

*Massachusetts v. E.P.A.,*
  549 U.S. 497 (2007) ...........................................................................................5

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak,*
  567 U.S. 209 (2012) ...........................................................................................7

*Matter of B—,*
  3 I. & N. Dec. 323 (BIA 1948) ........................................................................16

*Matter of B—,*
  31 I. & N. at 326 ...............................................................................................17

*Matter of Harutunian,*
  14 I. & N. Dec. 583 (B.I.A. 1974) ..............................................................15, 17

*Matter of Martinez-Lopez,*
  10 I. & N. Dec. 409 (BIA 1962) .......................................................................15

PLAINTIFF STATES' RESPONSE
TO DEFENDANTS' MOTION TO
DISMISS AMENDED
COMPLAINT
NO. 4:19-cv-05210-RMP

vi

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

*Matter of Perez,*
  15 I. & N. Dec. 136 (B.I.A. 1974) ...................................................15

*Maya v. Centex Corp.,*
  658 F.3d 1060 (9th Cir. 2011).........................................................2

*McDonnell Douglas Corp. v. U.S. Dep't of Air Force,*
  375 F.3d 1182 (D.C. Cir. 2004) ...............................................27, 30

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,*
  463 U.S. 29 (1983) ...........................................................................26

*Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.,*
  545 U.S. 967 (2005) .........................................................................15

*New York v. U.S. Dep't of Homeland Sec.,*
  408 F. Supp. 3d 334 (S.D.N.Y. Oct. 11, 2019).............................24

*Ng Fung Ho v. White,*
  266 F. 765 (9th Cir. 1920) *aff'd in part, rev'd in part*, 259 U.S. 276 (1922).13

*Perez v. Mortg. Bankers Ass'n,*
  575 U.S. 92 (2015) ...........................................................................29

*Ramos v. Nielsen,*
  321 F. Supp. 3d 1083 (N.D. Cal. 2018) ........................................38

*Sessions v. Morales-Santana,*
  137 S. Ct. 1678 (2017) ....................................................................40

*Shroyer v. New Cingular Wireless Servs. Inc.,*
  622 F.3d 1035 (9th Cir. 2010)..........................................................2

*Texas v. U.S.,*
  809 F.3d 134 (5th Cir. 2015), *as revised* (Nov. 25, 2015)................8

*Trump v. Hawaii,*
  138 S. Ct. 2392 (2018) ..............................................................39, 40

*Twp. of Cicero v. Falconberry,*
  14 Ind. App. 237, 42 N.E. 42 (1895) .............................................13

PLAINTIFF STATES' RESPONSE
TO DEFENDANTS' MOTION TO
DISMISS AMENDED
COMPLAINT
NO. 4:19-cv-05210-RMP

vii

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

*U.S. v. Raygoza-Garcia,*
    902 F.3d 994 (9th Cir. 2018)..........................................................................34

*U.S. v. Williams,*
    175 F. 274 (S.D.N.Y. 1910)..........................................................................13

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.,*
    429 U.S. 252 (1977)................................................................................37, 38

*Warth v. Seldin,*
    422 U.S. 490 (1975)........................................................................................2

*Washington v. Trump,*
    847 F.3d 1151 (9th Cir. 2017) (per curiam)....................................................5

*Whitman v. Am. Trucking Ass'ns,*
    531 U.S. 457 (2001)................................................................................19, 23

*Wis. Cent. Ltd. v. U.S.,*
    138 S. Ct. 2067 (2018)..................................................................................15

*Yeatman v. King,*
    2 N.D. 421, 51 N.W. 721 (1892)..................................................................13

*Zadvydas v. Davis,*
    533 U.S. 678 (2001)......................................................................................40

<u>Rules</u>

FRCP 12(b)(1) ..................................................................................................2

FRCP 12(b)(6)………………………………………………………………..2

<u>Statutes</u>

5 U.S.C. § 706(2)(A) ................................................................................26, 28

8 C.F.R. § 212.22(b)(4)(E) .............................................................................25

8 C.F.R. § 212.22(c)(2)....................................................................................25

8 U.S.C. § 1101.................................................................................................18

8 U.S.C. § 1182.................................................................................................18

8 U.S.C. § 1182(a)(4).................................................................................16, 39

8 U.S.C. § 1182(a)(4)(A)..................................................................................24

8 U.S.C. § 1182(a)(4)(B)..................................................................................24

8 U.S.C. § 1182(a)(4)(C).............................................................................19, 20

8 U.S.C. § 1182(a)(4)(D)..................................................................................20

8 U.S.C. § 1182(f)............................................................................................39

8 U.S.C. § 1182(s)............................................................................................20

8 U.S.C. § 1183a(a)...........................................................................................8

8 U.S.C. § 1183a(b).......................................................................................8, 20

8 U.S.C. § 1183a(e)(2)......................................................................................8

8 U.S.C. § 1184(a)(4)........................................................................................24

8 U.S.C. § 1227(a)(5)........................................................................................16

8 U.S.C. § 1601.................................................................................................10

8 U.S.C. § 1611(c)............................................................................................20

8 U.S.C. § 1612(a)(2)(A)..................................................................................10

8 U.S.C. § 1612(a)(2)(C)..................................................................................10

8 U.S.C. § 1612(a)(2)(L)...................................................................................10

8 U.S.C. § 1613(a)............................................................................................10

8 U.S.C. § 1613(b)(1)-(2).................................................................................10

PLAINTIFF STATES' RESPONSE
TO DEFENDANTS' MOTION TO
DISMISS AMENDED
COMPLAINT
NO. 4:19-cv-05210-RMP

ix

8 U.S.C. § 1641(c) ..................................................................................20

29 U.S.C. § 794(a) ............................................................................21, 23

<u>Other Authorities</u>

64 Fed. Reg. 28,689 (1999) .................................................................16

83 Fed. Reg. 51,270 ...............................................................................6

84 Fed. Reg. 41,295 .........................................................................24, 39

84 Fed. Reg. 41,300 ...........................................................................6, 27

84 Fed. Reg. 41,365 ..............................................................................32

84 Fed. Reg. 41,367 ..............................................................................22

84 Fed. Reg. 41,368 ..............................................................................22

84 Fed. Reg. 41,369 .........................................................................32, 37

84 Fed. Reg. 41,370 ..............................................................................31

84 Fed. Reg. 41,371 ..............................................................................32

84 Fed. Reg. 41,384 ..............................................................................28

84 Fed. Reg. 41,384 ..............................................................................29

84 Fed. Reg. 41,463 ..............................................................................28

84 Fed. Reg. 41,485 ..............................................................................27

84 Fed. Reg. 41,503 ..............................................................................25

Act of Feb. 5, 1917, §§ 3, 19, 39 Stat. 876 .......................................17

*Act of March 26, 1910,*
   ch. 128, § 1, 36 Stat. 263 (1910) ....................................................18

PLAINTIFF STATES' RESPONSE
TO DEFENDANTS' MOTION TO
DISMISS AMENDED
COMPLAINT
NO. 4:19-cv-05210-RMP

x

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

Act to Regulate Immigration,
    ch. 376, § 2, 22 Stat. 214 (1882) ................................................................ 11

*Adjustment of Status for Certain Aliens*,
    52 Fed. Reg. 16205 (May 1, 1987) ............................................................ 16

Agricultural Research, Education and Extension Act of 1998,
    Pub. L. No. 105-185, 112 Stat. 523 ........................................................... 10

Farm Security and Rural Investment Act of 2002,
    Pub. L. No. 107-171, 116 Stat. 134 ........................................................... 10

Hayden, Michael Edison,
    *Stephen Miller's Affinity for White Nationalism Revealed in Leaked Emails*,
    Southern Poverty Law Center (Nov. 12, 2019),
    https://www.splcenter.org/hatewatch/2019/11/12/stephen-millers-affinity-
    white-nationalism-revealed-leaked-emails ................................................. 34

Hirota, Hidetaka,
    *Expelling the Poor* 185 (2017) ................................................................... 8

*Illegal Immigration Reform and Immigrant Responsibility Act*,
    Pub. L. No. 104-208, § 531(a), 110 Stat. 3009-546 .................................. 18

Immigration Act of 1882,
    ch. 376, § 2, 22 Stat. 214 .......................................................................... 11

*Immigration Act of 1891*,
    ch. 551, 26 Stat. 1084 ............................................................................... 18

*Immigration Act of 1907*,
    ch. 1134, 34 Stat. 898 ............................................................................... 18

*Immigration Act of 1917*,
    ch. 29 § 3, 39 Stat. 874 ............................................................................. 18

*Immigration Act of 1990*,
    Pub. L. No. 101-649, § 601(a)(4), 104 Stat. 4978 ..................................... 18

*Immigration and Nationality (McCarran-Walter) Act of 1952* (INA),
    Pub. L. No. 414, § 212(a), 66 Stat. 163 .................................................... 18

PLAINTIFF STATES' RESPONSE
TO DEFENDANTS' MOTION TO
DISMISS AMENDED
COMPLAINT
NO. 4:19-cv-05210-RMP

xi

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

*Inadmissibility and Deportability on Public Charge Grounds*,
    64 Fed. Reg. 28,676 (May 26, 1999) ...............................................................17

*Inadmissibility on Public Charge Grounds*,
    84 Fed. Reg. 41,292 (Aug. 14, 2019).............................................................1

Personal Responsibility and Work Opportunity Reconciliation Act of 1996
    (PRWORA),
    Pub. L. 104-193, 110 Stat. 2105 (1996).........................................................10

The Century Dictionary of the English Language,
    Vol. IV at 929 (1889-91).................................................................................12

*Violence Against Women Reauthorization Act of 2013*,
    Pub. L. No. 113, 127 Stat. 54 (2013) .............................................................18

Webster's Condensed Dictionary of the English Language 85
    (3d ed. 1887) ...................................................................................................12

PLAINTIFF STATES' RESPONSE
TO DEFENDANTS' MOTION TO
DISMISS AMENDED
COMPLAINT
NO. 4:19-cv-05210-RMP

xii

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

1        **I.    INTRODUCTION**

2        In August 2019 the Department of Homeland Security (DHS or

3   Defendants) issued a new rule radically redefining "public charge."

4   *Inadmissibility on Public Charge Grounds*, 84 Fed. Reg. 41,292 (Aug. 14, 2019).

5   The Rule massively expands the number of immigrants excludable as public

6   charges by redefining the term to cover any immigrants, including children, likely

7   to receive even a small amount of public benefits on a temporary basis.

8   Defendants' motion to dismiss seeks a third bite at the apple, proffering

9   arguments that this Court has already twice rejected. While Defendants assert a

10  new challenge to the Plaintiff States' Equal Protection allegations (Count IV),

11  this Court should conclude those allegations easily survive Defendants' motion,

12  as Judge Feinerman recently did in related litigation. *See Cook Cty., Illinois v.*

13  *Wolf*, No. 19-6334, 2020 WL 2542155, at *5-8 (N.D. Ill. May 19, 2020). As

14  Defendants offer virtually no new substantive arguments, and this Court has

15  already evaluated and rejected Defendants' contentions under the more stringent

16  standards governing entry of a preliminary injunction, Defendants' motion

17  should be denied.

18       **II.    BACKGROUND**

19       Relevant factual and legal background is set forth in this Court's order

20  granting a preliminary injunction of the Rule. ECF No. 162 (Oct. 11, 2019).

