FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

Sep 14, 2020

SEAN F. MCAVOY, CLERK

| | |
|---|---|
| STATE OF WASHINGTON; COMMONWEALTH OF VIRGINIA; STATE OF COLORADO; STATE OF DELAWARE; STATE OF ILLINOIS; COMMONWEALTH OF MASSACHUSETTS; DANA NESSEL, Attorney General on behalf of the people of Michigan; STATE OF MINNESOTA; STATE OF NEVADA; STATE OF NEW JERSEY; STATE OF NEW MEXICO; STATE OF RHODE ISLAND; STATE OF MARYLAND; STATE OF HAWAI'I, | NO:  4:19-CV-5210-RMP

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS |
| Plaintiffs, | |
| v. | |
| UNITED STATES DEPARTMENT OF HOMELAND SECURITY, a federal agency; CHAD F. WOLF, in his official capacity as Acting Secretary of the United States Department of Homeland Security; UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, a federal agency; KENNETH T. CUCCINELLI, II, in his official capacity as Senior Official Performing the Duties of Director of United States Citizenship and Immigration Services, | |
| Defendants. | |

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS ~ 1

BEFORE THE COURT is the Defendants'[1] ("DHS's") Motion to Dismiss, ECF No. 223, Plaintiffs'[2] (the "States'") Amended Complaint.  Having considered DHS's Motion, ECF No. 223; the States' opposition, 233; DHS's reply, ECF No. 236; the supplemental authority submitted by the States and DHS, ECF Nos. 241, 242, and 245; the remaining docket; and the relevant law; the Court is fully informed.

## DISMISSAL STANDARDS

Complaints filed in federal court must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

A motion to dismiss under Fed. R. Civ. P. 12(b)(1) tests whether a complaint alleges grounds for federal subject matter jurisdiction.  Under Article III of the U.S. Constitution, the Court has subject matter jurisdiction only over matters brought by a

---

[1] Defendants in this lawsuit are the United States Department of Homeland Security ("DHS"), Acting Secretary of DHS Chad Wolf, United States Citizenship and Immigration Services ("USCIS"), and Acting Director of USCIS Kenneth Cuccinelli II (collectively, "DHS").  The Court substitutes Chad F. Wolf for Kevin K. McAleenan in the caption, who was named as a Defendant in the Amended Complaint but is no longer Acting Secretary of DHS.  The Court further corrects the caption to reflect that Cuccinelli's title has changed to "Senior Official Performing the Duties of Director."  *See* Fed. R. Civ. P. 25(d).

[2] The Plaintiffs in this lawsuit are the State of Washington, Commonwealth of Virginia, State of Colorado, State of Delaware, State of Hawai'i, State of Illinois, State of Maryland, Commonwealth of Massachusetts, Attorney General Dana Nessel on behalf of the People of Michigan, State of Minnesota, State of Nevada, State of New Jersey, State of New Mexico, and State of Rhode Island (collectively, the "States").

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS ~ 2

party with standing, and an allegation that a party lacks standing is properly raised in a Rule 12(b)(1) motion to dismiss.  *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests whether a complaint states a cognizable legal theory as well as essential facts under that theory.  *See Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984).  When a defendant challenges a complaint's sufficiency under Fed. R. Civ. P. 12(b)(6), the court must determine whether the complaint bears "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  A claim is plausible when the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

In deciding both Rule 12(b)(6) and facial Rule 12(b)(1) motions to dismiss, a court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party."  *Manzarek v. St. Paul Fire & Marin Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008); *see also Cassirer v. Kingdom of Spain*, 580 F.3d 1048, 1052 n.2 (9th Cir. 2009), *rev'd on other grounds en banc*, 616 F.3d 1019 (9th Cir. 2010) (applying *Iqbal*, 556 U.S. 662, to a facial motion to dismiss for lack of subject matter jurisdiction).  The non-conclusory

factual allegations need not be detailed but must "raise a right to relief above the speculative level.[]"  *Twombly*, 550 U.S. at 555 (internal citation omitted).

## BACKGROUND

The States are challenging the Department of Homeland Security's ("DHS's") regulatory redefinition of who to exclude from immigration status as "likely . . . to become a public charge."  8 U.S.C. § 1182(a)(4)(A); *see* Inadmissibility on Public Charge Grounds, 84 Fed. Reg. 41,292 (Aug. 14, 2019) ("Public Charge Rule").  In the Amended Complaint, the States raise four causes of action: (1) a violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(C), for agency action contrary to the Immigration and Nationality Act ("INA")[3], the Personal Responsibility and Work Opportunity Reconciliation Act ("PRWORA")[4], the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA")[5], the Rehabilitation Act[6], and the SNAP statute[7]; (2) a violation of the APA, 5 U.S.C. § 706(2)(C), for agency action "in excess of statutory jurisdiction [or] authority" or "ultra vires"; (3) a violation of the APA, 5 U.S.C. § 706(2)(C), for agency action that is "arbitrary, capricious, [or] an abuse of discretion"; and (4) a violation of the

---

[3] 8 U.S.C. §§ 1182(a)(4), 1152, and 1182(a)(1).

[4] 8 U.S.C. §§1611−13, 1621−22, and 1641.

[5] 8 U.S.C. §§ 1182, 1183a.

[6] 29 U.S.C. § 794(a).

[7] 7 U.S.C. § 2017(b).

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION TO DISMISS ~ 4

1  guarantee of equal protection under the U.S. Constitution's Fifth Amendment Due

2  Process Clause.  ECF No. 31 at 161−70.

3       The INA sets forth ten grounds of inadmissibility, all of which make a person

4  "ineligible to receive visas and ineligible to be admitted to the United States."  8

5  U.S.C. § 1182(a).  This case concerns one of those grounds: a likelihood of

6  becoming a public charge.  *Id.* § 1182(a)(4)(A).

7       In its current form, the INA provides that "[a]ny alien who, in the opinion of

8  the consular officer at the time of application for a visa, or in the opinion of the

9  Attorney General at the time of application for admission or adjustment of status, is

10  likely at any time to become a public charge is inadmissible."[8]  8 U.S.C. §

11  1182(a)(4)(A).  The same provision requires the officer determining whether an

12  applicant is inadmissible as a public charge to consider "at a minimum" the

13  applicant's

14       (I) age;
       (II) health;
15       (III) family status;
       (IV) assets, resources, and financial status; and
16       (V) education and skills.

17  8 U.S.C. § 1182(a)(4)(B)(i).

18

19  [8] When Congress transferred the adjudicatory functions of the former
    Commissioner of the Immigration and Naturalization Service ("INS") to the
20  Secretary of DHS, the Attorney General's authority regarding the public charge
    provision was delegated to the Director of USCIS, a division of DHS.  *See* 6 U.S.C.
21  § 271(b)(5).

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION TO DISMISS ~ 5

The officer "may also consider any affidavit of support under section 213A [8 U.S.C. § 1183a] for purposes of exclusion" on the public charge ground. *Id.* § 1182(a)(4)(B)(ii).

## A.    Redefinition of "Public Charge"

The Public Charge Rule, in its final format, defines "public charge" to denote "an alien who receives one or more public benefits, as defined in paragraph (b) of this section, for more than 12 months in the aggregate within any 36-month period (such that, for instance, receipt of two benefits in one month counts as two months)." 84 Fed. Reg. at 41,501 (to be codified at 8 C.F.R. § 212.21(a))[9].  The Public Charge Rule redefines "public benefit" to include: "(1) [a]ny Federal, State, local, or tribal cash assistance for income maintenance (other than tax credits)," including Supplemental Security Income ("SSI"), Temporary Assistance for Needy Families ("TANF") or state "General Assistance"; (2) Supplemental Nutrition Assistance Program ("SNAP," colloquially known as "food stamps"); (3) housing assistance vouchers under Section 8 of the U.S. Housing Act of 1937; (4) Section 8 "Project-Based" rental assistance, including "Moderate Rehabilitation"; (5) Medicaid, with exceptions for benefits for an emergency medical condition, services or benefits under the Individuals with Disabilities Education Act ("IDEA"), school-based services or benefits, and benefits for immigrants under age 21 or to a woman during

---

[9] The Court's subsequent references to the provisions of the Public Charge Rule uses the C.F.R. citations that took effect with the Public Charge Rule.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS ~ 6

pregnancy or within 60 days after pregnancy; and (6) public housing under Section 9 of the U.S. Housing Act of 1937.  8 C.F.R. § 212.21(b).

