JEFFREY BOSSERT CLARK
Acting Assistant Attorney General
WILLIAM D. HYSLOP
United States Attorney
ALEXANDER K. HAAS
Branch Director
ERIC J. SOSKIN
Senior Trial Counsel
KERI L. BERMAN
KUNTAL V. CHOLERA
JOSHUA M. KOLSKY, DC Bar No. 993430
JASON C. LYNCH
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON
AT SPOKANE**

| | |
|---|---|
| STATE OF WASHINGTON, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY, *et al.*,<br><br>Defendants | No. 4:19-cv-5210-RMP<br><br>MOTION FOR PARTIAL RECONSIDERATION OF SEPTEMBER 14, 2020 ORDER<br><br>November 30, 2020<br>Without Oral Argument |

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................ 1
BACKGROUND ........................................................................................................ 2
STANDARD OF REVIEW ........................................................................................ 3
ARGUMENT .............................................................................................................. 3
CONCLUSION ........................................................................................................... 9

# TABLE OF AUTHORITIES

**Cases**

*Arlington Heights v. Metropolitan Housing Development Corporation*,
  429 U.S. 252 (1977) .................................................................................. 7

*Carcano v. Cooper*,
  350 F. Supp. 3d 388 (M.D.N.C. 2018) ....................................................... 7

*Department of Homeland Security v. Regents of the University of California*,
  140 S. Ct. 1891 (2020) ....................................................................... 5, 7, 9

*Dep't of Commerce v. New York*,
  139 S. Ct. 2551 (2019) ............................................................................... 9

*Kirby v. City of E. Wenatchee*,
  No. 12-CV-190-JLQ, 2013 U.S. Dist. LEXIS 76972 (E.D. Wash. May 31, 2013) ...... 3

*Pyramid Lake Paiute Tribe of Indians v. Hodel*,
  882 F.2d 364 (9th Cir. 1989) .................................................................. 3, 4

*Ramos v. Wolf*,
  No. 18-16981, 2020 U.S. App. LEXIS 29050 (9th Cir. Sep. 14, 2020) .............. *passim*

*Regents of the Univ. of Cal. v. U.S. Dep't of Homeland Sec.*,
  298 F. Supp. 3d 1304 (N.D. Cal. 2018) ...................................................... 7

**Rules**

Fed. R. Civ. P. 54(b) ......................................................................................... 3

**Regulations**

*Inadmissibility on Public Charge Grounds*,
  84 Fed. Reg. 41292 (Aug. 14, 2019) ....................................................... 1, 9

# INTRODUCTION

On September 14, 2020, the Court entered an Order granting in part and denying in part Defendants' motion to dismiss in this case, which challenges the Department of Homeland Security's final rule *Inadmissibility on Public Charge Grounds* ("Rule"), 84 Fed. Reg. 41292 (Aug. 14, 2019). As relevant here, the Court denied Defendants' motion as to Plaintiffs' claim alleging that the Rule violates the equal protection component of the Fifth Amendment to the Constitution.

On the same day as this Court's ruling, the Ninth Circuit issued an opinion in *Ramos v. Wolf*, No. 18-16981, 2020 U.S. App. LEXIS 29050 (9th Cir. Sep. 14, 2020), which involved an equal protection challenge to a series of Department of Homeland Security immigration decisions. As here, the plaintiffs in *Ramos* pointed to alleged statements by administration officials that they claimed supported their equal protection claims, and to the alleged disproportionate impact of the decisions. The Ninth Circuit held that the plaintiffs failed to present "even 'serious questions'" on the merits of their equal protection claims.

Accordingly, the Court should reconsider its Order denying Defendants' motion to dismiss Plaintiffs' equal protection claim because the Court did not have the opportunity to consider the *Ramos* decision when it issued its ruling. Dismissal of the equal protection claim would not impact Plaintiffs' APA claims, which would remain pending in this case.

# BACKGROUND

Plaintiffs' Amended Complaint in this matter alleges that the Rule violates the Administrative Procedure Act ("APA") and the equal protection component of the Fifth Amendment to the Constitution. *See* Am. Compl., ECF No. 31. The equal protection claim in Count Four alleges that the Rule "was motivated by Administration officials' intent to discriminate on the basis of race, ethnicity, or national origin." *See id*. ¶ 430.

