JEFFREY BOSSERT CLARK
Acting Assistant Attorney General
WILLIAM D. HYSLOP
United States Attorney
ALEXANDER K. HAAS
Branch Director
ERIC J. SOSKIN
Senior Trial Counsel
KERI L. BERMAN
KUNTAL V. CHOLERA
JOSHUA M. KOLSKY, DC Bar No. 993430
JASON C. LYNCH
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON
AT SPOKANE**

| | |
|---|---|
| STATE OF WASHINGTON, *et al.*, | |
| Plaintiffs, | No. 4:19-cv-5210-RMP |
| v. | REPLY IN SUPPORT OF MOTION FOR PARTIAL RECONSIDERATION OF SEPTEMBER 14, 2020 ORDER |
| UNITED STATES DEPARTMENT OF HOMELAND SECURITY, *et al.*, | |
| Defendants | November 30, 2020 Without Oral Argument |

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

ARGUMENT ................................................................................................................... 2

   I.  Reconsideration is Appropriate Based on New Ninth Circuit Authority ............... 2

   II.  Defendants' Motion Appropriately Discusses the Impact of New Ninth Circuit Authority on Defendants' Existing Arguments for Dismissal ............................... 3

   III.  *Ramos* Requires Dismissal of Plaintiffs' Equal Protection Claim ........................ 3

CONCLUSION ................................................................................................................ 7

# TABLE OF AUTHORITIES

**Cases**

*California v. United States Dep't of Homeland Sec.*,
  No. 19-cv-04975-PJH, 2020 U.S. Dist. LEXIS 137743 (N.D. Cal. Aug. 3, 2020) .. 1, 7

*Department of Homeland Security v. Regents of the University of California*,
  140 S. Ct. 1891 (2020) ............................................................................... 2, 3, 6

*La Clinica De La Raza v. Trump*,
  No. 19-cv-04980-PJH, 2020 U.S. Dist. LEXIS 141725 (N.D. Cal. Aug. 7, 2020) .. 1, 7

*In re Zermeno-Gomez*,
  868 F.3d 1048 (9th Cir. 2017) ................................................................................ 2

*Ramos v. Wolf*,
  975 F.3d 872 (9th Cir. 2020) ........................................................................ *passim*

*United States v. James*,
  No. 03-900, 2006 U.S. Dist. LEXIS 99297 (D. Ariz. Jan. 24, 2006) ........................ 3

**Regulations**

84 Fed. Reg. 41292 (Aug. 14, 2019) ............................................................................ 6

## INTRODUCTION

The Court did not have the benefit of the Ninth Circuit's decision in *Ramos v. Wolf*, 975 F.3d 872 (9th Cir. 2020), when it decided Defendants' motion to dismiss. *Ramos* involved an equal protection challenge to DHS immigration decisions based on a theory that White House officials possess animus against non-white immigrants and that the White House sought to influence DHS's decisionmaking. That is the same theory that Plaintiffs advance here. *Ramos* is unquestionably relevant to this case and it demonstrates that the Court should dismiss Plaintiffs' equal protection claim.

Nevertheless, Plaintiffs ask the Court to ignore this new Ninth Circuit authority because, they assert, *Ramos* did not change the law. Plaintiffs' argument is simply a distraction. The relevant question is whether *Ramos* requires dismissal of Plaintiffs' equal protection claims, regardless of whether it is considered a change in the law or a clarification of existing law. As discussed below, Plaintiffs lack any credible basis to distinguish *Ramos*. Their equal protection claim should be dismissed. Indeed, the Northern District of California dismissed almost identical claims in two other lawsuits challenging the public charge rule ("Rule"). *See California v. United States Dep't of Homeland Sec.*, No. 19-cv-04975-PJH, 2020 U.S. Dist. LEXIS 137743, at *91 (N.D. Cal. Aug. 3, 2020); *La Clinica De La Raza v. Trump*, No. 19-cv-04980-PJH, 2020 U.S. Dist. LEXIS 141725, at *63-64 (N.D. Cal. Aug. 7, 2020). The same result is appropriate here.

**ARGUMENT**

**I.  Reconsideration is Appropriate Based on New Ninth Circuit Authority**

Plaintiffs ask the Court to deny Defendants' motion because *Ramos*, they contend, "does not constitute a 'change' in the law." Opp'n at 3-5. That argument is simply a distraction. Whether *Ramos* is viewed as a change in the law or a clarification of existing law, the result is the same – *Ramos* requires dismissal of Plaintiffs' equal protection claim for the reasons stated in Defendants' Motion and herein.[1] Moreover, it was entirely appropriate for Defendants to notify the Court of this new, binding authority and give this Court an opportunity to reconsider its ruling.