21

22

PLAINTIFF STATES' RESPONSE
TO DEFENDANTS' MOTION TO
DISMISS AMENDED
COMPLAINT
NO. 4:19-cv-05210-RMP

1

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

1                             **III.    ARGUMENT**

2     **A.    Standard of Review**

3           A court may grant a Rule 12(b)(1) motion to dismiss only if "the complaint,

4     considered in its entirety, on its face fails to allege facts sufficient to establish

5     subject matter jurisdiction." *In re Dynamic Random Access Memory (DRAM)*

6     *Antitrust Litig*, 546 F.3d 981, 984-85 (9th Cir. 2008). A Rule 12(b)(6) motion to

7     dismiss may be granted only if the complaint fails to state a cognizable legal

8     theory or allege facts sufficient to support a cognizable legal theory.

9     *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011); *Shroyer v.*

10    *New Cingular Wireless Servs. Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). For

11    either type of motion, the Court "must accept as true all material allegations of

12    the complaint and must construe the complaint in favor of the complaining

13    party." *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011) (quoting

14    *Warth v. Seldin*, 422 U.S. 490, 501 (1975)); *see also Ashcroft v. Iqbal*, 556 U.S.

15    662, 678 (2009). "[G]eneral factual allegations of injury resulting from the

16    defendant's conduct may suffice, for on a motion to dismiss we presume[e] that

17    general allegations embrace those specific facts that are necessary to support the

18    claim." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (internal quotation

19    omitted). If the plaintiff alleges "enough facts to state a claim to relief that is

20    plausible on its face," the motion must be denied. *Bell Atl. Corp. v. Twombly*, 550

21    U.S. 544, 570 (2007).

22

PLAINTIFF STATES' RESPONSE        2        
TO DEFENDANTS' MOTION TO                        
DISMISS AMENDED                              
COMPLAINT                                  
NO. 4:19-cv-05210-RMP                         

1
2

**B.    The Court Properly Twice Rejected the Majority of Defendants'**
**Arguments and Should Not Reconsider These Rulings**

3    This Court now has twice rejected the vast majority of Defendants'

4    arguments. Like Judge Feinerman did in *Cook Cty.*, 2020 WL 2542155, at *1,

5    this Court should decline to reconsider these rulings. On October 11, 2019, the

6    Court issued a 59-page opinion in which it carefully considered and rejected the

7    same arguments Defendants make now on standing, the meaning of the public

8    charge provision, and the arbitrary and capricious nature of the Final Rule. ECF

9    162; *see also* ECF 191 at 5. Where Plaintiffs already have prevailed at the more

10   rigorous preliminary injunction stage, so too should they prevail on a motion to

11   dismiss. *See, e.g.*, *Eli Lilly & Co. v. Arla Foods Inc.*, No. 17-C-703, 2017 WL

12   2976697, at *2-3 (E.D. Wis. July 11, 2017) (denying defendant's motion to

13   dismiss because the court already "concluded at the preliminary injunction stage

14   that [plaintiff] has Article III standing and has successfully stated claims"); *see*

15   *also Johnson v. Wickersham*, No. 13-13672, 2014 WL 4897387, at *3 (E.D.

16   Mich. Sept. 11, 2014), *report and recommendation adopted,* No. 13-CV-13672,

17   2014 WL 4897433 (E.D. Mich. Sept. 30, 2014) ("[T]he evidentiary threshold for

18   obtaining preliminary injunctive relief is much higher than that required to

19   survive summary judgment, and certainly higher than the *Iqbal* standard of

20   merely showing a 'plausible claim.'"); *cf. Leary v. Daeschner*, 228 F.3d 729, 739

21   (6th Cir. 2000) (collecting cases).

22

PLAINTIFF STATES' RESPONSE
TO DEFENDANTS' MOTION TO
DISMISS AMENDED
COMPLAINT
NO. 4:19-cv-05210-RMP

3

1    Defendants argue that the Ninth Circuit motions panel's order staying

2    injunctions entered against the Final Rule requires a different outcome, but the

3    stay was issued by a divided panel without oral argument, on an abbreviated

4    timeline, with limited briefing, and without the benefit of a complete record. *See*

5    ECF 229 at 6-7; ECF No. 219 at 4. It did not sway Judge Feinerman in denying

6    Defendants' almost identical motion to dismiss, *Cook Cty.*, 2020 WL 2542155,

7    and it should not sway this Court.[1] As the Ninth Circuit has stated, a motions

8    panel's decision on a motion to stay an injunction "provides 'little guidance as to

9    the appropriate disposition on the merits.'" *E. Bay Sanctuary Covenant v. Trump*,

10   950 F.3d 1242, 1262 (9th Cir. 2020) (citation omitted). "[M]erits panels of this

11   court frequently depart from published decisions issued by motions panels in the

12   same case." *Id*. Further, the reasons for this "are particularly heightened"

13   where—as here—"the motions panel considered whether to grant the

14   government's request for a stay of the district court's preliminary injunction,"

15   because "there are important differences between a preliminary injunction and a

16   stay pending review." *Id*. at 1264.

17       The motions panel's stay order does "not provide the sweeping

18   justification for the relief that DHS seeks." ECF No. 229 at 6. DHS "may renew

19   _____

20       [1] Notably, the Seventh Circuit recently affirmed Judge Feinerman's initial

21   grant of a preliminary injunction on the merits. *See Cook Cty., Illinois Wolf*,

22   No. 19-3169, 2020 WL 3072046 (7th Cir. June 10, 2020).

PLAINTIFF STATES' RESPONSE
TO DEFENDANTS' MOTION TO
DISMISS AMENDED
COMPLAINT
NO. 4:19-cv-05210-RMP

4

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

1    under Rule 12(c) any arguments on those issues once the [Court of Appeals]

2    rules" on the merits of the injunction. *Cook Cty.*, 2020 WL 2542155, at *1. At

3    this juncture, the stay order does not warrant dismissal of the Plaintiffs' claims.

4    **C.    The Court Should Not Reconsider Its Conclusion That Plaintiffs Have
        Article III and Prudential Standing**

5

6    **1.    The Plaintiff States have suffered injuries traceable to the Final
           Rule that would be redressed by a favorable decision**

7    As this Court exhaustively explained previously (ECF 162 at 13-26), the

8    Plaintiff States have standing based on allegations the Rule would harm the States

9    as their residents disenroll from public benefits programs. To establish standing,

10   a plaintiff must show a "concrete and particularized" injury that is "fairly

11   traceable to the challenged action of the defendant" and is "likely to be redressed

12   by a favorable decision." *Lujan*, 504 U.S. at 590, 598 (1992). States have

13   standing to challenge rulemaking that imposes financial costs on them.

14   *Massachusetts v. E.P.A.*, 549 U.S. 497, 521-26 (2007); *California v. Azar*, 911

15   F.3d 558, 571-73 (9th Cir. 2018). At this preliminary stage of litigation, a court

16   may rely on allegations in the complaint or other evidence submitted by plaintiffs.

17   *Washington v. Trump*, 847 F.3d 1151, 1159 (9th Cir. 2017) (per curiam).

18   The Plaintiff States submitted numerous declarations from state and local

19   health officials supporting their allegations the Rule would result in significant

20   costs and negative effects to States. *See* ECF No. 162 at 2 n.1, 13-23. DHS

21   *conceded* many of the costs and negative effects of disenrollment by immigrants

22

PLAINTIFF STATES' RESPONSE                              5                    ATTORNEY GENERAL OF WASHINGTON
TO DEFENDANTS' MOTION TO                                                          Complex Litigation Division
DISMISS AMENDED                                                                    800 Fifth Avenue, Suite 2000
COMPLAINT                                                                             Seattle, WA 98104
NO. 4:19-cv-05210-RMP                                                                   (206) 464-7744

1    from state and federal benefits programs. *See* 84 Fed. Reg. at 41,300-01; *see also*

2    *id.* at 41,469 ("State and local governments . . . would incur costs related to the

3    changes"); 83 Fed. Reg. at 51,270 (Rule could lead to "[w]orse health outcomes,"

4    "[i]ncreased use of emergency rooms," and "[i]ncreased prevalence of

5    communicable diseases").

6         Defendants again claim such harms cannot be attributed to the Rule. But

7    Defendants fail to even cite—much less discuss—the Supreme Court's recent

8    analysis of standing in *Dep't of Commerce v. New York*, 139 S. Ct. 2551 (2019);

9    *see* ECF 162 at 24. Rejecting the same argument Defendants make here, the Court

10   held the plaintiffs established standing based on "the predictable effect of

11   Government action on the decisions of third parties." *New York*, 139 S. Ct. 2551

12   at 2566. Given DHS's concessions here regarding the Rule's predictable harms,

13   the divided motions panel in this case reached unanimity on just a single point—

14   namely, that DHS's jurisdictional arguments were "unavailing" and

15   "disingenuous." *City and Cty. of San Francisco v. U.S. Citizenship and*

16   *Immigration Servs.*, 944 F.3d 773, 795 (9th Cir. 2019).

17        Defendants speculate that the significant costs borne by the Plaintiff

18   States' healthcare systems will be offset by Plaintiffs spending less to fund

19   Medicaid. But the Plaintiffs' complaint credibly alleges the contrary (as is borne

20   out by the evidence previously credited by the Court). ECF No. 31, ¶¶ 227-231.

21   The Rule will *increase* Plaintiffs' healthcare costs, as newly uninsured patients

22

PLAINTIFF STATES' RESPONSE
TO DEFENDANTS' MOTION TO
DISMISS AMENDED
COMPLAINT
NO. 4:19-cv-05210-RMP

6

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

1    avoid preventative care, suffer worse health outcomes, and use more costly

2    services like emergency medical care. *See* ECF 31, *id.*; ECF No. 162 at 22-23.

3    The Court should not credit Defendants' rank speculation that the Plaintiff States'

4    healthcare systems, which often treat all patients regardless of their financial

5    resources, *see, e.g.*, ECF No. 31, ¶¶ 190-212, will somehow recoup these

6    substantial losses.

7         The Plaintiff States' allegations, combined with their evidentiary showing

8    and DHS's own admissions, amply establish, particularly at this early stage, a

9    concrete and particularized injury that is fairly traceable to the challenged

10   conduct and is likely to be redressed by a favorable decision.

11         **2.    The Plaintiff States are within the zone of interests**

12         Defendants are equally unsuccessful in claiming Plaintiff States fall

13   outside the applicable zone of interests. Defendants make the same arguments the

14   Court previously rejected when it found "states were at the center of the zone of

15   interest for use of the term 'public charge' from the beginning of the relevant

16   statutory scheme." ECF 162 at 29; *see id.* at 28-30. They ignore that the

17   requirement is "not meant to be especially demanding." *Clarke v. Sec. Indus.*

18   *Ass'n*, 479 U.S. 388, 399-400 and n.16 (1987). Agency action is "presumptively

19   reviewable," and "the benefit of any doubt goes to the plaintiff." *Match-E-Be-*

20   *Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 225

21   (2012). A party will fail the zone-of-interests test only if its interests are "so

22

PLAINTIFF STATES' RESPONSE                    7          ATTORNEY GENERAL OF WASHINGTON
TO DEFENDANTS' MOTION TO                                     Complex Litigation Division
DISMISS AMENDED                                              800 Fifth Avenue, Suite 2000
COMPLAINT                                                        Seattle, WA  98104
NO. 4:19-cv-05210-RMP                                            (206) 464-7744

1    marginally related to or inconsistent with the purposes implicit in the statute that

2    it cannot reasonably be assumed that Congress intended to permit the suit." *Id.*

3         The standard is readily met here, where the initial purpose of the public

4    charge exclusion was to protect state fiscs by preventing immigrants from

5    becoming primarily dependent on state governments for subsistence. *See*

6    Hidetaka Hirota, *Expelling the Poor* 185 (2017) (detailing state campaigns

7    precipitating public charge exclusion). Further, the INA expressly recognizes

8    states' authority to provide and administer public benefits programs. *See* 8 U.S.C.