### B.    Weighted Factors for Totality of the Circumstances Determination

The Public Charge Rule instructs officers to evaluate whether an applicant is "likely to become a public charge" using a "totality of the circumstances" test that "at least entail[s] consideration of the alien's age; health; family status; education and skills; and assets, resources, and financial status" as described in the Rule.  8 C.F.R. § 212.22(a), (b).  The Public Charge Rule then prescribes a variety of factors to weigh "positively," in favor of a determination that an applicant is not a public charge, and factors to weigh "negatively," in favor of finding the applicant inadmissible as a public charge.  8 C.F.R. § 212.22(a), (b), and (c); *see also, e.g.,* 84 Fed. Reg. 41,295 ("Specifically, the rule contains a list of negative and positive factors that DHS will consider as part of this determination, and directs officers to consider these factors in the totality of the alien's circumstances. . . . The rule also contains lists of heavily weighted negative factors and heavily weighted positive factors.").  The Public Charge Rule attributes heavy negative weight to the following circumstances:

> (1) "not a full-time student and is authorized to work, but is unable to demonstrate current employment, recent employment history, or a reasonable prospect of future employment";
> (2) "certified or approved to receive one or more public benefits . . .  for more than 12 months in the aggregate within any 36-month period, beginning no earlier than 36 months prior to the alien's application for admission or adjustment of status";

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS ~ 7

       (3) "diagnosed with a medical condition that is likely to require extensive medical treatment or institutionalization or that will interfere with the alien's ability to provide for himself or herself, attend school, or work; and . . . uninsured and has neither the prospect of obtaining private health insurance, nor the financial resources to pay for reasonably foreseeable medical costs related to such medical condition"; and

       (4) "previously found inadmissible or deportable on public charge grounds[.]"

8 C.F.R. § 212.22(c)(1)(i)−(iv).

Conversely, the Public Charge Rule attributes heavy positive weight to three factors:

       (1) an annual household income, assets, or resources above 250 percent of the Federal Poverty Guidelines ("FPG") for the household size;

       (2) an annual individual income of at least 250 percent of the FPG for the household size; and

       (3) private health insurance that is not subsidized under the Affordable Care Act.

*See* 8 C.F.R. § 212.22(c)(2)(i)−(iii).

The Public Charge Rule also directs officers to consider whether the applicant (1) is under the age of 18 or over the minimum early retirement age for social security; (2) has a medical condition that will require extensive treatment or interfere with the ability to attend school or work; (3) has an annual household gross income under 125 percent of the FPG; (4) has a household size that makes the immigrant likely to become a public charge at any time in the future; (5) lacks significant assets, like savings accounts, stocks, bonds, or real estate; (6) lacks significant assets

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS ~ 8

and resources to cover reasonably foreseeable medical costs; (7) has any financial liabilities; (8) has applied for, been certified to receive, or received public benefits after October 15, 2019; (9) has applied for or has received a USCIS fee waiver for an immigration benefit request; (10) has a poor credit history and credit score; (11) lacks private health insurance or other resources to cover reasonably foreseeable medical costs; (12) lacks a high school diploma (or equivalent) or a higher education degree; (13) lacks occupational skills, certifications, or licenses; or (14) is not proficient in English.  *See* 8 C.F.R. § 212.22(b).

The officer administering the public charge admissibility test may determine what factors are relevant and may consider factors beyond those enumerated in the rule. *See* 8 C.F.R. § 212.22(a)

## C.    Applicability of the Rule

The Public Charge Rule applies to non-citizens subject to section 212(a)(4) of the INA, 8 U.S.C. § 1182(a)(4), who apply to DHS for admission to the United States or for adjustment of status to that of lawful permanent resident.  *See* 8 C.F.R. § 212.20.

The Public Charge Rule was set to take effect on October 15, 2019.  84 Fed. Reg. at 41,292.  Beginning on the day that the Rule was published in the Federal Register, however, various plaintiffs filed nine complaints challenging the rule

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS ~ 9

change in five district courts around the country.[10]  On October 11, 2019, this Court

issued a stay pursuant to 5 U.S.C. § 705 of the APA and a preliminary injunction

(the "Preliminary Injunction Order"), halting the implementation and enforcement of

the Public Charge Rule during the course of this litigation.  ECF No. 162.  On or

around the same date, all five district courts hearing plaintiffs' motions for entry of a

preliminary injunction, entered preliminary injunctions that ranged from nationwide

in scope to more geographically limited in their application.

DHS appealed this Court's Preliminary Injunction Order on October 30, 2019.

ECF No. 175.  A three-judge motions panel of the United States Court of Appeals

for the Ninth Circuit stayed the preliminary injunction entered by this Court, as well

as the preliminary injunction entered in the three Northern District of California

cases, on December 5, 2019.  *City & Cty. of San Francisco v. USCIS* ("*San*

*Francisco*"), 944 F.3d 773, 788 (9th Cir. 2019) ("Ninth Circuit stay opinion").

On January 27, 2020, the United States Supreme Court stayed enforcement of

the last remaining national injunctions from the Second Circuit, and the preliminary

---

[10] *See City and Cty. of San Francisco v. USCIS*, Case No. 19-cv-4717-PJH (N.D. Cal.); *California et al. v. DHS et al.*, Case No. 19-cv-4975-PJH (N.D. Cal.); *La Clinica de la Raza et al. v. Trump*, Case No. 19-cv-4980-PJH (N.D. Cal.); *New York et al. v. DHS*, Case No. 19-cv-7777-GBD (S.D.N.Y.); *Make the Road New York et al. v. DHS et al.*, Case No. 19-cv-7993-GBD (S.D.N.Y.); *Casa de Maryland, Inc., et al. v. Trump, et al.* Case No. 19-cv-2715-PWG (D. Md.); *City of Gaithersburg, Maryland v. DHS*, Case No. 19-cv-2851-PWG (D. Md.); *Cook Cty. v. Wolf*, Case No. 19-C-6334 (N.D. Ill.).

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION TO DISMISS ~ 10

injunction applicable to Illinois, and the Public Charge Rule took effect nationwide on February 24, 2020. *Dep't of Homeland Sec. v. New York*, 140 S. Ct. 599 (2020) (staying the preliminary injunction through either the denial of a petition for a writ of certiorari from DHS based on the Second Circuit's resolution of the preliminary injunction appeal, or, if certiorari were granted, resolution of the matter by the Supreme Court); *Wolf v. Cook Cty.*, 140 S. Ct. 681 (2020) (same for the Seventh Circuit).

On July 29, 2020, the Southern District of New York granted a preliminary injunction barring enforcement of the Public Charge Rule for the duration of the state of public health emergency due to the novel coronavirus (COVID-19) pandemic. *New York v. DHS*, 2020 U.S. Dist. LEXIS 134493 (S.D.N.Y. Jul. 29, 2020); *see also* Determination that a Public Health Emergency Exists, Jan. 31, 2020, available at https://www.phe.gov/emergency/news/healthactions/phe/Pages/2019-nCoV.aspx. The Second Circuit affirmed the preliminary injunction order on August 4, 2020, but modified the scope to enjoin application of the Public Charge Rule only in Connecticut, New York, and Vermont. *New York v. DHS*, Docket Nos. 19-3591, 19-3595, 2020 U.S. App. LEXIS 24492, at *96−97 (2d Cir. Aug. 4, 2020).