On May 22, 2020, Defendants moved to dismiss the Amended Complaint in full. ECF No. 223. On September 14, 2020, the Court entered an Order granting in part and denying in part Defendants' motion to dismiss. ECF No. 248 ("Order"). As relevant here, the Court denied Defendants' motion as to Plaintiffs' equal protection claim. *See id*. at 30-43. The Court found that various alleged statements "by high-level officials in the Administration contemporaneous with DHS's finalizing the Public Charge Rule, can reasonably be interpreted as supporting an animus toward nonwhite immigrants." *Id*. at 42. The Court also found that DHS acknowledged "that the Rule would have a likely discriminatory effect" which "further supports that DHS knew of the discriminatory impact of the Rule." *Id*. The Court ruled that "[t]hese factors raise an inference that an 'invidious discriminatory purpose was a motivating factor' in finalizing the Public Charge Rule." *Id*.

On the same day that this Court issued its Order, the Ninth Circuit issued an opinion in *Ramos v. Wolf*, No. 18-16981, 2020 U.S. App. LEXIS 29050 (9th Cir. Sep. 14, 2020). For the reasons discussed below, the Ninth Circuit's intervening *Ramos* decision warrants reconsideration of this Court's prior decision on Plaintiffs' equal protection claim.

**STANDARD OF REVIEW**

The Court has discretion to reconsider interlocutory orders at any time prior to final judgment. *See Kirby v. City of E. Wenatchee*, No. 12-CV-190-JLQ, 2013 U.S. Dist. LEXIS 76972, at *3 (E.D. Wash. May 31, 2013); *see also* Fed. R. Civ. P. 54(b) ("any order . . . that adjudicates fewer than all the claims . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities"). The major grounds that justify reconsideration involve "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Pyramid Lake Paiute Tribe of Indians v. Hodel*, 882 F.2d 364, 369 n.5 (9th Cir. 1989).

**ARGUMENT**

Reconsideration of the Court's denial of Defendants' motion to dismiss Plaintiff's equal protection claim is appropriate because of the Ninth Circuit's *Ramos* decision issued on the same day as this Court's ruling. In *Ramos*, the plaintiffs challenged decisions by the Secretary of Homeland Security to terminate the Temporary Protected Status for Sudan, Nicaragua, Haiti, and El Salvador. 2020 U.S. App. LEXIS 29050, at *24. As here, those plaintiffs alleged that the Secretary's actions violated the APA as well as Fifth Amendment equal protection principles. *Id.* As to the latter claims, "Plaintiffs alleged that DHS's new rule for making TPS determinations 'was motivated in significant part by racial and national-origin animus' against 'nonwhite and non-European immigrants,' which was 'evidenced by numerous statements made by President

Donald J. Trump and other officials in his administration.'" *Id*. at *24-25. The district court in *Ramos* concluded that those statements suggested President Trump harbored "an animus against non-white, non-European aliens," *id*. at *30, and it found further that the White House influenced the Secretary's TPS decisions, *id*. at *28. The district court therefore entered a preliminary injunction against the TPS terminations. *Id.* at *33.

DHS prevailed on appeal of the preliminary injunction. The Ninth Circuit concluded that the plaintiffs failed to present "even 'serious questions' on the merits of their claim that the Secretaries' TPS terminations were improperly influenced by the President's 'animus against non-white, non-European immigrants.'" *Id*. at *59. In particular, there was a "glaring lack of evidence tying the President's alleged discriminatory intent to the specific TPS terminations[.]" *Id*. at *59-60. Although there was "substantial evidence that White House officials sought to influence the Secretaries' TPS decisions, and that the Secretaries sought and acted to conform their TPS decisions to the President's immigration policy," the Court of Appeals found "these facts neither unusual nor improper." *Id*. at *61. On the contrary, "[i]t is expected—perhaps even critical to the functioning of government—for executive officials to conform their decisions to the administration's policies." *Id*.

The Ninth Circuit also did not "find that an inference of racial animus behind the TPS terminations [to be] any stronger when the evidence of White House pressure on DHS is joined by evidence of the President's expressed animus towards 'non-white, non-European' countries and ethnicities." *Id*. at *61-62. Those "statements occurred primarily in contexts removed from and unrelated to TPS policy or decisions." *Id*. at *62.