Plaintiffs' position that *Ramos* is not a controlling decision is equally meritless. Opp'n at 5. Published opinions by the Ninth Circuit are, of course, binding on district courts within this circuit. *See In re Zermeno-Gomez*, 868 F.3d 1048, 1053 (9th Cir. 2017) ("we have unequivocally stated that a published decision constitutes binding authority and must be followed unless and until it is overruled by a body competent to do so"). Plaintiffs contend that *Ramos* is not controlling because it was decided in the context of an appeal of a preliminary injunction instead of a ruling on a motion to dismiss. Opp'n at 5. But nothing in *Ramos* suggests that the outcome was dependent on the preliminary injunction standard. On the contrary, *Ramos* relied heavily on *Department of Homeland Security v. Regents of the University of California*, 140 S. Ct. 1891 (2020), which rejected

---

[1] Plaintiffs' argument that reconsideration is unnecessary because *Ramos* did not change the law is perplexing because, even if that were true, Defendants could simply file a motion for judgment on the pleadings, after the answer is filed, and raise the same argument regarding *Ramos* as has been raised in the motion for reconsideration.

a similar equal protection claim in the motion to dismiss context. In *Regents*, the plurality opinion described the allegations necessary "[t]o plead animus" for an equal protection claim and found the plaintiffs' allegations insufficient to "establish[] a plausible equal protection claim." *Id*. at 1915. In *Ramos*, the Ninth Circuit repeatedly and expressly relied on the standard articulated in *Regents* and its reasoning. *See, e.g.*, *Ramos*, 975 F.3d at 897 ("The Supreme Court recently rejected a similar equal protection claim in *Regents*[.]"). *Ramos* is fully applicable to Defendants' motion to dismiss.

## II. Defendants' Motion Appropriately Discusses the Impact of New Ninth Circuit Authority on Defendants' Existing Arguments for Dismissal

Plaintiffs fault Defendants for "repeat[ing] the arguments Defendants made in support of the original motion to dismiss." Opp'n at 6. But Plaintiffs have the law precisely backwards. "Motions for Reconsideration are not the place for parties to make new arguments not raised in their original briefs." *United States v. James*, No. 03-900, 2006 U.S. Dist. LEXIS 99297, at *3 (D. Ariz. Jan. 24, 2006). Defendants' Motion appropriately explains why Defendants' arguments raised in their motion to dismiss are correct in light of new authority. Plaintiffs' suggestion that the *Ramos* opinion "could have been raised prior to" the Court's ruling on the motion to dismiss is puzzling and obviously incorrect given that both decisions were issued on the same day. Opp'n at 6.

## III. *Ramos* Requires Dismissal of Plaintiffs' Equal Protection Claim

Plaintiffs fail to present any credible basis to distinguish the *Ramos* decision. The plaintiffs in *Ramos* pointed to the same types of statements by administration officials as alleged by Plaintiffs here and the same types of evidence about pressure from the White

House as alleged here, and they raised the same argument about disproportionate impact on non-white immigrants. *See Ramos*, 975 F.3d at 896-98. Plaintiffs have not shown any material difference between their allegations and the evidence that the Ninth Circuit found insufficient in *Ramos*.

Plaintiffs try to distinguish *Ramos* by pointing to their allegations regarding White House Advisor Stephen Miller. Opp'n at 8. Plaintiffs allege that Mr. Miller attempted to force the resignation of "then-USCIS Director L. Francis Cissna because Miller viewed Cissna as a roadblock to implementing the Rule in the way Miller wanted" and that Mr. Miller wanted to expedite the public charge rulemaking process. *Id*. at 8-9. Those are precisely the types of allegations that were found insufficient in *Ramos*. As the Ninth Circuit explained, "while the record contains substantial evidence that White House officials sought to influence the Secretaries' TPS decisions, and that the Secretaries sought and acted to conform their TPS decisions to the President's immigration policy, *we find these facts neither unusual nor improper*." *Ramos*, 975 F.3d at 897 (emphasis added). "It is expected—perhaps even critical to the functioning of government—for executive officials to conform their decisions to the administration's policies. The mere fact that the White House exerted pressure on the Secretaries' TPS decisions does not in itself support the conclusion that the President's alleged racial animus was a motivating factor in the TPS decisions." *Id*. at 897-98.

The Ninth Circuit went on to explain that it did not "find that an inference of racial animus behind the TPS terminations is any stronger when the evidence of White House pressure on DHS is joined by evidence of the President's expressed animus towards 'non-

white, non-European' countries and ethnicities" because those "statements occurred primarily in contexts removed from and unrelated to TPS policy or decisions." *Id*. at 898. Likewise, here, Plaintiffs do not contend that Mr. Miller made any statement suggestive of animus in a context related to the Rule. Plaintiffs offer no allegations to support the conclusion that Mr. Miller – or any other official – took any action relating to the Rule *because of any alleged discriminatory intent*.