9    §§ 1183a(a), (b), (e)(2); *see also Texas v. U.S.*, 809 F.3d 134, 163 (5th Cir. 2015),

10   *as revised* (Nov. 25, 2015) (states' role in administering public benefits programs

11   puts them within INA's zone of interests). The Plaintiff States administer the very

12   public-benefit programs that Defendants assert are at issue. *See, e.g.*, ECF No.

13   31, ¶¶ 190-207. Plaintiff States are thus well within the zone of interests, as the

14   Rule imposes significant uncompensated costs on them and undermines the

15   administration of their comprehensive public assistance programs.

16   **D.    Count I States a Valid Claim for Relief**

17        The Plaintiff States have adequately pled the Rule is contrary to the INA.

18   ECF No. 31, ¶¶ 415-418. In granting the preliminary injunction, this Court

19   already held Plaintiffs are likely to prevail on Count I because Congress

20   "unambiguously rejected key components of the [Rule]." ECF No. 162 at 44; *see*

21

22

PLAINTIFF STATES' RESPONSE
TO DEFENDANTS' MOTION TO
DISMISS AMENDED
COMPLAINT
NO. 4:19-cv-05210-RMP

8

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

1    *also id.* at 34-48. The Plaintiff States thus already cleared a far higher bar than

2    the *Twombly/Iqbal* "plausibility" standard for a motion to dismiss.

3         When considering whether a rule is consistent with controlling law under

4    *Chevron*, "[f]irst, always, is the question whether Congress has directly spoken

5    to the precise question at issue." *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council,*

6    *Inc.*, 467 U.S. 837, 842 (1984); *F.D.A. v. Brown & Williamson Tobacco Corp.*,

7    529 U.S. 120, 132 (2000). Courts use the "traditional tools of statutory

8    construction" to determine whether "the intent of Congress is clear." *Chevron*,

9    467 U.S. at 842 and n.9; *Brown & Williamson*, 529 U.S. at 132. If the statute does

10   not address the precise question after applying all of those tools, the court asks

11   whether the Rule is a reasonable interpretation of the statute. Here, the Rule fails

12   both tests.

13        **1.    Congress addressed the precise question presented**

14        In the preliminary injunction order, the Court correctly determined

15   Congress's intent based primarily on two factors: first, Congress had repeatedly

16   authorized lawful immigrants to receive specific benefits the Rule would make a

17   basis for exclusion; and second, Congress rejected the policy embodied in the

18   Rule when it reenacted the "public charge" provision. ECF No. 162 at 35-41, 44.

19   These conclusions compel the denial of DHS's motion to dismiss Count I.

20        To start, this Court correctly cited numerous statutes in which Congress

21   expressly authorized lawful immigrants to receive the specific types of non-cash

22

PLAINTIFF STATES' RESPONSE                    9                ATTORNEY GENERAL OF WASHINGTON
TO DEFENDANTS' MOTION TO                                              Complex Litigation Division
DISMISS AMENDED                                                      800 Fifth Avenue, Suite 2000
COMPLAINT                                                                Seattle, WA 98104
NO. 4:19-cv-05210-RMP                                                      (206) 464-7744

1     benefits the Rule now makes a basis for exclusion. *See* Personal Responsibility

2     and Work Opportunity Reconciliation Act of 1996 (PRWORA), Pub. L. 104-193,

3     110 Stat. 2105 (1996) (codified as amended at 8 U.S.C. §§ 1601-46); 8 U.S.C.

4     §§ 1612(a)(2)(L), 1613(a) (allowing lawful permanent residents to receive many

5     forms of federal public benefits included in the Rule—including Medicaid and

6     SNAP—beginning five years after entry); 8 U.S.C. §§ 1612(a)(2)(A) &

7     (a)(2)(C), 8 U.S.C. § 1613(b)(1)-(2) (lawful immigrants eligible for other

8     benefits covered by the Rule, including Section 8 housing vouchers); Agricultural

9     Research, Education and Extension Act of 1998, Pub. L. No. 105-185, 112 Stat.

10    523 (restoring eligibility for certain elderly, disabled and child immigrants who

11    resided in the United States when PRWORA was enacted); Farm Security and

12    Rural Investment Act of 2002, Pub. L. No. 107-171, 116 Stat. 134 (restoring

13    eligibility for food stamps to qualified aliens). Plaintiffs plausibly allege, as this

14    Court correctly determined (ECF No. 162 at 37-39), that these statutes expressed

15    clear Congressional intent that an immigrant's receipt of these same benefits

16    should not alone be a basis upon which DHS may refuse to extend a visa on

17    public charge grounds.

18        In addition, the Court properly credited Plaintiffs' argument that

19    Congress's repeated rejection of efforts to expand the public charge exclusion

20    constituted additional evidence of its clear intent to reject the Rule. *See* ECF

21    No. 162 at 38-39, 41. This conclusion is not only plausible but is consistent with

22

PLAINTIFF STATES' RESPONSE
TO DEFENDANTS' MOTION TO
DISMISS AMENDED
COMPLAINT
NO. 4:19-cv-05210-RMP

10

1    established law. *See Albemarle Paper Co. v. Moody*, 422 U.S. 405, 414 n.8

2    (1975); *Bob Jones Univ. v. U.S.*, 461 U.S. 574, 600–01 (1983); *see also Cuomo*

3    *v. Clearing House Ass'n, L.L.C.*, 557 U.S. 519, 533 (2009); *I.N.S. v. Cardoza-*

4    *Fonseca*, 480 U.S. 421, 442–43 (1987).

5              **2.    The statutory text is inconsistent with the Final Rule**

6              DHS's definition of "public charge" cannot be reconciled with

7    Congressional intent as reflected in the statutory text. The text of the original

8    1882 public charge exclusion provided that a "convict, lunatic, idiot, or any

9    person unable to take care of himself or herself without becoming a public

10   charge . . . shall not be permitted to land." Immigration Act of 1882, ch. 376, §

11   2, 22 Stat. 214. A "public charge" was, as the text plainly stated, one who is

12   "unable to take care of himself or herself," not one who temporarily receives a

13   small amount of benefits. *See id.*

14             Indeed, in the 1882 statute that first established the "public charge"

15   exclusion, Congress also authorized "support and relief" for "immigrants therein

16   landing as may fall into distress or need public aid." Act to Regulate Immigration,

17   ch. 376, § 2, 22 Stat. 214 (1882) (emphasis added). In the terminology of the

18   time, an immigrant who "landed" was one who was permitted entry; by contrast,

19   a person deemed a "public charge" was not "permitted to land." *Id.* Thus,

20   Congress expressly contemplated that obtaining "support and relief" alone did

21   not itself make an immigrant a "public charge."

22

PLAINTIFF STATES' RESPONSE              11
TO DEFENDANTS' MOTION TO
DISMISS AMENDED
COMPLAINT
NO. 4:19-cv-05210-RMP

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

1    These plain statements of congressional intent are also consistent with the

2    then-contemporaneous dictionary definitions. *See Dir., Office of Workers' Comp.*

3    *Programs, Dep't of Labor v. Greenwich Collieries*, 512 U.S. 267, 272 (1994)

4    (undefined statutory term presumably has its "ordinary or natural meaning" from

5    the "year [it] was enacted"). The period's most comprehensive American

6    dictionary defined the root word "charge" to mean "[a]nything committed to

7    another's custody, care, concern, or management." *See* The Century Dictionary

8    of the English Language, Vol. IV at 929 (1889-91); *see also* Webster's

9    Condensed Dictionary of the English Language 85 (3d ed. 1887) (defining

10    "charge" as "[t]he person or thing committed to the care or management of

11    another"). In contrast, DHS fails to cite even one contemporaneous dictionary

12    definition supporting its interpretation.

13    **3.    The Final Rule contradicts a consistent line of judicial decisions**

14    DHS failed at the preliminary injunction stage, and fails now, to cite *any*

15    judicial decision holding that the public charge exclusion applies to noncitizens

16    who received modest public benefits on a temporary basis. Early judicial

17    decisions applying state "poor laws"—the predecessors to the federal ground for

18    exclusion—make clear the common law understanding of "public charge"

19    required more than mere temporary receipt of public benefits. *See City of Boston*

20    *v. Capen*, 61 Mass. 116, 121-22 (1851); *In re O'Sullivan*, 31 F. 447, 449

21    (C.C.S.D.N.Y. 1887); *see also Davies v. State ex rel. Boyles*, 1905 WL 629 (Ohio

22

PLAINTIFF STATES' RESPONSE
TO DEFENDANTS' MOTION TO
DISMISS AMENDED
COMPLAINT
NO. 4:19-cv-05210-RMP

12

1    Cir. Ct. July 8, 1905), 17 Ohio C.D. 593, 595-96 (July 8, 1905); *Yeatman v. King*,

2    2 N.D. 421, 51 N.W. 721, 723 (1892); *Twp. of Cicero v. Falconberry*, 14 Ind.

3    App. 237, 42 N.E. 42, 44 (1895).

4         After Congress incorporated the concept of a "public charge" into the 1882

5    Act, federal decisions applying the public charge exclusion uniformly maintained

6    the term's plain meaning—namely, that public charges were those individuals

7    fundamentally unable to care for themselves and primarily reliant on public

8    benefits for survival. *See Gegiow v. Uhl*, 239 U.S. 3, 10 (1915) (public charge

9    exclusion applies only to immigrants with "permanent personal objections

10   accompanying them"); *Howe v. U.S.*, 247 F. 292, 294 (2d Cir. 1917) (public

11   charge category excludes only "persons who were likely to become occupants of

12   almshouses for want of means with which to support themselves in the future");

13   *Ex parte Mitchell*, 256 F. 229, 233 (N.D.N.Y. 1919); *U.S. v. Williams*, 175

14   F. 274, 275 (S.D.N.Y. 1910) (L. Hand, J.); *Ex parte Hosaye Sakaguchi*, 277 F.

15   913, 916 (9th Cir. 1922) (citing *Gegiow*, 239 U.S. 3) (holding 25-year-old woman

16   with some job skills and "disposition to work" not a public charge, despite limited

17   English and temporary inability to support herself); *see also Ng Fung Ho v.*

18   *White*, 266 F. 765, 769 (9th Cir. 1920) *aff'd in part, rev'd in part*, 259 U.S. 276

19   (1922) (citing *Howe*, 247 F. at 294). Congress's repeated reenactment of the

20   "public charge" exclusion against the backdrop of this longstanding

21

22

PLAINTIFF STATES' RESPONSE                    13            ATTORNEY GENERAL OF WASHINGTON
TO DEFENDANTS' MOTION TO                                         Complex Litigation Division
DISMISS AMENDED                                                800 Fifth Avenue, Suite 2000
COMPLAINT                                                          Seattle, WA  98104
NO. 4:19-cv-05210-RMP                                               (206) 464-7744

1    interpretation of the term further illustrates its rejection of the policy embodied

2    in the Rule.

3        As Judge Feinerman explained in enjoining the Final Rule, "the Supreme

4    Court told us just over a century ago what 'public charge' meant in the relevant

5    era, and thus what it means today." *Cook Cty., Illinois v. McAleenan*, 417 F. Supp.

6    3d 1008, 1023 (N.D. Ill. 2019), *aff'd sub nom. Cook Cty., Illinois v. Wolf*, No.