## THRESHOLD MATTERS

DHS argues that in this case the States lack standing to raise their claims against enactment of the Public Charge Rule and are outside the zone of interests regulated by the Public Charge Rule. ECF No. 223 at 14−15.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION TO DISMISS ~ 11

## A.    Standing

The role of a federal court "is neither to issue advisory opinions nor to declare rights in hypothetical cases, but to adjudicate live cases or controversies consistent with the powers granted the judiciary in Article III of the Constitution." *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (en banc).

To satisfy the "'irreducible constitutional minimum'" for standing under Article III, a plaintiff must establish three elements: "(1) injury in fact (2) that is fairly traceable to the challenged conduct of the defendant and (3) that is likely to be redressed by a favorable decision." *Skyline v. Wesleyan Church v. Cal. Dep't of Managed Health Care*, 959 F.3d 341, 349 (9th Cir. 2020) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560−61 (1992)). "[S]tanding is not dispensed in gross." *Davis v. Federal Election Comm'n*, 554 U. S. 724, 734 (2008) (quoting *Lewis v. Casey*, 518 U. S. 343, 358, n. 6 (1996) (alteration omitted)). Rather, "'a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought.'" *Id.* In cases involving multiple plaintiffs, one plaintiff must have standing to seek each form of relief requested in the complaint. *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650−51 (2017).

In the Preliminary Injunction Order, this Court previously extensively analyzed and found that the States satisfied the standing requirements. ECF No. 162 at 11−26. The Court found that the States had alleged sufficient injury to satisfy the first prong of the standing inquiry. *Id.* at 23−24. The Court also found

that the harms alleged by the States were fairly traceable to the Public Charge

Rule.

The Court determined that the States made a strong showing at the

preliminary injunction stage that applying the multi-factor totality of the

circumstances test and the expanded definition of "public charge" would "result in

disparate results" across the USCIS officials administering the exclusion.  ECF No.

162 at 25.  The States further demonstrated predictable harm from the chilling

effect from the "unmistakable" message sent by the broadened scope of the public

charge inadmissibility ground.  *Id.*  The Court found that "the chilling effect of the

Public Charge Rule likely will lead individuals to disenroll from benefits, because

receipt of those benefits likely would subject them to a public charge

determination, and, equally foreseeably, because the Public Charge Rule will

create fear and confusion regarding public charge inadmissibility."  *Id.*  The Court

further found equally predictable the damage that the States had shown was likely

to their missions, the health and wellbeing of their residents, citizens and non-

citizens alike, and the States' budgets and economies.  *Id.* at 26.

DHS argues in its Motion to Dismiss that the Public Charge Rule "governs

DHS personnel and certain aliens," but neither requires nor forbids any action by the

States and does not "expressly interfere with any of [the States'] programs

applicable to aliens."  ECF No. 223 at 13.  DHS further argues that the States do not

"adequately allege that the Rule would produce a net increase in costs" for the

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION TO DISMISS ~ 13

States.  *Id.*  Rather, DHS contends, the Plaintiffs' allegations regarding the "broader chilling effect" support that the Public Charge Rule would conserve the States' resources through decreased receipt of state benefits overall and through "discouraging reliance" on state benefits.  *Id.*  Additionally, DHS argues that the States lack organizational or parens patriae standing.  *Id.* at 14.

The Court previously heard and addressed DHS's arguments that the States have not stated an injury in fact that is fairly traceable to the challenged conduct of the defendant, and the Court finds no basis to depart from its prior analysis and conclusion that the States have sufficiently alleged concrete and particularized injuries resulting from DHS's promulgation of the Public Charge Rule.

As the three Circuit judges on the motions panel that granted DHS's stay of the preliminary injunction unanimously agreed,[11] "the States have shown that they have suffered and will suffer direct injuries traceable to the Final Rule and thus have standing to challenge its validity."  *San Francisco*, 944 F.3d at 787.  In reaching that conclusion, the motions panel found that DHS's arguments that the Plaintiff's allegations of future financial harm are too attenuated and speculative to support standing were "unavailing" and "disingenuous . . . when [DHS] acknowledge these costs in its own rulemaking process."  *Id.* at 787;  *see also New York*,  2020 U.S.

---

[11] In contrast to the motions panel Circuit judges' unanimity regarding standing, the panel split 2-1 regarding the application of the stay factors set forth by *Nken v. Holder*, 556 U.S. 418, 427, 433−34 (2009).  *See San Francisco*, 944 F.3d at 809−10.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS ~ 14

App. LEXIS 24492, at *25  ("Where the agency itself forecasts the injuries claimed by the States, we agree with the Ninth Circuit that it is 'disingenuous' for DHS to claim that the injury is not sufficiently imminent.") (quoting *San Francisco*, 944 F.3d at 787).

Therefore, as DHS concedes in its reply, the States have established standing for their APA claims.  ECF No. 236 at 9 n. 3.  However, DHS contests in a footnote whether the States have standing to pursue their equal protection claim, asserting that the States lack standing as parens patriae to bring an action against the federal government under *Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*, 458 U.S. 592, 610 n.16 (1982).  ECF Nos. 223 at 9 n. 2; 336 at 9 n. 3.

States are "not normal litigants for the purposes of invoking federal jurisdiction," and are entitled to "special solicitude" when they seek to vindicate their "proprietary" or "quasi-sovereign" interests.  *Massachusetts v. EPA*, 549 U.S. 497, 518 (2007).  Quasi-sovereign interests are "independent of the benefits that might accrue to any particular individual," and the Supreme Court has recognized that neither an exhaustive formal definition nor a definitive list of qualifying interests can be presented in the abstract . . . ."  *Snapp*, 458 U.S. at 607.  However, the Supreme Court has recognized as a general category of interests "the health and well-being—both physical and economic—of its residents in general[,]" which includes a state's "substantial interest in securing its residents from the harmful effects of discrimination."  *Snapp*, 458 U.S. at 608−09 (adding, "This Court has had

too much experience with the political, social, and moral damage of discrimination not to recognize that a State has a substantial interest in assuring its residents that it will act to protect them from these evils.").  A state also must allege a sufficiently "substantial" effect on its residents, "rather than a narrow and definable class."  *Aziz v. Trump*, 231 F. Supp. 3d 23, 32 (E.D. Va. 2017) (citing *Snapp*, 458 U.S. at 607−09).  When evaluating whether an effect is substantial, a court must consider both persons who are directly and indirectly affected.  *Id.*

Although DHS argues that there is a blanket prohibition against parens patriae suits by states against the federal government, courts have widely observed that *Massachusetts v. EPA* cannot be reconciled with an absolute bar against parens patriae standing for a state suing the federal government.  *Compare* ECF Nos. 223 at 9 n. 2; 336 at 9 n. 3 *with Ariz. State Legis. v. Ariz. Ind. Redistricting Comm'n*, 576 U.S. 787, 802 n. 10 (2015); *Wash. Utils. And Transp. Comm'n v. Fed. Commc'ns Comm'n*, 513 F.2d 1142, 1153 (9th Cir.), *cert. denied*, 423 U.S. 836 (1975) (finding state standing based on parens patriae against the federal government); *Aziz*, 231 F. Supp. 3d 23 (finding state standing to pursue the equal protection claims of its residents in litigation challenging the Trump Administration's second ban on travel from majority-Muslim countries).

As with the States' APA claims, the States' allegations demonstrate a sufficiently concrete stake in the outcome of this lawsuit for purposes of their equal protection claim.  The nature of the equal protection claim they raise implicates their

quasi-sovereign interests in the health and well-being of their residents, and their interests in securing their residents from the harmful effects of discrimination.  *See Snapp*, 458 U.S. at 608−09.

Therefore, the Court denies DHS's Motion to Dismiss with respect to standing.