On that point, the Ninth Circuit relied on the Supreme Court's recent rejection of a similar equal protection claim in *Department of Homeland Security v. Regents of the University of California*, 140 S. Ct. 1891 (2020).

This Court did not have the benefit of the *Ramos* decision when it decided Defendants' motion to dismiss, but *Ramos* compels a different result. The Court's Order noted that a "plaintiff may state a viable equal protection claim by offering evidence that a discriminatory purpose was one motivating factor." Order at 37. The Court concluded that such evidence existed, first, in the form of statements by administration officials that allegedly show discriminatory animus. Order at 39-40. But the Ninth Circuit in *Ramos* held that similar statements did *not* suggest any equal protection violation.

As in *Ramos*, the statements alleged by Plaintiffs here occurred in "contexts removed from and unrelated to" the relevant decision. 2020 U.S. App. LEXIS 29050, at *62. For example, the alleged statement by Senior White House Advisor Stephen Miller that he "would be happy if not a single refugee foot ever touched American soil," has no apparent connection to the Acting Secretary of Homeland Security's decision to promulgate the Rule. Order at 39. Likewise, the allegation that Mr. Miller sent emails pertaining to white supremacist and racist websites does not suggest any connection to the promulgation of the Rule. *Id*. The alleged statements by the President, too, are about immigration generally, and are unrelated to DHS's decision to promulgate the Rule. *Id*.

at 39-40.[1]

The Court found the statements alleged by Plaintiffs to be probative of discriminatory animus because some of them "are from January 2018 until August 2019, when the Public Charge Rule was published." Order at 42. But a mere temporal connection between a statement by a White House official and the formulation of an agency policy does not suggest any animus. *Ramos* makes that clear. There, the Ninth Circuit found the alleged statements not indicative of animus because they "occurred primarily in contexts removed from and *unrelated to TPS policy or decisions*." *Id*. at *62 (emphasis added).[2] Similarly, in *Regents*, the plurality opinion held that various alleged statements by the President "fail to raise a plausible inference that the [DACA] rescission was motivated by animus" because the statements were both "remote in time and *made*

---

[1] Plaintiffs also alleged a statement by Kenneth Cuccinelli discussing the meaning of a poem on the Statue of Liberty. Order at 40. Not only is that statement not suggestive of discriminatory animus, but it occurred *after* the decision to promulgate the Rule and does not indicate why Acting Secretary of Homeland Security McAleenan promulgated the Rule. Am. Compl. ¶¶ 116-17; *see also Ramos*, 2020 U.S. App. LEXIS 29050, at *62 (alleged statement by the President was not probative where it was made "three days *after*" the agency decisions).

[2] Notably, the TPS termination decisions occurred in October 2017, December 2017, and January 2018, and the statements alleged by the plaintiffs included one by the President in June 2017. 2020 U.S. App. LEXIS 29050, at *17-23, *30-31.

*in unrelated contexts.*" 140 S. Ct. at 1916 (emphasis added).[3] Nothing in these opinions suggests that a statement made in an unrelated context – but which happens to have been made while an agency was formulating a policy – is probative of the agency's motivation behind that policy.

Indeed, *Arlington Heights* itself recognizes that statements must be connected to the challenged decision in order to be probative of motive, as evidenced by the Court's description of "contemporary statements" as being those made "by members of the decisionmaking body" and which appear in the "legislative or administrative history." *Arlington Heights v. Metropolitan Housing Development Corporation*, 429 U.S. 252, 268 (1977); *see also Carcano v. Cooper*, 350 F. Supp. 3d 388, 419-20 (M.D.N.C. 2018) (statements made by legislators "in the press and through their social media" about the "purpose and effect" of the challenged statute "are not 'legislative history'" under *Arlington Heights* and therefore not relevant).

---

[3] One of the statements at issue in *Regents* was made by the President just weeks before the DACA decision, thereby confirming that a temporal correlation between the statement and the agency decision is insufficient. *See id.* at 1916 (DACA rescission occurred in September 2017); *id.* at 1917 (identifying alleged statement by the President in 2017) (Sotomayor, J., dissenting); *Regents of the Univ. of Cal. v. U.S. Dep't of Homeland Sec.*, 298 F. Supp. 3d 1304, 1314 (N.D. Cal. 2018) (noting that this statement was made in August 2017).