Instead, Plaintiffs have alleged only that certain officials made statements allegedly suggesting animus towards particular groups and that DHS made a decision that disproportionately impacts those groups. The plaintiffs in *Ramos* made a similar showing and the Ninth Circuit determined that it failed to present even serious questions on the merits of their equal protection claim. 975 F.3d at 897. What is missing here, as in *Ramos*, is any connection between the allegations of animus and the decision to promulgate the Rule. In other words, Plaintiffs have not adequately alleged that any official was motivated to press for the Rule by alleged animus. As in *Ramos*, Plaintiffs fail to offer factual "support for the conclusion that [DHS's] overarching goal was motivated by racial animus." *Id*. at 899. On the contrary, the Rule is easily explained as consistent with the administration's immigration policy generally, its focus on America's economic interests, and its view that the public charge statute had been under-enforced in previous years. *Id*. Plaintiffs do not allege that Stephen Miller or any other administration officials do not genuinely hold those views. In fact, Plaintiffs' own evidence supports the view that Mr. Miller genuinely believes aliens in the United States should be self-sufficient. Specifically, Plaintiffs rely on an email by Mr. Miller in which

he expresses concern about the significant government spending on public benefits for aliens with "poverty surging, schools struggling to keep up, and with millions of current immigrants already living here boxed out of the middle class[.]" *See* Opp'n, Ex. E, ECF No. 259-2. That view aligns with the purpose of the Rule, which is "to better ensure that aliens who are admitted to the United States, seek extension of stay or change of status, or apply for adjustment of status will be self-sufficient[.]" *See* 84 Fed. Reg. at 41301.[2]

Plaintiffs fare no better by pointing to DHS's acknowledgment that the Rule "may impact in greater numbers communities of color, including Latinos and AAPI . . . and therefore may impact the overall composition of immigration with respect to these groups." 84 Fed. Reg. 41292, 41369. Plaintiffs are simply rehashing an argument that the Supreme Court in *Regents* and the Ninth Circuit in *Ramos* both rejected. In *Regents*, the plaintiffs "allege[d] that animus is evidenced by . . . the disparate impact of the rescission on Latinos from Mexico, who represent 78% of DACA recipients[.]" 140 S. Ct. at 1915. The plurality opinion ruled that that allegation, "either singly or in concert" with the plaintiffs' other allegations, failed to establish "a plausible equal protection claim." *Id*. "[B]ecause Latinos make up a large share of the unauthorized alien population, one would expect them to make up an outsized share of recipients of any cross-cutting immigration relief program." *Id*. "Were this fact sufficient to state a claim, virtually any generally applicable immigration policy could be challenged on equal protection grounds." *Id*. at 1916. Similarly, in *Ramos*, the Ninth Circuit rejected the

---

[2] Although Plaintiffs' exhibits actually support Defendants' position, the fact that Plaintiffs feel the need to rely on materials outside the Amended Complaint is an implicit recognition that their allegations are insufficient to state a claim.

plaintiffs' argument that the impact of the TPS terminations on non-white populations suggested discriminatory intent, explaining that "[u]nder the district court's logic, almost any TPS termination in the history of the program would bear 'more heavily' on 'non-white, non-European' populations and thereby give rise to a potential equal protection claim." 975 F.3d at 898. Likewise, here, the fact that the Rule may disproportionately impact non-white immigrants is neither surprising nor suggestive of any discriminatory motivation. A contrary ruling would allow a plaintiff to challenge almost any generally applicable immigration decision under the equal protection clause. Notably, the Northern District of California considered identical allegations and found that they did not suffice to establish a plausible equal protection claim. *See California*, 2020 U.S. Dist. LEXIS 137743, at *84; *La Clinica De La Raza*, 2020 U.S. Dist. LEXIS 141725, at *57-58.

## CONCLUSION

For the foregoing reasons, based on the new authority discussed herein, the Court should reconsider its prior ruling and dismiss Count Four of Plaintiffs' Amended Complaint. Plaintiffs' challenge to the Rule would continue on APA grounds.

Dated: October 28, 2020   Respectfully submitted,

JEFFREY BOSSERT CLARK
Acting Assistant Attorney General

WILLIAM D. HYSLOP
United States Attorney

ALEXANDER K. HAAS
Branch Director

*s/ Joshua Kolsky*
ERIC J. SOSKIN
Senior Trial Counsel
KERI L. BERMAN
KUNTAL V. CHOLERA
JOSHUA M. KOLSKY, DC Bar No. 993430
JASON C. LYNCH
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, D.C. 20005
Tel: (202) 305-7664
Fax: (202) 616-8470
joshua.kolsky@usdoj.gov

*Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 28, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all users receiving ECF notices for this case.

*/s/ Joshua Kolsky*

United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005

*Attorney for Defendants*