7    19-3169, 2020 WL 3072046 (7th Cir. June 10, 2020)[2].  In particular, "*Gegiow*

8    teaches that 'public charge' does not, as DHS maintains, encompass persons who

9    receive benefits, whether modest or substantial, due to being temporarily unable

10    to support themselves entirely on their own." *Id.* at 1023. Rather than adhere to

11    the Supreme Court's interpretation of the unambiguous statute, however, the

12    Ninth Circuit motions panel pointed to historical changes in how the government

13    supports the needy and a perceived evolution in agency interpretations of "public

14    charge" to conclude: "we are unable to discern one fixed understanding of 'public

15    charge' that has endured since 1882." *City & Cty. of San Francisco*, 944 F.3d at

16    796. But this conclusion paid insufficient heed to *Gegiow*, which interpreted the

17    ────────────────

18        [2] While the Seventh Circuit agreed there was language in *Gegiow*

19    supporting the district court's reading, it interpreted the decision more narrowly,

20    holding that the Final Rule failed at *Chevron* Step Two. 2020 WL 3072046, at

21    *9-13. Plaintiff States respectfully urge that Judge Feinerman was correct in his

22    interpretation of *Gegiow*.

PLAINTIFF STATES' RESPONSE
TO DEFENDANTS' MOTION TO
DISMISS AMENDED
COMPLAINT
NO. 4:19-cv-05210-RMP

14

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

1    statute to provide unambiguously that "'public charge' encompasses only persons

2    who . . . would be substantially, if not entirely, dependent on government

3    assistance on a long-term basis." *Cook Cty.*, 417 F. Supp. 3d at 1023; *see Nat'l*

4    *Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982 (2005)

5    ("A court's prior judicial construction of a statute trumps an agency

6    construction . . . if the prior court decision holds that its construction follows

7    from the unambiguous terms of the statute."); *Wis. Cent. Ltd. v. U.S.*, 138 S. Ct.

8    2067, 2074 (2018) ("every statute's meaning is fixed at the time of enactment,"

9    and although "new applications may arise in light of changes in the world," such

10    changes do not allow an agency to rewrite the text).

11    ## 4.    The Final Rule is contradicted by uniform agency action

12    A consistent line of agency decisions and interpretations of the public

13    charge exclusion also shows that mere temporary receipt of public benefits is

14    insufficient to render someone a public charge. For example, in *Matter of*

15    *Martinez-Lopez*, 10 I. & N. Dec. 409, 421 (BIA 1962), the Attorney General

16    detailed the public charge exclusion's "extensive judicial interpretation,"

17    explaining the INA "requires more than a showing of a possibility that the alien

18    will require public support." *See also Matter of Perez*, 15 I. & N. Dec. 136, 137

19    (B.I.A. 1974) ("The fact that an alien has been on welfare does not, by itself,

20    establish that he or she is likely to become a public charge."); *Matter of*

21    *Harutunian*, 14 I. & N. Dec. 583, 589 (B.I.A. 1974) (receipt of "essentially

22

PLAINTIFF STATES' RESPONSE                15                ATTORNEY GENERAL OF WASHINGTON
TO DEFENDANTS' MOTION TO                                           Complex Litigation Division
DISMISS AMENDED                                                     800 Fifth Avenue, Suite 2000
COMPLAINT                                                                Seattle, WA  98104
                                                                          (206) 464-7744
NO. 4:19-cv-05210-RMP

1    supplementary benefits, directed to the general welfare of the public as a whole"

2    not a basis for exclusion); *Adjustment of Status for Certain Aliens*, 52 Fed. Reg.

3    16205, 16209 (May 1, 1987) (Medicaid and "assistance in kind, such as food

4    stamps, public housing, or other non-cash benefits" *not* a basis for exclusion

5    because they are not "designed to meet subsistence levels"); 64 Fed. Reg. 28,689,

6    28,692 (1999) (INS formal guidance confirming that it had "never been [agency]

7    policy that *any* receipt of services or benefits paid for in whole or in part from

8    public funds renders an alien a public charge" (emphasis in original)).

9         The motions panel's historical analysis, which found that Congress had *not*

10    addressed the precise issues here, rested on its misinterpretation of a single

11    agency decision in 1948, *Matter of B—*, 3 I. & N. Dec. 323 (BIA 1948). *See City*

12    *and Cty. of San Francisco*, 944 F.3d at 795. The motions panel recognized that

13    the 1882 Congress sided with the Plaintiff States on the precise question at issue

14    here: "[t]he 1882 act did not consider an alien a 'public charge' if the alien

15    received merely some form of public assistance." *Id.* at 793. It found that this

16    position changed, however, with *Matter of B—*, which "articulated a new

17    definition of 'public charge.'" *Id.* at 795. The motions panel failed to recognize,

18    however, that *Matter of B—* applied to a different statutory section governing

19    deportation of immigrants pursuant to 8 U.S.C. § 1227(a)(5). This framework

20    does not apply to immigrants seeking entry or adjustment of status under 8 U.S.C.

21

22

PLAINTIFF STATES' RESPONSE
TO DEFENDANTS' MOTION TO
DISMISS AMENDED
COMPLAINT
NO. 4:19-cv-05210-RMP

16

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

§ 1182(a)(4).[3] *See Matter of Harutunian*, 14 I. & N. Dec. at 583 ("The test set forth in *Matter of B—* . . . for determining deportability as a person who has become a public charge . . . , is inapplicable to a determination of excludability . . . as a person likely to become a public charge . . .").[4] The motions

───────────────

[3] *Matter of B—* was decided under the 1917 Immigration Act, which had analogous provisions. *See* Act of Feb. 5, 1917, §§ 3, 19, 39 Stat. 876, 889.

[4] *See also Inadmissibility and Deportability on Public Charge Grounds*, 64 Fed. Reg. 28,676, 28,679 (May 26, 1999) (explaining the "significant respect" in which "a public charge determination for purposes of inadmissibility differs from the context of deportability"). The panel also misread *Matter of B—* in two other ways. First, contrary to the panel's view that *Matter of B—* "articulated a new definition of 'public charge,'" *City and Cty. of San Francisco*, 944 F.3d at 795, the BIA itself emphasized that the rule it set forth "is not new," *Matter of B—*, 31 I. & N. at 326, and cited cases and Solicitor of Labor opinions dating back to 1929 for that assertion. Second, the panel interpreted *Matter of B—* as holding that "[p]ermanent institutionalization would not be the sole measure of whether an alien was a public charge," and that the BIA "would also consider whether an alien received temporary services from the government." *City and Cty. of San Francisco*, 944 F.3d at 795. But the INS decision says nothing about whether "temporary" services, or any services other than long-term institutionalization, are sufficient to trigger a public charge finding. Nor was that

PLAINTIFF STATES' RESPONSE TO DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT NO. 4:19-cv-05210-RMP

17

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

1    panel's erroneous reading of *Matter of B*— formed the linchpin of its historical

2    analysis and should not guide this Court.

3          **5.    Congress ratified the historical understanding of public charge**

4          Since its first enactment, Congress has readopted the public charge

5    exclusion without substantive change seven times.[5] In doing so, Congress ratified

6    the settled understanding that an immigrant must receive more than temporary,

7    modest benefits to be deemed a "public charge." Under established rules of

8    statutory construction, Congress is "presumed to be aware of an administrative

9    or judicial interpretation of a statute and to adopt that interpretation when it re-

10   _____

11   issue presented, because the respondent in that case was a long-term resident of

12   a state mental institution.

13         [5] *See Immigration Act of 1891*, ch. 551, 26 Stat. 1084, 1084; *Immigration

14   Act of 1907*, ch. 1134, 34 Stat. 898, 899; amended by *Act of March 26, 1910*,

15   ch. 128, § 1, 36 Stat. 263, 263 (1910); *Immigration Act of 1917*, ch. 29 § 3, 39

16   Stat. 874, 876; *Immigration and Nationality (McCarran-Walter) Act of 1952*

17   (INA), Pub. L. No. 414, § 212(a), 66 Stat. 163, 183 (codified as amended at 8

18   U.S.C. § 1101, *et seq.*); *Immigration Act of 1990*, Pub. L. No. 101-649,

19   § 601(a)(4), 104 Stat. 4978, 5072 (codified as amended at 8 U.S.C. § 1182);

20   *Illegal Immigration Reform and Immigrant Responsibility Act*, Pub. L. No. 104-

21   208, § 531(a), 110 Stat. 3009-546, 3009-674-75 (1996); *Violence Against Women

22   Reauthorization Act of 2013*, Pub. L. No. 113-4, 127 Stat. 54 (2013).

PLAINTIFF STATES' RESPONSE                    18
TO DEFENDANTS' MOTION TO
DISMISS AMENDED
COMPLAINT
NO. 4:19-cv-05210-RMP

1    enacts a statute without change." *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230,

2    239-40 (2009) (quoting *Lorillard v. Pons*, 434 U.S. 575, 580 (1978)).

### 6.    The two other INA provisions cited by DHS do not support the Final Rule

5    DHS argues that the Final Rule's attempt to transform American

6    immigration policy is "permissible" based on two other provisions of the INA.

7    DHS is incorrect that such ancillary provisions support fundamentally recasting

8    immigration policy through the public charge exclusion. *See Whitman v. Am.*

9    *Trucking Ass'ns*, 531 U.S. 457, 468 (2001) ("Congress . . . does not alter the

10   fundamental details of a regulatory scheme in vague terms or ancillary

11   provisions—it does not, one might say, hide elephants in mouseholes.").

12   DHS's primary argument is that the government's right of recovery against

13   sponsors for immigrants' means-tested benefits in PRWORA shows that "the

14   mere possibility" that aliens could receive public benefits was sufficient to render

15   them a public charge. ECF No. 223 at 18-19. In adopting the sponsorship

16   requirements in section 1182(a)(4)(C), Congress chose not to change the public

17   charge standard to include receipt of non-cash benefits. Congress instead

18   affirmatively authorized lawful immigrants to receive certain means-tested

19   benefits. And just one month after Congress adopted PRWORA, it rejected an

20   effort to redefine "public charge" to include receipt of non-cash benefits.

21

22

PLAINTIFF STATES' RESPONSE
TO DEFENDANTS' MOTION TO
DISMISS AMENDED
COMPLAINT
NO. 4:19-cv-05210-RMP

19

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

1       DHS's argument is also overbroad. PRWORA required only a subset of

2   applicants subject to the public charge exclusion to obtain affidavits of support.

3   *See* 8 U.S.C. § 1182(a)(4)(C)-(D). If Congress had intended for sponsorship

4   requirements to expand the public charge definition, it would have applied them

5   to all applicants subject to the public charge test. It did not, though, because the

6   sponsorship affidavits serve a different purpose: to provide a reimbursement

7   mechanism for DHS *after admission*. 8 U.S.C. § 1183a(b). Nothing in this limited

8   post-admission remedy suggests that Congress surreptitiously transformed

9   American immigration policy by redefining "public charge" to include any

10  applicant likely to receive non-cash benefits in the future.

11      DHS also wrongly cites INA provisions excluding from the public

12  determination the past receipt of benefits by immigrants "battered or subjected to

13  extreme cruelty." ECF No. 223 at 18 (citing 8 U.S.C. §§ 1182(s), 1641(c)). But

14  these benefits include cash benefits that would have been considered in public

15  charge determinations under the 1999 Field Guidance. *See* 8 U.S.C. § 1611(c).

16  Congress's exception of such benefits from the public charge determination thus

17  does not demonstrate that all non-cash benefits must be considered, and there is

18  no inconsistency between these provisions and the 1999 Field Guidance.