**B.     Zone of Interests**

For the claims that the States are pursuing under the APA, they must satisfy an additional test beyond Article III's standing requirements; the interests asserted by an APA plaintiff "must be 'arguably within the zone of interests to be protected or regulated by the statute' that [the plaintiff] says was violated."  *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 224 (2012) (quoting *Assoc. of Data Processing Serv. Org., Inc.*, 397 U.S. 150, 153 (1970)).  The zone of interests test is not "especially demanding."  *Id.* at 225.  Moreover, the Supreme Court has emphasized Congress's "'evident intent' when enacting the APA 'to make agency action presumptively reviewable.'"  *Id.* (quoting *Clarke v. Sec. Indus. Assn.*, 479 U.S. 388, 399 (1987)).  The Supreme Court has "conspicuously include the word 'arguably' in the test to indicate that the benefit of any doubt goes to the plaintiff."  *Id.* (quoting *Clarke*, 479 U.S. at 399).  There is no requirement that a would-be plaintiff demonstrate any "indication of congressional purpose to benefit" that plaintiff.  *Id.*  "The test forecloses suit only when a plaintiff's 'interests are so marginally related to or inconsistent with the purposes implicit in the statute

that it cannot reasonably be assumed that Congress intended to permit the suit.'" *Id.*
(quoting *Clarke*, 479 U.S. at 399).

DHS argues that the States fall outside of the zone of interests protected by the
public charge inadmissibility provision in the INA because the States' "'interests are
. . . marginally related to or inconsistent with the purposes implicit in the statute.'"
ECF No. 236 at 4 (quoting *Clark*, 479 U.S. at 399). DHS argues that the States'
"interest here is practically the inverse" of the public charge provision's objective of
"conserv[ing] federal and State resources by excluding aliens who are likely to
consume public benefits" because "the States here seek to conserve their resources
by *enhancing* reliance on federal resources." *Id.* at 11 (emphasis in original)

The States respond that the protection of state fiscs has been an objective of
the public charge exclusion since it was instituted. ECF No. 233 at 21 (citing
Hidetaka Hirota, *Expelling the Poor* 185 (2017)). The States further argue that the
INA itself recognizes the states' role and authority in administering public benefits
programs. *Id.* (citing 8 U.S.C. §§ 1183(a), (b), (e)(2); *Texas v. U.S.*, 809 F.3d 134,
163 (5th Cir. 2015), *aff'd by an equally divided Court*, 136 S. Ct. 2271 (2016)). The
States argue that they administer the public benefits programs at issue in the Public
Charge Rule, and are "well within the zone of interests, as the Rule imposes
significant uncompensated costs on them and undermines the administration of their
comprehensive public assistance program." *Id.*

DHS argues about the States' fiscs from a discrete framework of immediate costs expended for public benefits, such as SNAP or housing assistance, as opposed to the States' long-range view of fiscs including long-term costs of citizens who are deprived of adequate food or housing before they achieve citizenship.  At this early stage of litigation, this Court is satisfied that the States meet the zone of interests standard by identifying the original purpose of the public charge exclusion as protecting "state fiscs" as well as the long-range impact on the States' fiscs of potential citizens forgoing lawful benefits in order to steer clear of the "public charge" net.[12]  As the Seventh Circuit observed in finding that Cook County's financial interests suffice to bring it within the zone of interests of the public charge provision, "though the purpose of the public-charge provision is to screen for and promote 'self-sufficiency' among immigrants, it is not obvious what self-sufficiency means." *Cook Cty. v. Wolf*, 962 F.3d 208, 220 (7th Cir. 2020).  The Seventh Circuit continued:

> Subsidies abound in the modern world, from discounted or free transportation for seniors, to public snow removal, to school lunches, to childhood vaccinations, and much more.  Ensuring that immigrants have access to affordable basic health care, for example, may promote their greater self-sufficiency in other domains, including income, housing, and nutrition.  It also protects the community at large from highly contagious diseases such as COVID-19.  Cook County's interest in ensuring lawful immigrants' access to authorized federal and state public benefits is not plainly inconsistent with the text of the statute.  Its

---

[12] At the preliminary injunction stage of this case, the Court also found that the States met the zone of interests standard.  ECF No. 162 at 29.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS ~ 19

financial interests thus suffice to bring it within the zone of interests of the public-charge provision.

*Cook Cty.*, 962 F.3d at 220.

The Court renews its earlier finding and denies DHS's Motion to Dismiss with respect to the zone of interests.

## C.    Precedential Weight of Emergency Stay Opinions

With respect to numerous issues raised by the Motion to Dismiss, DHS argues that the Ninth Circuit's stay opinion is "precedential" and "controlling" on this Court. *See, e.g.,* ECF No. 236 at 12 (arguing that this Court is bound by the Ninth Circuit stay opinion's discussion and conclusions regarding *Chevron* step one). DHS also cites to the Supreme Court's opinions granting DHS's applications to stay preliminary injunctions of the Public Charge Rule "including one involving an equal protection claim similar to that alleged in this case." ECF No. 136 at 1 n. 1 (citing *New York*, 140 S. Ct. 599; *Wolf*, 140 S. Ct. 681).

Subject to various exceptions, the law of the case doctrine generally requires courts to "refuse to reconsider an issue that has already been decided by the same court or a higher court in the same case." *Gonzalez v. Arizona*, 677 F.3d 383, 389 n.4 (9th Cir. 2012) (citing *Jeffries v. Wood*, 114 F.3d 1484, 1488−89 (9th Cir. 1997) (en banc)). Recognized exceptions include: "'(1) the decision is clearly erroneous and its enforcement would work a manifest injustice, (2) intervening controlling authority makes reconsideration appropriate, or (3) substantially different evidence was adduced at a subsequent trial.'" *Gonzalez*, 677 F.3d at 389 n. 4 (quoting

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS ~ 20

1    *Jeffries*, 114 F.3d at 1489 (footnote omitted) (quoting *Caldwell v. Unified Capital*

2    *Corp. (In re Rainbow Magazine, Inc.)*, 77 F.3d 278, 281 (9th Cir. 1996) (internal

3    quotation marks omitted)).

4          This Court's reading of the relevant caselaw outlining the parameters of the

5    law of the case finds no support for DHS's argument that the motions panel's

6    decision regarding an emergency stay of a preliminary injunction is binding with

7    respect to the issues before this Court on DHS's Motion to Dismiss.  The Ninth

8    Circuit was not reviewing whether the claims raised by the States' Amended

9    Complaint should be dismissed under the *Iqbal/Twombly* standard that is applicable

10   to a motion to dismiss.  *See San Francisco*, 944 F.3d 773.  As the Ninth Circuit

11   recently observed, the question before the merits panel resolving an appeal of a

12   preliminary injunction order is "doctrinally distinct" from the question of a stay

13   pending review posed to a motions panel.  *E. Bay Sanctuary Covenant v. Trump*, 950

14   F.3d 1242, 1263−64 (9th Cir. 2020).  "'[T]here are important differences between a

15   preliminary injunction and a stay pending review.'"  *Id.* (quoting *Leiva-Perez v.*

16   *Holder*, 640 F.3d 962, 966 (9th Cir. 2011)).  A merits panel resolving an appeal of a

17   preliminary injunction is asking whether the district court abused its discretion while

18   a motions panel instead is evaluating a stay request in "'likelihood terms,'" and

19   asking whether "the government raised serious questions relating to the propriety of

20   the district court's preliminary injunction and whether the government would likely

21   prevail on appeal[.]"  *Id.* (quoting *Leiva-Perez*, 640 F.3d at 967).  The "question

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION TO DISMISS ~ 21

presented to the motions panel is an additional step removed from the underlying merits of the district court's preliminary injunction." *Id.* at 1264 (observing that the appellate court "exercise[s] restraint in assessing the merits of either question, but particularly so when considering the 'extraordinary request' to stay a preliminary injunction granted by a district court.") (quoting *Barr v. E. Bay Sanctuary Covenant*, 140 S. Ct. 3, 4 (2019) (Sotomayor, J., dissenting from grant of a stay)).