In addition to the timing of the statements, the Court also found them probative because they "go to the issue of animus against nonwhite immigrants, which directly overlaps with the context of the States' challenge to the Public Charge Rule." Order at 42. But that was true of the statements in *Ramos*. *See Ramos*, 2020 U.S. App. LEXIS 29050, at *30-32. Ultimately, this Court found that "all of these statements, made by high-level officials in the Administration contemporaneous with DHS's finalizing the Public Charge Rule, can reasonably be interpreted as supporting an animus toward nonwhite immigrants." Order at 42. But it is apparent from *Ramos* that that is insufficient to infer that a particular agency policy was motivated by discrimination. Indeed, if the law were otherwise, a plaintiff could state an equal protection claim for virtually *any* immigration policy of this administration simply by pointing to the same statements of administration officials as alleged by Plaintiffs here.

The Court also noted Plaintiffs' allegation that Stephen Miller was "pressuring DHS to expedite its timeline for publishing a rule revising the public charge regulation." Order at 39. But that does not suggest that any discriminatory animus motivated the Rule, and the *Ramos* court correctly found similar allegations to be irrelevant to the question of animus. In *Ramos*, the record contained "substantial evidence that White House officials sought to influence the Secretaries' TPS decisions, and that the Secretaries sought and acted to conform their TPS decisions to the President's immigration policy," but those facts were "neither unusual nor improper" because "[i]t is expected—perhaps even critical to the functioning of government—for executive officials to conform their decisions to the administration's policies." 2020 U.S. App. LEXIS 29050, at *61. In

1 short, every administration has policy priorities and it is entirely appropriate for the White
2 House to encourage agencies to expedite the formulation of important policies. *See Dep't*
3 *of Commerce v. New York*, 139 S. Ct. 2551, 2573 (2019) ("[A] court may not set aside an
4 agency's policymaking decision solely because it might have been influenced by political
5 considerations or prompted by an Administration's priorities.").

6       In addition to the statements of administration officials, the Court also found that
7 DHS "acknowledg[ed], at the time that the Rule was published, that the Rule would have
8 a likely discriminatory effect" which "further supports that DHS knew of the
9 discriminatory impact of the Rule." Order at 42. DHS recognized in the Rule that "it is
10 possible that the inclusion of benefits such as SNAP and Medicaid may impact in greater
11 numbers communities of color, including Latinos and AAPI, as well as those with
12 particular medical conditions that require public benefits for treatment, and therefore may
13 impact the overall composition of immigration with respect to these groups." 84 Fed.
14 Reg. 41292, 41369. The potential that an immigration policy may disproportionately
15 impact non-white immigrants is not evidence of discriminatory animus, and the Supreme
16 Court in *Regents* rejected a similar argument. 140 S. Ct. at 1915 ("because Latinos make
17 up a large share of the unauthorized alien population, one would expect them to make up
18 an outsized share of recipients of any cross-cutting immigration relief program."). "Were
19 this fact sufficient to state a claim, virtually any generally applicable immigration policy
20 could be challenged on equal protection grounds." *Id*.

21                             **CONCLUSION**

22

1    For the foregoing reasons, based on the new authority discussed herein, the Court
2 should reconsider its prior ruling and dismiss Count Four of Plaintiffs' Amended
3 Complaint.

Dated: October 8, 2020              Respectfully submitted,

                                    JEFFREY BOSSERT CLARK
                                    Acting Assistant Attorney General

                                    WILLIAM D. HYSLOP
                                    United States Attorney

                                    ALEXANDER K. HAAS
                                    Branch Director

                                       *s/ Joshua Kolsky*
                                    ERIC J. SOSKIN
                                    Senior Trial Counsel
                                    KERI L. BERMAN
                                    KUNTAL V. CHOLERA
                                    JOSHUA M. KOLSKY, DC Bar No. 993430
                                    JASON C. LYNCH
                                    Trial Attorneys
                                    United States Department of Justice
                                    Civil Division, Federal Programs Branch
                                    1100 L Street NW
                                    Washington, D.C. 20005
                                    Tel: (202) 305-7664
                                    Fax: (202) 616-8470
                                    joshua.kolsky@usdoj.gov

                                    *Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 8, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all users receiving ECF notices for this case.

*/s/ Joshua Kolsky*

United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005

*Attorney for Defendants*