19  ///

20  ///

21  ///

22

PLAINTIFF STATES' RESPONSE                    20           ATTORNEY GENERAL OF WASHINGTON
TO DEFENDANTS' MOTION TO                                          Complex Litigation Division
DISMISS AMENDED                                               800 Fifth Avenue, Suite 2000
COMPLAINT                                                          Seattle, WA  98104
NO. 4:19-cv-05210-RMP                                              (206) 464-7744

1

2

       **7.**     **The Plaintiff States plausibly allege the Final Rule violates Section 504 of the Rehabilitation Act**

3

4

5

6

7

8

9

10

      The Plaintiff States also plausibly allege the Final Rule discriminates against immigrants with disabilities in violation of Section 504. ECF No. 31, ¶¶ 413, 417(f). Although some disabilities may render an individual more likely to become a public charge (*e.g.*, conditions requiring long-term institutionalization), the Rule will have a disparate impact on individuals with disabilities by double- and triple-counting their disabilities against them and significantly increasing the likelihood they will be deemed public charges because of their disabilities.

11

12

13

14

15

16

17

18

19

20

      Under Section 504, executive agencies are prohibited from excluding, denying benefits to, or subjecting to discrimination any individual "solely by reason of her or his disability." 29 U.S.C. § 794(a). "Exclusion or discrimination [under Section 504] may take the form of disparate treatment, disparate impact, or failure to make a reasonable accommodation." *B.C. v. Mount Vernon Sch. Dist.*, 837 F.3d 152, 158 (2d Cir. 2016); *see also Mark H. v. Lemahieu*, 513 F.3d 922, 937 (9th Cir. 2008). A party may show disparate impact under Section 504 even where a government policy is facially neutral, provided the policy has the effect of "denying meaningful access to public services." *K.M. ex rel. Bright v. Tustin Unified Sch. Dist.*, 725 F.3d 1088, 1102 (9th Cir. 2013).

21

22

PLAINTIFF STATES' RESPONSE
TO DEFENDANTS' MOTION TO
DISMISS AMENDED
COMPLAINT
NO. 4:19-cv-05210-RMP

21

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

1    In reviewing the Rule's effects on individuals with disabilities, this Court

2    previously noted that Medicaid frequently covers services and devices

3    unavailable under private insurance, which are "essential" for millions of people

4    living with disabilities. *See* ECF No. 162 at 46-47; *see also* 84 Fed. Reg. at 41,367

5    ("Medicaid is often the only program available to and appropriate for people with

6    disabilities); ECF No. 35-1 at 222 (Comment by ACLU) ("receipt of Medicaid is

7    inseparable from the status of being disabled."). The Rule's positive and negative

8    factors impermissibly double- and triple-count not only an individual's disability,

9    but also their receipt of Medicaid benefits that "enable [them] to work." ECF

10    No. 162 at 46-47. DHS concedes the Rule might have a "potentially outsized

11    impact . . . on individuals with disabilities." 84 Fed. Reg. at 41,368. These facts

12    cannot be reconciled with the motions panel's assertion that aliens will not be

13    denied entry by the Final Rule solely because of their disability. *City and Cty. of*

14    *San Francisco*, 944 F.3d at 800.

15    The motions panel is also incorrect that the public charge statute is more

16    "specific" than—and thus controls over—the Rehabilitation Act. *Id.* As between

17    the two statutes, Section 504's narrow prohibition against disability-based

18    discrimination is far more targeted than the INA's generalized direction to

19    consider "health" as a factor in the public charge analysis. Section 504 contains

20    express definitions for what does and does not constitute a disability. By contrast,

21    even Defendants concede Congress left the meaning of "health" undefined.

22

PLAINTIFF STATES' RESPONSE
TO DEFENDANTS' MOTION TO
DISMISS AMENDED
COMPLAINT
NO. 4:19-cv-05210-RMP

22

1   Further, the INA does not specifically address how to evaluate individuals with

2   disabilities; Section 504, by contrast, directly addresses the treatment of

3   individuals with disabilities. *See* 29 U.S.C. § 794(a); *see also Law v. Siegel*, 571

4   U.S. 415, 421 (2014) ("[A] statute's general permission to take actions of a

5   certain type must yield to a specific prohibition found elsewhere.").

6          **8.    The Final Rule Also Fails Under *Chevron* Step Two**

7          Even if the Court were now to reverse course and hold that the statute is

8   ambiguous, the Final Rule still would not be entitled to deference, as it is an

9   unreasonable interpretation of the statute. Under *Chevron*'s step two, courts must

10  determine whether "the agency's answer is based on a permissible construction

11  of the statute." *Chevron*, 467 U.S. at 843. To do so, the court "determines whether

12  the regulation harmonizes with the language, origins, and purpose of the statute,"

13  and unlike step one, it may consider, among other things, legislative history.

14  *Bankers Life & Cas. Co. v. U.S.*, 142 F.3d 973, 983 (7th Cir. 1998).

15         For many of the same reasons highlighted in the *Chevron* step one analysis,

16  the agency's interpretation cannot be considered a permissible construction of the

17  statute. *Cf. Whitman*, 531 U.S. at 481 (holding a policy unlawful even though the

18  statute was ambiguous, as "the agency's interpretation goes beyond the limits of

19  what is ambiguous and contradicts what in our view is quite clear"). Moreover,

20  independent reasons exist to find that DHS's construction of "public charge" is

21  unreasonable. Most notably, while the statute mandates that DHS "shall"

22

PLAINTIFF STATES' RESPONSE                    23          ATTORNEY GENERAL OF WASHINGTON
TO DEFENDANTS' MOTION TO                                  Complex Litigation Division
                                                            800 Fifth Avenue, Suite 2000
DISMISS AMENDED                                                Seattle, WA  98104
COMPLAINT                                                       (206) 464-7744
NO. 4:19-cv-05210-RMP

1    consider "at a minimum" five characteristics—age, health, family status, assets,

2    and education/skills—to determine whether an individual is likely to become a

3    public charge, 8 U.S.C. § 1182(a)(4)(A), (B), the Final Rule does not actually

4    apply a totality-of-the-circumstances test (despite DHS's insistence otherwise).

5    Instead, the Final Rule creates an impermissibly strict test: use of public benefits.

6    In DHS's own words, the Final Rule "redefines the term 'public charge' to mean

7    an alien who receives one or more designated public benefits for more than 12

8    months in the aggregate within any 36-month period (such that, for instance,

9    receipt of two benefits in one month counts as two months)." *See* 84 Fed. Reg. at

10    41,295; *see also* Mot. at 4 (calling this "requirement" the "12/36 standard"). Put

11    differently, "if a DHS officer believes that an individual is likely to have benefits

12    for 12 months out of a 36-month period, the inquiry ends there, and the individual

13    is automatically considered a public charge." *New York v. U.S. Dep't of*

14    *Homeland Sec.*, 408 F. Supp. 3d 334, 349 (S.D.N.Y. Oct. 11, 2019) ("[R]eceipt

15    of such benefits is not one of the factors considered; it is the factor.").

16    **E.    Count II States a Valid Claim for Relief**

17         Count II alleges that DHS exceeded its statutory authority when it applied

18    its new public charge standard to applications to extend visas and changes of

19    status, which by statute are not subject to 8 U.S.C. § 1184(a)(4). In its motion,

20    DHS admits that Congress has not authorized it to apply the public charge

21    standard to applications for visa extensions and changes of status, and that the

22

PLAINTIFF STATES' RESPONSE
TO DEFENDANTS' MOTION TO
DISMISS AMENDED
COMPLAINT
NO. 4:19-cv-05210-RMP

24

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

1    Final Rule nevertheless applies its new public charge formula to these

2    applications. ECF No. 223 at 23.

3         To reconcile this contradiction, DHS argues that it is merely borrowing the

4    public charge standard to set a condition for approval of these applications. ECF

5    No. 223 at 23. But DHS is not free to "borrow" a legal standard Congress

6    established for one statutory application and use it for a different statutory

7    provision altogether. *See Comcast Corp. v. F.C.C.*, 600 F.3d 642, 655 (D.C. Cir.

8    2010) (rejecting use of Congressional statement of policy in one statutory

9    provision as basis to interpret different statutory provision). DHS next argues that

10   a public charge admissibility determination is distinguishable from this

11   evaluation of extensions of visas or changes in status because it predicts

12   noncitizens' use of benefits in the future rather than disqualifying them for past

13   use. ECF No. 223 at 23. But DHS's distinction between backward- and forward-

14   looking assessments disintegrates under scrutiny. Its public charge test *is*

15   backward-looking; individuals' past use of public benefits is counted against

16   them when immigration officers predict their future use of benefits. *See* 84 Fed.

17   Reg. 41,503 (codified at 8 C.F.R. §§ 212.22(b)(4)(E), 8 C.F.R. § 212.22(c)(2)).

18   An immigrant applying for a green card is subject to disqualification for past use

19   of public benefits under the Final Rule, just as a nonimmigrant applying for a

20   visa extension or change of status.

21

22

PLAINTIFF STATES' RESPONSE          25          ATTORNEY GENERAL OF WASHINGTON
TO DEFENDANTS' MOTION TO                           Complex Litigation Division
DISMISS AMENDED                                    800 Fifth Avenue, Suite 2000
COMPLAINT                                          Seattle, WA  98104
NO. 4:19-cv-05210-RMP                              (206) 464-7744

1    DHS's claim that it is not applying the public charge inadmissibility test

2    to nonimmigrants is implausible. Not only does this "new condition of approval"

3    appear in the very regulation titled "Inadmissibility on Public Charge Grounds,"

4    but it bootstraps into change of status and extension of stay applications the

5    central criterion of DHS's new public charge test (*i.e.*, the receipt of public

6    benefits above the 12-month threshold). DHS fails to explain how expanding that

7    core criterion beyond the public charge exclusion's statutory bounds comports

8    with its authority under the INA.

9    **F.    Count III States a Valid Claim for Relief**

10    Separate and apart from the Plaintiff States' *Chevron* claim, Plaintiffs have

11    sufficiently alleged in Count III that the Rule is arbitrary and capricious in

12    violation of 5 U.S.C. § 706(2)(A). *See* ECF No. 31, ¶¶ 424-427. An agency action

13    qualifies as arbitrary and capricious if:

14    the agency has relied on factors which Congress has not intended
      it to consider, entirely failed to consider an important aspect of
15    the problem, offered an explanation for its decision that runs
      counter to the evidence before the agency, or is so implausible
16    that it could not be ascribed to a difference in view or the product
      of agency expertise.

17

18    *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463

19    U.S. 29, 43 (1983). With this framework in mind, Plaintiffs' position is simple

20    and adequately pleaded: in promulgating the Rule, Defendants failed to address,

21    justify, or meaningfully evaluate the significant harms identified by commenters,

22

PLAINTIFF STATES' RESPONSE                    26            ATTORNEY GENERAL OF WASHINGTON
TO DEFENDANTS' MOTION TO                                        Complex Litigation Division
DISMISS AMENDED                                                  800 Fifth Avenue, Suite 2000
COMPLAINT                                                           Seattle, WA  98104
NO. 4:19-cv-05210-RMP                                                 (206) 464-7744

1   as well as harms identified in the text of the Final Rule itself. Am. Compl. ¶ 427.

2   Specifically, DHS concedes that the Rule will cause members of mixed-status

3   households, including U.S. citizens, to disenroll from or decide not to enroll in

4   public benefits. 84 Fed. Reg. at 41,300, 41,485. Nevertheless, DHS declined to

5   address the harms that it acknowledges will result from this chilling effect,

6   stating:

7           DHS believes that it would be unwarranted for U.S. citizens and
            aliens exempt from public charge inadmissibility to disenroll
8           from a public benefit program or forego enrollment in response
            to this rule when such individuals are not subject to this rule. DHS
9           will not alter this rule to account for such unwarranted choices.

10  *Id.* at 41,313.

11          But "[s]tating that a factor was considered . . . is not a substitute for

12  considering it." *Getty v. Fed. Sav. & Loans Ins. Corp.*, 805 F.2d 1050, 1055 (D.C.