The questions now before this Court differ significantly from the question that the Court previously faced in determining the preliminary injunction. Now, the Court must consider whether the States' Amended Complaint, ECF No. 31, bears sufficient factual matter, accepted as true, to state claims to relief that are plausible on their face. *See Iqbal*, 556 U.S. at 678. During the preliminary injunction phase, the Court was applying the *Winter*[13] and *Nken*[14] factors to determine whether a preliminary injunction was appropriate.

Likewise, the Supreme Court did not reach the merits of any of the claims raised by plaintiffs in the Public Charge Rule litigation from the Second Circuit. *See Wolf*, 140 S. Ct. at 682 (Sotomayor, J., dissenting) (noting that in granting the Government's application for a stay in *New York*, 140 S. Ct. 599, "[n]o Member of the [Supreme] Court discussed the application's merit apart from its challenges to the injunction's nationwide scope.").

---

[13] *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

[14] *Nken v. Holder*, 556 U.S. 418, 425−26 (2009).

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS ~ 22

1    The Court is mindful that it is bound by Ninth Circuit decisions.  However, it

2    would be a travesty of due process for the litigants to bind district courts at a motion

3    to dismiss stage to a decision made by a motions panel using a different standard of

4    review to consider a different set of factors regarding whether to stay a preliminary

5    injunction.  Indeed, much of the concern expressed in legal conferences, appellate

6    decisions, and the academy concern the bar that nationwide injunctions create in

7    allowing cases to "percolate" through the system from the trial court, through the

8    appellate court, and finally to the Supreme Court.  *See CASA de Md., Inc. v. Trump*,

9    No. 19-2222, 2020 U.S. App. LEXIS 24672, at \*85−86 (4th Cir. Aug. 5, 2020);

10    Samuel L. Bray, *Multiple Chancellors: Reforming the National Injunction*, 131

11    Harv. L. Rev. 418, 420−21 (2017).  Accordingly, the Court rejects DHS's argument

12    that this Court's consideration of the Motion to Dismiss is circumscribed by the

13    Ninth Circuit motion panel's stay opinion.

14                                **DISCUSSION**

15    DHS moves to dismiss the States' Amended Complaint in its entirety.  ECF

16    No. 223.

17    **A.    Counts I and III: Contrary to Law under the APA; Arbitrary and**

18    **Capricious under the APA**

19    In the Preliminary Injunction Order, this Court found that the States had

20    shown that they were likely to succeed on the merits of their claims under the APA

21

1  that the Public Charge Rule is contrary to law and arbitrary and capricious.  ECF

2  No. 162 at 34−50; *see* 5 U.S.C. § 702; 706(2)(A).

3      To prevail on a motion for preliminary injunction, a plaintiff must show that

4  he or she is likely to succeed on the merits.  *Winter*, 555 U.S. at 20.  By contrast, as

5  outlined above, a motion to dismiss should not be granted "unless it appears

6  beyond doubt that Plaintiff can prove no set of facts in support of his claim that

7  would entitle him to relief."  *Clegg v. Cult Awareness Network*, 18 F. 3d 752, 754

8  (9th Cir. 1994).  A motion to dismiss provides for early disposal of actions "'that

9  are fatally flawed in their legal premises and destined to fail, and thus spare

10  litigants the burdens of unnecessary pretrial and trial activity.'"  *Forsberg v. Fid.*

11  *Nat'l Credit Servs.*, No. 03cv2193-DMS(AJB), 2004 U.S. Dist. LEXIS 7622, at *4

12  (S.D. Cal. Feb. 25, 2004) (quoting *Advanced Cardiovascular Sys., Inc. v. Scimed*

13  *Life Sys., Inc.*, 988 F.2d 1157, 1160 (Fed. Cir. 1993)).

14      At this stage in the countrywide Public Charge Rule litigation, two higher

15  courts, the Seventh and the Second Circuits, have affirmed preliminary injunction

16  orders in part based on conclusions that the Public Charge Rule is contrary to the

17  INA, providing extensive analysis of both *Chevron* steps one and two.  *New York*,

18  2020 U.S. App. LEXIS 24492, at *35−76 (heavily analyzing IRIIRA and

19  PRWORA along with the INA); *Cook Cty.*, 962 F.3d at 221−29 (concluding that

20  the Public Charge Rule is not a reasonable interpretation of the INA, the

21  Rehabilitation Act, or the SNAP statute).  The Second and Seventh Circuits also

concluded that the district courts properly found that DHS's policymaking process was flawed and that the Public Charge Rule, therefore, is arbitrary and capricious. *New York*, 2020 U.S. App. LEXIS 24492, at *76−89; *Cook Cty.*, 962 F.3d at 229−32.  The Fourth Circuit subsequently reversed a preliminary injunction order based in part on its conclusion that the Public Charge Rule likely is a permissible interpretation of the INA.  *CASA de Md., Inc.*, 2020 U.S. App. LEXIS 24672, at *36−72.

In short, the analyses of the Circuit Courts with respect to the merits of the contrary to law and arbitrary and capricious claims vary significantly, and, the Circuits in which merits panels have resolved DHS's appeals of the preliminary injunctions issued in the Public Charge Rule litigation are split in their conclusions. Moreover, the time for petitioning for rehearing en banc has not yet expired with respect to all of the opinions.  *See* Fed. R. App. P. 35, 40.

In light of the fact that this Court already found that the States were likely to succeed on their APA claims, there is no justification to revisit the analysis of those claims, given the less demanding standard for surviving a motion to dismiss. *See Clegg*, 18 F. 3d at 754; *see also New York*, 2020 U.S. Dist. LEXIS 134493, at *21 (reaching the same conclusion while DHS's appeal of the preliminary injunction order issued by the Southern District of New York was still pending). Furthermore, the fact that two higher courts have found that district courts properly

found that the Public Charge Rule is contrary to law and arbitrary and capricious heavily reinforces the conclusion that the States' APA claims are plausible.

Certainly, this Court may significantly revise its analysis of the States' APA claims if and when the Court is faced with the merits of the States' Counts I and III with a fully developed record.  However, DHS's Motion to Dismiss is not the appropriate prompt to revisit that analysis or contribute to the lucid, rigorous discourse among the higher courts regarding identical issues raised by the States' APA claims.  The Ninth Circuit stay opinion in this case also does not compel this Court to revisit its earlier analysis of the contrary to law and arbitrary and capricious claims because DHS's appeal of the Preliminary Injunction Order is still pending.  A Ninth Circuit merits panel has not yet entered the nationwide discussion of the merits of APA claims challenging the Public Charge Rule, thus leaving this issue still open in the Ninth Circuit.

Therefore, this Court denies the Motion to Dismiss with respect to Count I, the contrary to law claim, and Count III, the arbitrary and capricious claim, on the rationale that the Court already found the States likely to prevail on these APA claims based on the more demanding preliminary injunction standard, thereby satisfying the lower *Iqbal*/*Twombly* threshold of plausibility under Rule 12(b)(6).

## B.    Count II: Ultra Vires Conduct

The Court next considers whether the States have alleged a sufficient basis to find their ultra vires claim plausible.  The States allege in their Amended Complaint

that the "INA does not permit—either expressly or impliedly—[DHS] to expand its authority" by extending the public charge exclusion to reach applicants for visa extensions and change of status.  ECF Nos. 31 at 171; 233 at 37.