13  Cir. 1986). Indeed, the law requires agencies to "adequately analyze

14  the . . . consequences" of its actions, *Am. Wild Horse Pres. Campaign v. Perdue*,

15  873 F.3d 914, 932 (D.C. Cir. 2017), and provide more than "conclusory

16  statements" to prove it "consider[ed] [the relevant] priorities." *Getty*, 805 F.2d at

17  1057; *see also McDonnell Douglas Corp. v. U.S. Dep't of Air Force*, 375

18  F.3d 1182, 1187 (D.C. Cir. 2004) (courts will not defer to an agency's

19  "conclusory or unsupported suppositions").

20          As shown below, DHS can point to no such analysis or substantive

21  weighing of the costs and benefits. Instead, DHS states that any costs resulting

22

PLAINTIFF STATES' RESPONSE                    27          ATTORNEY GENERAL OF WASHINGTON
TO DEFENDANTS' MOTION TO                                        Complex Litigation Division
DISMISS AMENDED                                              800 Fifth Avenue, Suite 2000
COMPLAINT                                                        Seattle, WA  98104
NO. 4:19-cv-05210-RMP                                            (206) 464-7744

1   from disenrollment remain "unclear" or "unquantifiable." *See, e.g.*, 84 Fed. Reg.

2   at 41,463–41,477 (explaining, for example, that while "DHS has provided an

3   estimate of the number of individuals that may choose to disenroll . . . it is

4   unclear how long such individuals would remain disenrolled"). But the concrete

5   harms from the Rule were clearly identified in public comments, and it is not

6   enough for DHS to say it could not measure them.

7       In light of these dire public health concerns, the Court already properly

8   found the agency's responses to the comments internally inconsistent,

9   conclusory, and outside DHS's expertise or statutory mandate.  ECF No. 162 at

10  16-21, 49-50.  The Court's earlier findings, and the comments cited below,

11  demonstrate that Count III plausibly alleges a violation of 5 U.S.C. § 706(2)(A)

12  and requires denial of Defendants' motion to dismiss Count III.

13      **1.    The Plaintiff States plausibly allege DHS failed to address the
           Rule's devastating effects on public health**

14

15      DHS received—but largely ignored—compelling evidence of public

16  health crises likely to result from the Rule's implementation. For example,

17  commenters warned that by deterring eligible individuals from accessing

18  Medicaid benefits, the Rule would result in decreased vaccination rates and

19  corresponding increases in the transmission of deadly communicable diseases.

20  *See* 84 Fed. Reg. 41,384. DHS received evidence showing "uninsured individuals

21  are much less likely to be vaccinated," and "even a five percent reduction in

22

PLAINTIFF STATES' RESPONSE              28          ATTORNEY GENERAL OF WASHINGTON
TO DEFENDANTS' MOTION TO                            Complex Litigation Division
DISMISS AMENDED                                     800 Fifth Avenue, Suite 2000
COMPLAINT                                           Seattle, WA  98104
NO. 4:19-cv-05210-RMP                               (206) 464-7744

1    vaccine coverage could trigger a significant measles outbreak." *Id.* Similarly,

2    numerous medical associations warned the Rule would have a "devastating

3    impact" on public health, resulting in "[d]ecreased vaccinations and untreated

4    communicable diseases" that would "place the American public at risk for

5    outbreaks." ECF No. 35-1 at 207, No. 35-2 at 42 (Comments by Adult Vaccine

6    Access Coalition and Center for Health and Human Rights at Harvard

7    University).

8         DHS never made any serious attempt to measure the full magnitude of such

9    potential harm before deciding to implement the Rule. Instead, DHS—an agency

10   with no experience in health care policy—simply exempted receipt of Medicaid

11   benefits for pregnant women and individuals under 21 and then moved forward

12   with the Rule, uncertain of the full scope of harm it might inflict. 84 Fed. Reg. at

13   41,384 (speculating that such limited Medicaid exemptions "should address a

14   substantial portion, though not all, of the vaccinations issue"); *see also Ctr. for*

15   *Biological Diversity v. Zinke*, 900 F.3d 1053, 1072 (9th Cir. 2018) (an agency

16   "must explain why uncertainty justifies its conclusion, otherwise we might as

17   well be deferring to a coin flip").

18        DHS's cursory responses reflect a fundamental disregard for the dire

19   public health warnings the agency received from public comments. *See Perez v.*

20   *Mortg. Bankers Ass'n*, 575 U.S. 92, 96 (2015) ("An agency must consider and

21   respond to significant comments received during the period for public

22

PLAINTIFF STATES' RESPONSE
TO DEFENDANTS' MOTION TO
DISMISS AMENDED
COMPLAINT
NO. 4:19-cv-05210-RMP

29

1    comment."). Despite such risks, DHS justified the Rule based primarily on the

2    agency's purported interest in promoting "self-sufficiency" among immigrants.

3    Plaintiffs plausibly allege that DHS acted arbitrarily and capriciously in retreating

4    to this justification to explain away nearly any public health harm, particularly

5    where the agency made no meaningful effort to understand the potential scope of

6    those harms. *See Am. Wild Horse Preservation*, 873 F.3d at 932; *McDonnell*

7    *Douglas*, 375 F.3d at 1187.

8           **2.    The Plaintiff States plausibly allege DHS failed to address the**
              **Rule's devastating effects on vulnerable populations**
9

10          DHS received numerous comments and compelling evidence showing the

11   Rule's most severe and lasting harms would likely fall on vulnerable populations,

12   including young children and U.S. citizen children. For example, many

13   commenters warned DHS that "[n]ot having enough food, inadequate or unstable

14   housing, and economic insecurity are all examples of adverse experiences that

15   can lead to toxic stress in young children," "interfer[ing] with brain development"

16   and causing "physical and mental health problems that last into adulthood."[6]

17

18   _____

19          [6] *See, e.g.*, ECF No. 35-1 at 604 (Comment by Child Care Law Center)

20   (warning of "profound negative outcomes for children during childhood and into

21   adulthood"); ECF No. 35-2 at 278 (Comment by Robert Wood Johnson

22   Foundation) (cautioning that "children can be expected to bear the

PLAINTIFF STATES' RESPONSE                  30              ATTORNEY GENERAL OF WASHINGTON
TO DEFENDANTS' MOTION TO                                        Complex Litigation Division
                                                               800 Fifth Avenue, Suite 2000
DISMISS AMENDED                                                    Seattle, WA  98104
COMPLAINT                                                           (206) 464-7744
NO. 4:19-cv-05210-RMP

1    Commenters also explained that the lasting trauma of such childhood deprivation

2    can lead to decades of negative outcomes, including chronic asthma, higher

3    incidences of unplanned pregnancies, substance abuse, depression, and mental

4    illness.[7] As one commenter explained, children would likely experience

5    increased food insecurity and malnutrition, which are linked to diabetes, heart

6    disease, kidney disease, hypertension, depression, birth defects, asthma, anxiety,

7    and suicidal ideation. *See* ECF No. 35-1 at 271 (Comment by Association of State

8    Public Health Nutritionists).

9         Commenters also questioned what reason DHS could possibly have for

10    applying so rigid a public charge analysis to children in the first place, as they are

11    too young to work and their use of public benefits in no way suggests they are

12    likely to become a public charge in the future. 84 Fed. Reg. at 41,370. In fact,

13    commenters cited research showing *just the opposite*—namely, that "use of these

14    programs in childhood helps children complete their education and have higher

15    incomes as adults, be healthy, have better educational opportunities, and become

16    _____

17    disproportionate impact" of the Rule, which "flag[s] poor families as a result of

18    their poverty and the presence of children").

19         [7] *See, e.g.*, ECF No. 35-1 at 611 (Comment by Childhood Asthma

20    Leadership Coalition) (warning of greater childhood homelessness, with nearly a

21    quarter of homeless young children suffering from asthma, or "over twice the

22    national average").

PLAINTIFF STATES' RESPONSE
TO DEFENDANTS' MOTION TO
DISMISS AMENDED
COMPLAINT
NO. 4:19-cv-05210-RMP

31

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

1    more likely to be economically secure and contribute to their communities as

2    adults." *Id.* Even DHS conceded many of the targeted benefits programs "aim to

3    better future economic and health outcomes for minor recipients." 84 Fed. Reg.

4    at 41,371. Nevertheless, DHS responded to such concerns merely by clarifying it

5    would continue to count a child's receipt of SNAP and housing benefits as

6    evidence suggesting the child was likely to become a public charge. *See* 84 Fed.

7    Reg. at 41,365, 41,369-371. DHS conceded this could have negative health

8    effects on children, but again reflexively justified any such harms as outweighed

9    by the agency's purported interest in promoting "self-sufficiency." *Id.* at 41,365,

10   41,369-371.

11        DHS offered no rational justification for exempting Medicaid coverage but

12   still counting food and housing benefits against children, and the agency made

13   no effort to understand the full scope of harm its decision might inflict. *See* ECF

14   No. 162 at 52; *see also Ctr. for Biological Diversity*, 900 F.3d at 1072 (9th Cir.

15   2018); *Am. Wild Horse Preservation*, 873 F.3d at 932. In light of this shallow

16   reasoning, the Court should not, at this early stage, uphold a rule that would

17   promote so absurd a goal as childhood self-sufficiency at so great a cost. Plaintiffs

18   have more than sufficiently alleged that the Final Rule is arbitrary and capricious.

19   **G.     Count IV States a Valid Claim for Relief**

20        Count IV also survives Defendants' motion to dismiss because the

21   allegations in the Amended Complaint support the reasonable inference that the

22

PLAINTIFF STATES' RESPONSE
TO DEFENDANTS' MOTION TO
DISMISS AMENDED
COMPLAINT
NO. 4:19-cv-05210-RMP

32

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

1   Rule was motivated by an unlawful intent to discriminate on the basis of race,

2   ethnicity, or national origin. As Judge Feinerman held, at this early stage in the

3   litigation, nothing more is required. *See Cook Cty.*, 2020 WL 2542155, at *6

4   (denying DHS's motion to dismiss Equal Protection claim).

5       **1.    The factual allegations in the Amended Complaint support a
        reasonable inference of discriminatory purpose**

6

7       To survive Defendants' motion to dismiss, Plaintiffs must plausibly allege

8   that "an invidious discriminatory purpose was a motivating factor behind" the

9   Rule. *Ave. 6E Investments, LLC v. City of Yuma, Ariz.*, 818 F.3d 493, 504 (9th

10  Cir. 2016). For a claim to be "plausible," Plaintiffs need only "plead[] factual

11  content that allows the court to draw the reasonable inference that the defendant

12  is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. In assessing

13  whether Plaintiffs have met this standard, "all inferences must be drawn in [their]

14  favor." *Ave. 6E Investments, LLC*, 818 F.3d at 509.

15      The factual allegations in the Amended Complaint—along with the

16  reasonable inferences to which Plaintiffs are entitled—clear this bar. Plaintiffs'

17  allegation that "[t]he Rule was motivated by Administration officials' intent to

18  discriminate on the basis of race, ethnicity, or national origin," Am. Compl.

19  ¶ 430, is supported by several factual bases cited in the Amended Complaint.

20      1.    First, Plaintiffs quote remarks by Administration officials

21  "reflecting animus toward non-European immigrants." *Id.* ¶ 432. White House

22

PLAINTIFF STATES' RESPONSE
TO DEFENDANTS' MOTION TO
DISMISS AMENDED
COMPLAINT
NO. 4:19-cv-05210-RMP

33

1    senior adviser Stephen Miller—an ardent supporter and key architect of the

2    Rule—said he "would be happy if not a single refugee foot ever touched

3    American soil." *Id.* ¶ 89. Similarly, when referring to immigrants from Haiti and

4    Africa, the President asked why the United States should accept immigrants from

5    "shithole countries" rather than from nations like "Norway." ECF No. 31 ¶ 92.