DHS argues that the States fail to state a claim because the Public Charge Rule "independently sets a new condition for approval of extension of stay and change of status applications and petitions pursuant to its ample statutory authority to impose such conditions."  ECF No. 236 at 26.  DHS contends that unlike the public charge inadmissibility determination, the Public Charge Rule introduces an "exclusively backward-looking condition for extension of stay and change of status applications" that treats "proof that an alien has used covered benefits for 12 or more months in a 36 month period since gaining his or her nonimmigrant status" as "itself disqualifying." *Id.*  DHS maintains that 8 U.S.C. §§ 1184 and 1258 assign DHS the authority to set these conditions for the relevant applications. *Id.*

The States respond that "DHS's distinction between backward- and forward-looking assessments disintegrates under scrutiny" because the public charge exclusion test is also backward looking.  ECF No. 233 at 38 (pointing out that an individual's past use of public benefits is counted against them when the officer predicts their future use of benefits).  The States urge that DHS may not simply borrow a legal standard that Congress established for a certain statutory application and apply it to a completely different statutory application. *Id.* (citing *Comcast Corp. v. FCC*, 600 F.3d 642, 655 (D.C. Cir. 2010) for the proposition that an agency

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS ~ 27

may not use a Congressional statement of policy in one statutory provision as a basis to interpret a different statutory provision).

Non-statutory review of agency action that is allegedly ultra vires, or beyond the agency's legislative authority, is designed to determine whether the agency has acted "without any authority whatsoever." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 n.11 (1984) (internal quotation omitted). In determining whether an agency regulation is ultra vires, courts apply the *Chevron* two-step *Chevron* analysis. *City of Arlington v. F.C.C.*, 569 U.S. 290, 295 (2013); *Garfias-Rodriguez v. Holder*, 702 F.3d 504, 525 (9th Cir. 2012); *Chevron U.S.A., Inc. v. Natural Res. Def. Council*, 467 U.S. 837, 842 (1984). The Court's first task under *Chevron* is to "give effect to the unambiguously expressed intent of Congress." *Chevron*, 467 U.S. at 842. If Congress has "directly spoken to the precise question at issue[,]" the inquiry stops there, as the unambiguously expressed intent of Congress governs. *Id*. at 842−43. However, "[i]f the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id*. at 843.

The public charge ground of inadmissibility does not apply to individuals who hold nonimmigrant student or exchange visitor visas seeking to extend their stay or change their nonimmigrant status. *See* 8 U.S.C. § 1182(a)(4). However, as part of the Public Charge Rule, DHS imposed a "public benefits condition" that renders those nonimmigrant visa holders ineligible for an extension of stay or change of

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS ~ 28

status if they received public benefits for more than twelve months, in the aggregate, within any 36-month period after the alien obtained the nonimmigrant status he or she seeks to extend or change.  *See* 8 C.F.R. §§ 214.1(a)(3)(iv), 428.1(a), and 248.1(c)(4).

Admission on a nonimmigrant visa to the United States "shall be for such time and under such conditions" as the Attorney General prescribes through regulation.  8 U.S.C. § 1184(a)(1).  In addition, the Secretary of Homeland Security "may, under such conditions as he may prescribe, authorize a change from any nonimmigrant classification to any other nonimmigrant classification in the case of any alien lawfully admitted to the United States as a nonimmigrant . . .[,]" subject to limited exceptions.  8 U.S.C. § 1258.

The States do not make any argument for why this statutory text is ambiguous, and the Court agrees with DHS that on its face the authority allocated to DHS encompasses a regulation that imposes the public benefits condition.  Therefore, the Court does not proceed past step one of *Chevron*.  467 U.S. at 842−43.  The ultra vires claim challenges not whether the public benefits condition, and the distinction that DHS is drawing between that condition and the public charge exclusion, make sense or deteriorate under scrutiny, as the States argue.  *See* ECF No. 233 at 38. Rather, the ultra vires claim is not plausible unless the States can direct the court to exactly what authority DHS exceeds by including the public benefits condition in the Public Charge Rule.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS ~ 29

In the absence of plausible and detailed allegations that DHS acted outside of its legal authority regarding nonimmigrant visa extensions and changes of status, the Court grants DHS's Motion to Dismiss the States' Count II for ultra vires action without prejudice. *See Iqbal*, 556 U.S. at 678. However, the Court has no basis on which to conclude that the States could not remedy the defects with an amended pleading. Therefore, the Court grants leave to amend. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (leave to amend is appropriate unless the district court determines that the pleading "could not possibly be cured by the allegation of other facts") (internal quotation omitted).

## C.    Count IV: Denial of the Right to Equal Protection under the Fifth Amendment Due Process Clause

The States' fourth claim, for denial of equal protection, remains for the Court to evaluate and determine whether the States' allegations plausibly give rise to an entitlement to relief. *Iqbal*, 556 U.S. at 679. The States allege in their Amended Complaint that the Public Charge Rule was "motivated by Administration officials' intent to discriminate on the basis of race, ethnicity, or national origin." ECF No. 31 at 176−77. The States allege that the discriminatory purpose behind the Public Charge Rule violates the due process clause of the Fifth Amendment to the U.S. Constitution. *Id.*

/ / /

/ / /

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION TO DISMISS ~ 30

1          **1.     Standard of Review**

2          The parties disagree as to the appropriate standard of review to apply to the

3    States' equal protection claims.  *See* ECF Nos. 236 at 31−32; 233 at 50.  DHS argues

4    that deferential rational basis review, rather than strict scrutiny, applies to the Public

5    Charge Rule "unless Plaintiffs establish discriminatory intent."  ECF No. 223 at 32

6    (citing *Washington v. Davis*, 426 U.S. 229, 242 (1976), for the proposition that

7    disproportionate impact alone "does not trigger the rule . . . that racial classifications

8    are to be subjected to the strictest scrutiny).  DHS also relies on *Trump v. Hawaii*,

9    138 S. Ct. 2392, 2418, 2419 (2018), to argue that rational basis is appropriate to

10   review the Public Charge Rule because it concerns the "admission and exclusion of

11   foreign nationals, 'a matter within the core of executive responsibility.'"  *Id.* (citing

12   *Hawaii*, 138 S. Ct. at 2418).  DHS asserts that the narrower rational basis review

13   contemplated by *Hawaii*, should apply to any government policies regarding the

14   admission of aliens.  ECF No. 236 at 32.

15         The States assert that they may offer circumstantial evidence in support of a

16   reasonable inference of discriminatory intent.  ECF No. 233 at 50 (relying on

17   *Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264−65 (1977)).  The

18   States argue that *Hawaii* does not require rational basis review here because: (1) the

19   statute at issue in *Hawaii*, 8 U.S.C. § 1182(f), contains much more deferential

20   language regarding executive discretion than the public charge provision at 8 U.S.C.

21   § 1182(a)(4);  (2) the "international affairs and national security" concerns present in

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION TO DISMISS ~ 31

*Hawaii* are not present here, where DHS has offered only economic justifications for the Public Charge Rule; and (3) *Hawaii* challenged executive action regarding "the entry of foreign nationals" into the United States but the Public Charge Rule applies in part to individuals who are already lawfully present in the United States. ECF No. 233 at 52−53; *Hawaii*, 138 S. Ct. at 2409, 2420 n. 5.

The Fifth Amendment's Due Process Clause contains an equal protection component that prohibits denying to any person the equal protection of the laws. *United States v. Windsor*, 570 U.S. 744, 774 (2013). One framework for demonstrating an equal protection violation is to show that "'defendants acted with an intent or purpose to discriminate against the plaintiff based on membership in a protected class.'" *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001) (quoting *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998), *cert. denied*, 525 U.S. 1154 (1999). "Where the challenged governmental policy is 'facially neutral,' proof of its disproportionate impact on an identifiable group can satisfy the intent requirement only if it tends to show that some invidious or discriminatory purpose underlies the policy.'" *Id.* (quoting *Arlington Heights*, 429 U.S. at 264−66). The *Arlington Heights* framework is one method of "alleging a viable equal protection claim. *See Ramos v. Nielsen*, 321 F. Supp. 3d 1083, 1125 (N.D. Cal. 2018) (citing a U.S. Department of Justice legal manual explaining that *Arlington Heights* and the framework provided by *McDonnell Douglas Corp. v. Green*, 411

U.S. 792, 802−03 (1973), provide alternative methods of proving intentional discrimination).