6         These allegations are supported by additional public-record evidence that

7    has surfaced since this suit was filed, which Defendants do not dispute.[8] *See* ECF

8    No. 198 at 8–9 & n.3. Recently released emails show that Miller was an avid

9    reader of white supremacist and racist websites, and he recommended a novel

10    titled "The Camp of Saints," which portrays non-white immigrants as rapists who

11    invade Europe.[9] *See also Cook Cty.*, 2020 WL 2542155, at *6 (on motion to

12    dismiss, plaintiff "is entitled to the . . . reasonable inference that Miller, having

13    become the President's principal immigration advisor, would seek to advance his

14    beliefs by pressing for a regulation that suppresses nonwhite immigration").

15

16         [8] The Court may also take judicial notice of publicly available documents.

17    *U.S. v. Raygoza-Garcia*, 902 F.3d 994, 1001 (9th Cir. 2018) ("A court may take

18    judicial notice of undisputed matters of public record.").

19         [9] *See* Michael Edison Hayden, *Stephen Miller's Affinity for White*

20    *Nationalism Revealed in Leaked Emails*, Southern Poverty Law Center (Nov. 12,

21    2019),            https://www.splcenter.org/hatewatch/2019/11/12/stephen-millers-

22    affinity-white-nationalism-revealed-leaked-emails.

PLAINTIFF STATES' RESPONSE
TO DEFENDANTS' MOTION TO
DISMISS AMENDED
COMPLAINT
NO. 4:19-cv-05210-RMP

34

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

1      Defendant Kenneth Cuccinelli—the former Acting Director of DHS sub-

2  agency U.S. Citizenship and Immigration Services (USCIS)—has also echoed

3  rhetoric that supports an inference of discrimination. In response to questions

4  about the Rule, Cuccinelli stated publicly that the Emma Lazarus sonnet inscribed

5  on the Statue of Liberty inviting "your tired, your poor, your huddled masses"

6  actually "refer[ed] back to people coming from Europe." ECF No. 31, ¶ 117; *see*

7  *also Cook Cty.*, 2020 WL 2542155, at *6 (on motion to dismiss, plaintiff "is

8  entitled to the reasonable inference that Cuccinelli's statements revealed . . . his

9  understanding that the Rule was intended to favor white immigrants and

10  disproportionately harm nonwhite immigrants"); *see also* ECF No. 31 at ¶ 90.

11      These statements by senior officials, who were central to the promulgation

12  of the Rule, cannot be dismissed as irrelevant "stray comments." ECF No. 223 at

13  31. Significantly, Cuccinelli's statement expressing a clear preference for

14  European immigrants was made in response to questions about the Rule itself.

15  ECF No. 31, ¶¶ 116–17. Nor is Cuccinelli "non-DHS personnel" as Defendants

16  suggest (ECF No. 223 at 34)—as the Acting Director of USCIS at the time the

17  Rule was finalized, Cuccinelli was a key decision maker. ECF No. 31, ¶ 116.

18      2.      Plaintiffs further allege that the "historical background" of the Rule

19  and the "specific sequence of events leading up to" its announcement support an

20  inference of discrimination. ECF No. 31, ¶ 432. Seeking to influence DHS's

21  usual process, Miller pressured the agency to publish the Rule more quickly,

22

PLAINTIFF STATES' RESPONSE
TO DEFENDANTS' MOTION TO
DISMISS AMENDED
COMPLAINT
NO. 4:19-cv-05210-RMP

35

1    calling the agency's "timeline" for the Rule "unacceptable" and "an

2    embarrassment." *Id.* ¶ 96; *see also id* ¶ 112 (Miller reportedly shouted: "You

3    ought to be working on this regulation all day every day"). Miller even urged the

4    President to remove L. Francis Cissna—then-Director of USCIS—because DHS

5    did not act with enough urgency in finalizing the Rule. *Id.*, ¶ 113.

6    3.    Finally, Plaintiffs cite the "anticipated disparate racial and ethnic

7    impact" of the Rule. ECF No. 31, ¶¶ 431–32. Specifically, "the Rule will cause

8    Latinos and other people of color to be disproportionately excluded from the

9    United States." *Id.* ¶ 431. According to one estimate, the arbitrary income

10    threshold in the Rule "would have disproportionate effects based on national

11    origin and ethnicity, blocking 71% of applicants from Mexico and Central

12    America, 69% from Africa, and 52% from Asia—compared to only 36% from

13    Europe, Canada, and Oceania." *Id.* ¶ 407; *see also id.* ¶¶ 408–10 (describing how

14    other factors, such as credit scores and high school degree, would also have a

15    disparate impact). DHS was aware that the Rule would have these effects, as

16    "[n]umerous commenters pointed to the racially and ethnically disparate impact"

17    of the agency's new public charge definition. *Id.* ¶ 153.

18    In response to these concerns, DHS itself acknowledged the possibility that

19    the Rule would disfavor certain groups, explaining that including certain benefits

20    in the public charge assessment "may impact in greater numbers communities of

21    color, including Latinos and [Asian American and Pacific Islanders], . . . and

22

PLAINTIFF STATES' RESPONSE
TO DEFENDANTS' MOTION TO
DISMISS AMENDED
COMPLAINT
NO. 4:19-cv-05210-RMP

36

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

1    therefore may impact the overall composition of immigration with respect to

2    these groups." 84 Fed. Reg. at 41,369. The racial and ethnic animus evident in

3    statements by top officials, *see supra* at 33-35, suggests the Rule was adopted

4    "because of, and not in spite of," this disparate impact. ECF No. 31, ¶ 411.

5         Taken together, and construed in the light most favorable to Plaintiffs,

6    these allegations "nudge[]" Plaintiffs' Equal Protection claim—including the

7    requisite discriminatory intent—"across the line from conceivable to plausible."

8    *Ashcroft*, 556 U.S. at 680. As Judge Feinerman concluded, Plaintiffs "expressly

9    and plausibly allege[] that DHS issued the Rule knowing and intending that it

10   would have a disproportionate negative impact on nonwhite immigrants." *Cook*

11   *Cty.,* 2020 WL 2542155, at *6; *see also id.* at *12.

12        **2.    Defendants misconstrue the governing standard**

13        In urging dismissal, Defendants' arguments ignore the legal framework

14   that governs claims of discrimination.

15        1.    That a policy may be "facially neutral," ECF No. 223 at 31, does not

16   defeat a claim that the policy was motivated by unlawful animus. The Supreme

17   Court long ago rejected the argument that there can be no discriminatory purpose

18   where a policy "appears neutral on its face." *Vill. of Arlington Heights v. Metro.*

19   *Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977). Instead, "[d]etermining whether

20   invidious discriminatory purpose was a motivating factor demands a sensitive

21   inquiry" into both "circumstantial and direct evidence of intent." *Id.*

22

PLAINTIFF STATES' RESPONSE                    37        ATTORNEY GENERAL OF WASHINGTON
TO DEFENDANTS' MOTION TO                                      Complex Litigation Division
DISMISS AMENDED                                              800 Fifth Avenue, Suite 2000
COMPLAINT                                                        Seattle, WA 98104
NO. 4:19-cv-05210-RMP                                            (206) 464-7744

1    Although disparate impact, standing alone, cannot support an Equal

2    Protection claim, it is circumstantial evidence that supports a reasonable

3    inference of discriminatory intent. *See Arlington Heights*, 429 U.S. at 266

4    (explaining that "[t]he impact of the [challenged] action" may be "an important

5    starting point" in evaluating "discriminatory purpose"). Animus may also be

6    inferred from the other information Plaintiffs have alleged in addition to disparate

7    impact, including: (1) "[t]he historical background of the decision," (2) "[t]he

8    specific sequence of events leading up to the challenged decision,"

9    (3) "[d]epartures from the normal procedural sequence," and (4) "statements by

10    members of the decisionmaking body." *Id.* at 266–68; *see supra* at 33-35.

11    Nor can Defendants defeat Plaintiffs' Equal Protection claim by pointing

12    to purported "non-discriminatory justifications" or the "notice-and-comment

13    process" DHS used to promulgate the Rule. ECF No. 223 at 33. Again, the

14    Supreme Court has made clear that a plaintiff alleging an Equal Protection

15    violation is *not* "require[d] to prove that "the challenged action rested solely

16    on . . . discriminatory purposes." *Arlington Heights*, 429 U.S. at 265.

17    "[G]overnment action may violate equal protection" so long as "a discriminatory

18    purpose was *one* motivating factor." *Ramos v. Nielsen*, 321 F. Supp. 3d 1083,

19    1124 (N.D. Cal. 2018) (emphasis added); *see also Cook Cty.*, 2020 WL 2542155,

20    at *7.

21    ///

22

PLAINTIFF STATES' RESPONSE                38                ATTORNEY GENERAL OF WASHINGTON
TO DEFENDANTS' MOTION TO                                    Complex Litigation Division
DISMISS AMENDED                                            800 Fifth Avenue, Suite 2000
COMPLAINT                                                  Seattle, WA  98104
NO. 4:19-cv-05210-RMP                                      (206) 464-7744

1          2.          Defendants likewise misread the Supreme Court's decision in

2     *Trump v. Hawaii*, 138 S. Ct. 2392 (2018). According to Defendants, *Hawaii*

3     stands for the proposition that any time a case "implicates" the Executive

4     Branch's "immigration policies," courts must always apply a "highly deferential

5     standard" instead of strict scrutiny. ECF No. 223 at 32. But the Supreme Court

6     said no such thing. Instead, "the Court in *Hawaii* held that the sphere in which

7     executive power is shielded from searching inquiry is the President's adoption of

8     a preventive measure in the context of international affairs and national security,

9     not the *entire* realm of immigration law." *Cook Cty.*, 2020 WL 2542155, at *7

10    (citing *Hawaii*, 138 S. Ct. at 2409) (alterations omitted). *Hawaii* does not apply

11    here, though, because of important distinctions between the two cases.

12         First, the statute at issue in *Hawaii* (8 U.S.C. § 1182(f)) "exudes deference

13    to the President in every clause." 138 S. Ct. at 2408. By contrast, the statute at

14    issue here (8 U.S.C. § 1182(a)(4)) does not grant the President expansive

15    discretion, nor does it commit the decision to exclude an alien "to unguided

16    agency discretion." *Cook Cty.*, 2020 WL 2542155, at *6 (citing *Abourezk v.*

17    *Reagan*, 785 F.2d 1043, 1051 (D.C. Cir. 1986) *aff'd*, 484 U.S. 1 (1987)).

18         Second, the "international affairs and national security" concerns in

19    *Hawaii* are not present here. 138 S. Ct. at 2409. DHS has consistently offered

20    only economic justifications for the Rule. S*ee* 84 Fed. Reg. at 41,295 ("DHS is

21    revising its interpretation of 'public charge' . . . to better ensure that aliens subject

22

PLAINTIFF STATES' RESPONSE            39
TO DEFENDANTS' MOTION TO
DISMISS AMENDED
COMPLAINT
NO. 4:19-cv-05210-RMP

1    to the public charge inadmissibility ground are self-sufficient."); *see also* ECF

2    No. 233 at 33 (Rule "facilitate[s] self-sufficiency among immigrants").

3         Finally, the plaintiffs in *Hawaii* challenged an executive decision

4    regarding "the entry of foreign nationals" into the United States, 138 S. Ct. at

5    2420 n.5, but the Rule at issue here applies to individuals who are "lawfully

6    present." ECF No. 31, ¶15. "[E]qual protection claims do not necessarily receive

7    rational basis review simply because they are in the immigration context." *Dent*

8    *v. Sessions*, 900 F.3d 1075, 1081 (9th Cir. 2018) *cert. denied sub nom. Dent v.*

9    *Barr*, 139 S. Ct. 1472 (2019). The Fifth Amendment—including its Equal

10   Protection guarantee—"applies to all 'persons' within the United States,

11   including aliens, whether their presence here is lawful, unlawful, temporary, or

12   permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). Plaintiffs' Equal

13   Protection claim is subject to strict scrutiny, not rational basis review. *E.g.*,

14   *Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1689–90 (2017).