In *Hawaii*, the Supreme Court resolved an Establishment Clause challenge to an executive order restricting entry into the United States by aliens from several countries.  138 S. Ct. at 2403.  The Court held that "plaintiffs' request for a searching inquiry into the persuasiveness of the President's justifications" was "inconsistent with the broad statutory text and the deference traditionally accorded the President in this sphere."  138 S. Ct. at 2409.

At least two other district courts already have rejected DHS's contention that the narrow standard of review from *Hawaii* applies in the context of the Public Charge Rule, and this Court also finds *Hawaii* distinguishable for purposes of the appropriate standard by which to evaluate the States' equal protection claim.  *See Cook Cty. v. Wolf*, Case No. 19-C-6334, 2020 U.S. Dist. LEXIS 87687, at *25−28; *La Clinica de la Raza v. Trump*, Case No. 19-cv-4980-PJH, 2020 U.S. 141725, at * 52−57 (N.D. Cal. Aug. 7, 2020).

First, *Hawaii* addressed foreign nationals seeking initial entry into the territorial United States.  138 S. Ct. at 2403−04.  By contrast, the Public Charge Rule applies to applicants for initial admission to the United States as well as to persons already within the United States seeking to adjust status.  *See* 8 C.F.R. § 212.20.

Noncitizens have long been recognized to enjoy greater constitutional protections than those outside the geographic borders who are seeking admission for

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS ~ 33

the first time. *See Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (explaining that "certain constitutional protections available to persons inside the United States are unavailable to aliens outside of our geographic borders . . . [b]ut once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens . . . ."); *Landon v. Plascencia*, 459 U.S. 21, 32 (1982) (noting that "once an alien gains admission to our country and begins to develop the ties that go with permanent residence his constitutional status changes accordingly"). The Ninth Circuit and the Supreme Court have held explicitly that the Due Process Clauses of the Fifth and Fourteenth Amendments protect even those noncitizens who are in the United States without legal status. *Mathews v. Diaz*, 426 U.S. 67, 77 (1976) ("Even one whose presence in this country is unlawful, involuntary, or transitory is entitled to that constitutional protection."); *Lopez-Valenzuela v. Arpaio*, 770 F.3d 772, 781 (9th Cir. 2014) (en banc) (same); *see also Yick Wo v. Hopkins*, 118 U.S. 356, 369−70 (1886) (applying Fourteenth Amendment due process and equal protection provisions "to all persons within the territorial jurisdiction, without regard to any differences of race, of color, or of nationality"); *Wong v. INS*, 373 F.3d 952, 974 (9th Cir. 2004) ("The entry fiction does not preclude non-admitted aliens . . . from coming within the ambit of the equal protection component of the Due Process Clause."). Nothing in the *Hawaii* decision indicates that it disturbed this line of caselaw differentiating between the

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION TO DISMISS ~ 34

constitutional status of foreign nationals seeking initial admission at the border and foreign nationals already present in the geographic United States.

Second, the Supreme Court indicated in *Hawaii* that executive action is shielded from a more "searching inquiry" where the executive branch acts "in the context of international affairs and security . . . ." 138 S. Ct. at 2409. The *Hawaii* Court found that the statutory provision at issue in that litigation, 8 U.S.C. § 1182(f), "exudes deference to the President in every clause" and provides a "comprehensive delegation" of power to the President to suspend entry to aliens upon a finding "that the entry of the covered aliens 'would be detrimental to the interests of the United States.'" 138 S. Ct. at 2408 (quoting 8 U.S.C. §1182(f)). The public charge provision does not contain language similarly indicating that it is aimed at national security interests. *See* 8 U.S.C. § 1182(a)(4). Moreover, as this Court has noted before, there has been no contention by DHS that this case or the Public Charge Rule implicates national security concerns. ECF No. 229 at 8.

In sum, DHS argues that the *Hawaii* case supports that the rational basis standard should be applied in any case involving the admission or exclusion of foreign nationals. ECF No. 236 at 31. However, the *Hawaii* decision itself does not countenance such an expansive reading, as numerous lower courts have recognized. *See Regents of the Univ. of Cal. v. DHS*, 908 F.3d 476, 519−20 (9th Cir. 2018), *rev'd in part, vacated in part*, 140 S. Ct. 1891 (2020) (distinguishing *Hawaii* on the basis that it did not concern aliens physically present within the geographic United States);

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION TO DISMISS ~ 35

1    *Saget v. Trump*, 375 F. Supp. 3d 280, 367 (E.D.N.Y. 2019) (determining that *Hawaii*

2    did not provide the applicable standard for an equal protection claim by foreign

3    nationals "lawfully present in the United States along with their U.S.-born

4    dependents); *New York v. United States DOC*, 351 F. Supp. 3d 502, 666 (S.D.N.Y.

5    2019) (finding that nothing in the *Hawaii* opinion indicates that the "'circumscribed

6    inquiry' applies outside of the 'national security and foreign affairs context.'")

7    (quoting *Hawaii*, 138 S. Ct. at 2420, n. 5); *Centro Presente v. DHS*, 332 F. Supp. 3d

8    393, 410 (D. Mass. 2018) (recognizing that the Supreme Court has applied

9    heightened scrutiny to a gender-based classification in the immigration context)

10   (citing *Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1686, 1690 (2017)).

11          Accordingly, DHS has not supported its contention that rational basis review

12   should supplant the well-established strict scrutiny review of *Arlington Heights* in

13   the particular immigration context in which the Public Charge Rule applies.

14          **2.    Plausibility of the States' Equal Protection Claim**

15          DHS maintains that the Rule is facially neutral, and the States cannot establish

16   discriminatory intent through the statements of officials outside of DHS. ECF No.

17   223 at 31. DHS further argues that the States' allegations are analogous to

18   allegations that the Supreme Court found to be insufficient to support a valid equal

19   protection claim in the plurality opinion recently issued in *DHS v. Regents of the*

20   *Univ. of California*, 140 S. Ct. 1891, 1915−16 (2020). ECF No. 36 at 33−34.

21

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION TO DISMISS ~ 36

1    The States filed their response six days before the *Regents* decision was

2    issued.  *See* ECF No. 233 (filed June 12, 2020); 140 S. Ct. 1891 (issued on June 18,

3    2020).  However, the States respond to DHS's Motion to Dismiss their equal

4    protection claim by asserting that their Amended Complaint includes sufficient

5    factual content to support that the Public Charge Rule was "motivated by

6    Administration officials' intent to discriminate on the basis of race, ethnicity, or

7    national origin."  ECF No. 233 at 46 (quoting Amended Complaint).

8         Most facially neutral actions by legislators and government officials,

9    including those that "result[] in a racially disproportionate impact" are subject only

10   to judicial review to determine whether the decision had a rational basis "because

11   legislators and administrators are properly concerned with balancing numerous

12   considerations." *Arlington Heights*, 429 U.S. at 264−65.  However, the Supreme

13   Court recognized in *Arlington Heights* that "racial discrimination is not just another

14   competing consideration," so "[w]hen there is a proof that a discriminatory purpose

15   has been a motivating factor in the decision, this judicial deference is no longer

16   justified." *Id.* at 265−66.