15        "The sensitive and fact-intensive inquiry needed to determine whether the

16   [defendant] acted with discriminatory intent cannot be made solely on the

17   pleadings." *Calderon v. Barbarino*, No. C 12-05819 JSW, 2013 WL 12176842,

18   at *5 (N.D. Cal. May 2, 2013). Plaintiffs have alleged "sufficient specific facts to

19   make their entitlement to relief at least plausible." *Faith Action for Cmty. Equity*

20   *v. Hawaii*, No. CIV 13-00450 SOM, 2014 WL 1691622, at *11 (D. Haw.

21   Apr. 28, 2014).

22

PLAINTIFF STATES' RESPONSE
TO DEFENDANTS' MOTION TO
DISMISS AMENDED
COMPLAINT
NO. 4:19-cv-05210-RMP

40

1

**CONCLUSION**

2     For the foregoing reasons, Defendants' motion to dismiss should be

3 denied.

4

5     RESPECTFULLY SUBMITTED this 12th day of June, 2020.

6                                        ROBERT W. FERGUSON
                                         Attorney General of Washington
7
                                         */s/Joshua Weissman*
8                                        JEFFREY T. SPRUNG, WSBA #23607
                                         JOSHUA WEISSMAN, WSBA #42648
9                                        PAUL M. CRISALLI, WSBA #40681
                                         NATHAN K. BAYS, WSBA #43025
10                                       BRYAN M.S. OVENS, WSBA #32901
                                         Assistant Attorneys General
11                                       800 Fifth Ave., Ste. 2000
                                         Seattle, WA  98104
12                                       (206) 464-7744
                                         jeff.sprung@atg.wa.gov
13                                       joshua.weissman@atg.wa.gov
                                         paul.crisalli@atg.wa.gov
14                                       nathan.bays@atg.wa.gov
                                         bryan.ovens@atg.wa.gov
15                                       *Attorneys for Plaintiff State of Washington*

16

17

18

19

20

21

22

PLAINTIFF STATES' RESPONSE               41              ATTORNEY GENERAL OF WASHINGTON
TO DEFENDANTS' MOTION TO                                        Complex Litigation Division
DISMISS AMENDED                                              800 Fifth Avenue, Suite 2000
COMPLAINT                                                          Seattle, WA  98104
NO. 4:19-cv-05210-RMP                                               (206) 464-7744

1    MARK R. HERRING
     Attorney General of Virginia
2
     /s/ Michelle S. Kallen
3    MICHELLE S. KALLEN, VSB #93286
     Deputy Solicitor General
4    JESSICA MERRY SAMUELS, VSB #89537
     Assistant Solicitor General
5    RYAN SPREAGUE HARDY, VSB #78558
     ALICE ANNE LLOYD, VSB #79105
6    MAMOONA H. SIDDIQUI, VSB #46455
     Assistant Attorneys General
7    Office of the Attorney General
     202 North Ninth Street
8    Richmond, VA  23219
     (804) 786-7240
9    MKallen@oag.state.va.us
     JSamuels@oag.state.va.us
10   RHardy@oag.state.va.us
     ALloyd@oag.state.va.us
11   MSiddiqui@oag.state.va.us
     SolicitorGeneral@oag.state.va.us
12   *Attorneys for Plaintiff Commonwealth of*
     *Virginia*
13

14   PHIL WEISER
     Attorney General of Colorado
15
     /s/ Eric R. Olson
16   ERIC R. OLSON, #36414
     Solicitor General
17   Office of the Attorney General
     Colorado Department of Law
18   1300 Broadway, 10th Floor
     Denver, CO  80203
19   (720) 508 6548
     Eric.Olson@coag.gov
20   *Attorneys for Plaintiff the State of Colorado*

21

22

PLAINTIFF STATES' RESPONSE              42
TO DEFENDANTS' MOTION TO
DISMISS AMENDED
COMPLAINT
NO. 4:19-cv-05210-RMP

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

1                KATHLEEN JENNINGS
               Attorney General of Delaware
2                AARON R. GOLDSTEIN
               State Solicitor
3                ILONA KIRSHON
               Deputy State Solicitor
4

5                */s/ Monica A. Horton*
               MONICA A. HORTON, #5190
6                Deputy Attorney General
               820 North French Street
7                Wilmington, DE  19801
               Monica.horton@delaware.gov
8                *Attorneys for Plaintiff the State of Delaware*

9                KWAME RAOUL
               Attorney General of Illinois
10

11                */s/ Liza Roberson-Young*
               LIZA ROBERSON-YOUNG, #6293643
12                Public Interest Counsel
               Office of the Illinois Attorney General
13                100 West Randolph Street, 11th Floor
               Chicago, IL  60601
14                (312) 814-5028
               ERobersonYoung@atg.state.il.us
15                *Attorney for Plaintiff State of Illinois*

16

17

18

19

20

21

22

PLAINTIFF STATES' RESPONSE         43         ATTORNEY GENERAL OF WASHINGTON
TO DEFENDANTS' MOTION TO                  Complex Litigation Division
DISMISS AMENDED                         800 Fifth Avenue, Suite 2000
COMPLAINT                               Seattle, WA  98104
NO. 4:19-cv-05210-RMP                      (206) 464-7744

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

CLARE E. CONNORS
Attorney General of Hawaiʻi

*/s/ Lili A. Young*
LILI A. YOUNG, #5886
Deputy Attorney General
Department of the Attorney General
425 Queen Street
Honolulu, HI 96813
(808) 587-3050
Lili.A.Young@hawaii.gov
*Attorneys for Plaintiff State of Hawaiʻi*


BRIAN E. FROSH
Attorney General of Maryland

*/s/ Jeffrey P. Dunlap*
JEFFREY P. DUNLAP, #1812100004
Assistant Attorney General
200 St. Paul Place
Baltimore, MD 21202
T: (410) 576-7906
F: (410) 576-6955
JDunlap@oag.state.md.us
*Attorneys for Plaintiff State of Maryland*

PLAINTIFF STATES' RESPONSE
TO DEFENDANTS' MOTION TO
DISMISS AMENDED
COMPLAINT
NO. 4:19-cv-05210-RMP

44

1    MAURA HEALEY
     Attorney General of Commonwealth of
2    Massachusetts

3    */s/ Abigail B. Taylor*
     ABIGAIL B. TAYLOR, #670648
4    Chief, Civil Rights Division
     DAVID URENA, #703076
5    Special Assistant Attorney General
     ANGELA BROOKS, #663255
6    Assistant Attorney General
     Office of the Massachusetts Attorney General
7    One Ashburton Place
     Boston, MA  02108
8    (617) 963-2232
     abigail.taylor@mass.gov
9    david.urena@mass.gov
     angela.brooks@mass.gov
10   *Attorneys for Plaintiff Commonwealth of*
     *Massachusetts*

11

12   DANA NESSEL
     Attorney General of Michigan
13
     */s/Toni L. Harris*
14   FADWA A. HAMMOUD, #P74185
     Solicitor General
15   TONI L. HARRIS, #P63111
     *First Assistant Attorney General*
16   Michigan Department of Attorney General
     P. O. Box 30758
17   Lansing, MI  48909
     (517) 335-7603 (main)
18   HarrisT19@michigan.gov
     Hammoudf1@michigan.gov
19   *Attorneys for the People of Michigan*

20

21

22

PLAINTIFF STATES' RESPONSE           45          ATTORNEY GENERAL OF WASHINGTON
TO DEFENDANTS' MOTION TO                              Complex Litigation Division
                                                     800 Fifth Avenue, Suite 2000
DISMISS AMENDED                                          Seattle, WA  98104
COMPLAINT                                                   (206) 464-7744
NO. 4:19-cv-05210-RMP

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

KEITH ELLISON
Attorney General of Minnesota

*/s/ R.J. Detrick*
R.J. DETRICK, #0395336
*Assistant Attorney General*
Minnesota Attorney General's Office
Bremer Tower, Suite 100
445 Minnesota Street
St. Paul, MN  55101-2128
(651) 757-1489
(651) 297-7206
Rj.detrick@ag.state.mn.us
*Attorneys for Plaintiff State of Minnesota*


AARON D. FORD
Attorney General of Nevada

*/s/ Heidi Parry Stern*
HEIDI PARRY STERN, #8873
Solicitor General
Office of the Nevada Attorney General
555 E. Washington Ave., Ste. 3900
Las Vegas, NV  89101
HStern@ag.nv.gov
*Attorneys for Plaintiff State of Nevada*

PLAINTIFF STATES' RESPONSE
TO DEFENDANTS' MOTION TO
DISMISS AMENDED
COMPLAINT
NO. 4:19-cv-05210-RMP

46

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

| | |
|---|---|
| 1 | GURBIR S. GREWAL<br>Attorney General of New Jersey |
| 2 | |
| | */s/ Glenn J. Moramarco* |
| 3 | GLENN J. MORAMARCO, #030471987 |
| | Assistant Attorney General |
| 4 | Office of the Attorney General |
| | Richard J. Hughes Justice Complex |
| 5 | 25 Market Street, 1st Floor, West Wing |
| | Trenton, NJ 08625-0080 |
| 6 | (609) 376-3232 |
| | Glenn.Moramarco@law.njoag.gov |
| 7 | *Attorneys for Plaintiff State of New Jersey* |
| 8 | |
| 9 | HECTOR BALDERAS<br>Attorney General of New Mexico |
| 10 | */s/ Tania Maestas* |
| | TANIA MAESTAS, #20345 |
| 11 | Chief Deputy Attorney General |
| | P. O. Drawer 1508 |
| 12 | Santa Fe, NM 87504-1508 |
| | tmaestas@nmag.gov |
| 13 | *Attorneys for Plaintiff State of New Mexico* |
| 14 | |
| 15 | PETER F. NERONHA<br>Attorney General of Rhode Island |
| 16 | */s/ Lauren E. Hill* |
| | LAUREN E. HILL, #9830 |
| 17 | Special Assistant Attorney General |
| | Office of the Attorney General |
| 18 | 150 South Main Street |
| | Providence, RI 02903 |
| 19 | (401) 274-4400 x 2038 |
| | E-mail: lhill@riag.ri.gov |
| 20 | *Attorneys for Plaintiff State of Rhode Island* |
| 21 | |
| 22 | |

PLAINTIFF STATES' RESPONSE                47
TO DEFENDANTS' MOTION TO
DISMISS AMENDED
COMPLAINT
NO. 4:19-cv-05210-RMP

1

**DECLARATION OF SERVICE**

2

I hereby declare that on this day I caused the foregoing document to be

3

electronically filed with the Clerk of the Court using the Court's CM/ECF

4

System, which will serve a copy of this document upon all counsel of record.

5

DATED this 12th day of June 2020, at Seattle, Washington.

6

7

*/s/ Joshua Weissman*
JOSHUA WEISSMAN, WSBA #42648
Assistant Attorney General

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

PLAINTIFF STATES' RESPONSE         48         ATTORNEY GENERAL OF WASHINGTON
TO DEFENDANTS' MOTION TO                        Complex Litigation Division
DISMISS AMENDED                                 800 Fifth Avenue, Suite 2000
COMPLAINT                                       Seattle, WA  98104
NO. 4:19-cv-05210-RMP                           (206) 464-7744