17        A plaintiff may state a viable equal protection claim by offering evidence that

18   a discriminatory purpose was one motivating factor.  *See Arce v. Douglas*, 793 F.3d

19   968, 978 (9th Cir. 2015) (a plaintiff "does not have to prove that the discriminatory

20   purpose was the sole purpose of the challenged action, but only that it was a

21   'motivating factor.'") (quoting *Arlington Heights*, 429 U.S. at 266).  Rather, courts

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION TO DISMISS ~ 37

determine "whether invidious discriminatory purpose was a motivating factor" by conducting "a sensitive inquiry in such circumstantial and direct evidence of intent as may be available." *Arlington Heights*, 429 U.S. at 266. Under the *Arlington Heights* standard, judicial inquiry beyond the stated reasons for the official action may include the following: "(1) the impact of the official action and whether it bears more heavily on one race than another; (2) the historical background of the decision; (3) the specific sequence of events leading to the challenged action; (4) the defendant's departures from normal procedures or substantive conclusions; and (5) the relevant legislative or administrative history." *Arce*, 793 F.3d at 978 (citing *Arlington Heights*, 429 U.S. at 266−68, and describing the list as non-exhaustive). Courts have recognized that "any indication of discriminatory motive may suffice to raise a question that can only be resolved by a fact-finder." *Pac. Shores Props., LLC v. City of Newport Beach*, 730 F.3d 1142, 1158−59 (9th Cir. 2013).

Beginning with the impact of the official action, the States allege that: (1) DHS received many comments alerting the agency to the racially and ethnically disparate impact of the new public charge definition; and (2) DHS itself acknowledged that the Public Charge Rule "may impact in greater numbers communities of color, including Latinos and [Asian Americans and Pacific Islanders], as well as those with particular medical conditions that require public benefits for treatment, and therefore may impact the overall composition of

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION TO DISMISS ~ 38

immigration with respect to these groups. ECF Nos. 31 at 85−86; 233 at 49−50

(quoting 84 Fed. Reg. at 41,369).

With respect to the sequence of events leading to the challenged action and

the rulemaking history, the States quote remarks by Administration officials that the

States allege reflect "animus toward non-European immigrants." ECF No. 31 at

177−78. The States allege that White House staff member Stephen Miller remarked

that he "would be happy if not a single refugee foot ever touched American soil,"

within the same timeframe as he advised President Donald Trump on immigration

policy. *Id.* at 52. The States also allege that emails by Miller that became public

after the filing of the Amended Complaint reflect that Miller promoted white

supremacist and racist websites. *See* ECF Nos. 233 at 47; 198 (response by DHS to

the States' motion to compel discovery related to the equal protection claim

indicating that DHS does not dispute that Miller is a regular visitor to white

supremacist and racist websites). By June 2018, the States allege, Miller was

pressuring DHS to expedite its timeline for publishing a rule revising the public

charge regulation. *Id.* at 56, 64−65. By June 2019, at a White House meeting with

DHS officials, Miller allegedly expressed frustration that the public charge

redefinition had not been finalized and predicted that the rule would be

"transformative." *Id.* at 65.

The States also allege numerous remarks by President Trump that they offer

as circumstantial evidence of racially or ethnically discriminatory intent. In January

2018, the States allege that President Trump rejected a bipartisan immigrant proposal from Congress that included protections for immigrants from Haiti and Africa, asking "why he should accept immigrants from 'shithole countries' rather than from nations like 'Norway.'"  ECF No. 31 at 55.  In approximately May 2018, the States allege that President Trump called on "administration officials to 'do much better' in keeping out undesirable immigrants," adding "'You wouldn't believe how bad these people are . . . . These aren't people, these are animals . . . .'" ECF No. 31 at 56.

The States further allege statements by former Acting Director of USCIS Kenneth Cuccinelli in August 2019 that the poem inscribed on the Statue of Liberty and its invitation to "'your tired, your poor, your huddled masses,'" "'was referring back to people coming from Europe where they had class-based societies' not to immigrants from outside Europe."  ECF No. 31 at 67.

DHS does not dispute the validity of the States' allegations but instead argues that statements by White House officials that do not reference the Public Charge Rule, and by individuals who were not the decision-makers regarding the Rule, do not reveal anything regarding why DHS instituted the Rule.  ECF No. 236 at 33−34. DHS emphasizes that the decision-makers with respect to the Public Charge Rule indicated that their support for the Public Charge Rule was motivated by a desire to promote self-sufficiency, and Plaintiffs have not alleged any direct relationship

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS ~ 40

between any discriminatory animus and the precise policy at issue.  ECF No. 236 at 34−35.

However, under *Arlington Heights*, the Administration's stated reasons for the Public Charge Rule do not undermine the viability of an equal protection claim if the States have provided circumstantial or direct evidence from which, drawing inferences in the States' favor, the Court may find that at least one motivation behind the rule was discriminatory.  *See Arlington Heights*, 429 U.S. at 267−68.

DHS also argues in its reply that the recent *Regents* plurality decision from the Supreme Court should preclude the States from relying on the above statements to state their equal protection claim.  Specifically, DHS asserts that the statements offered by the States are analogous to remarks by President Trump that were found to be "unilluminating" in *Regents* because they were "remote in time and made in unrelated contexts[.]"  ECF No. 236 at 34; *Regents*, 140 S. Ct. at 1916.  In *Regents*, the Supreme Court considered, in relevant part, an equal protection challenge alleging that the decision by DHS to rescind the Deferred Action for Childhood Arrivals ("DACA") was motivated by racial or ethnic animus.  However, the plurality in *Regents* concluded that the plaintiffs' allegations that President Trump made critical statements about Latinos before and after he was elected were too remote in time, and in contexts unrelated to the DACA policy, to qualify as "'contemporary statements' probative of the decision at issue."  *Regents*, 140 S. Ct. at 1916 (quoting *Arlington Heights*, 429 U.S. at 268).

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION TO DISMISS ~ 41

1    In this case, the States' allegations regarding statements by President Trump,

2  in addition to statements by a high-level White House official and a DHS decision-

3  maker, do not suffer from the same deficiency.  The statements described above,

4  with the exception of the alleged emails from Miller promoting white supremacist

5  and racist websites, are from January 2018 until August 2019, when the Public

6  Charge Rule was published.  *See* 84 Fed. Reg. 41,292.  Moreover, the statements,

7  and others set forth in the States' Amended Complaint  go to the issue of animus

8  against nonwhite immigrants, which directly overlaps with the context of the States'

9  challenge to the Public Charge Rule.  *See* ECF No. 31 at 47−68.

10    The Court finds that all of these statements, made by high-level officials in the

11  Administration contemporaneous with DHS's finalizing the Public Charge Rule, can

12  reasonably be interpreted as supporting an animus toward nonwhite immigrants.

13  The Court further finds that DHS's acknowledgement, at the time that the Rule was

14  published, that the Rule would have a likely discriminatory effect further supports

15  that DHS knew of the discriminatory impact of the Rule.  These factors raise an

16  inference that an "invidious discriminatory purpose was a motivating factor" in

17  finalizing the Public Charge Rule.  *See Arlington Heights*, 429 U.S. at 266.

18    In analyzing a motion to dismiss, the Court accepts all of the States'

19  allegations as true, and the Court finds that the States have alleged sufficient facts to

20  make their entitlement to relief under the equal protection component of the Due

21

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION TO DISMISS ~ 42

Process clause plausible.  Therefore, DHS's Motion to Dismiss is denied with respect to the States' Count IV.

Accordingly, **IT IS HEREBY ORDERED**:

1.    Defendants' Motion to Dismiss, **ECF No. 223**, is **DENIED IN PART** with respect to Plaintiffs' Count I: Contrary to Law; Count III: Arbitrary and Capricious; and Count IV: Equal Protection Claims; and **GRANTED IN PART** with respect to Plaintiffs' Count II: Ultra Vires Claim.

2.    Plaintiffs' Count II: Ultra Vires Claim is dismissed without prejudice and with leave to amend.  Any amendment shall be filed by **October 16, 2020**.

**IT IS SO ORDERED**.  The District Court Clerk is directed to enter this Order and provide copies to counsel.

**DATED** September 14, 2020.

_s/ Rosanna Malouf Peterson_
ROSANNA MALOUF PETERSON
United States District Judge

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS ~ 43