FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Feb 01, 2021

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON; COMMONWEALTH OF VIRGINIA; STATE OF COLORADO; STATE OF DELAWARE; STATE OF ILLINOIS; COMMONWEALTH OF MASSACHUSETTS; DANA NESSEL, Attorney General on behalf of the people of Michigan; STATE OF MINNESOTA; STATE OF NEVADA; STATE OF NEW JERSEY; STATE OF NEW MEXICO; STATE OF RHODE ISLAND; STATE OF MARYLAND; STATE OF HAWAI'I,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY, a federal agency; DAVID PEKOSKE, in his official capacity as Acting Secretary of the United States Department of Homeland Security; UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, a federal agency; TRACY RENAUD, in his official capacity as Senior Official Performing the Duties of Director for United States Citizenship and Immigration Services,<br><br>Defendants. | NO: 4:19-CV-5210-RMP<br><br>ORDER DENYING DEFENDANTS' MOTION FOR RECONSIDERATION |

ORDER DENYING DEFENDANTS' MOTION FOR RECONSIDERATION ~ 1

BEFORE THE COURT is a Motion for Reconsideration from Defendants U.S. Department of Homeland Security, et al.[1] of the Court's Order granting in part and denying in part DHS's motion to dismiss this case. ECF No. 254. The Court has reviewed DHS's Motion, ECF No. 254, Plaintiffs'[2] response in opposition to reconsideration, ECF No. 258, DHS's reply, ECF No. 259, the relevant law, and is fully informed.

## BACKGROUND

The States are challenging DHS's regulatory redefinition of who to exclude from immigration status as "likely . . . to become a public charge." 8 U.S.C. § 1182(a)(4)(A); *see* Inadmissibility on Public Charge Grounds, 84 Fed. Reg. 41,292 (Aug. 14, 2019) ("Public Charge Rule"). In the Amended Complaint, the States

---

[1] Defendants in this lawsuit are the United States Department of Homeland Security ("DHS"), Acting Secretary of DHS David Pekoske, United States Citizenship and Immigration Services ("USCIS"), and Senior Official Performing the Duties of Director Tracy Renaud (collectively, "DHS"). The Court substitutes David Pekoske for Chad F. Wolf, who previously was substituted as a Defendant in the Amended Complaint but is no longer Acting Secretary of DHS. The Court further corrects the caption to reflect that Tracy Renaud has replaced Kenneth Cuccinelli as the Senior Official Performing the Duties of Director for USCIS. *See* Fed. R. Civ. P. 25(d).

[2] The Plaintiffs in this lawsuit are the State of Washington, Commonwealth of Virginia, State of Colorado, State of Delaware, State of Hawai'i, State of Illinois, State of Maryland, Commonwealth of Massachusetts, Attorney General Dana Nessel on behalf of the People of Michigan, State of Minnesota, State of Nevada, State of New Jersey, State of New Mexico, and State of Rhode Island (collectively, the "States").

ORDER DENYING DEFENDANTS' MOTION FOR RECONSIDERATION ~ 2

raise four causes of action: (1) a violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(C), for agency action contrary to the Immigration and Nationality Act ("INA")[3], the Personal Responsibility and Work Opportunity Reconciliation Act ("PRWORA")[4], the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA")[5], the Rehabilitation Act[6], and the SNAP statute[7]; (2) a violation of the APA, 5 U.S.C. § 706(2)(C), for agency action "in excess of statutory jurisdiction [or] authority" or "ultra vires"; (3) a violation of the APA, 5 U.S.C. § 706(2)(C), for agency action that is "arbitrary, capricious, [or] an abuse of discretion"; and (4) a violation of the guarantee of equal protection under the U.S. Constitution's Fifth Amendment Due Process Clause. ECF No. 31 at 161−70.

DHS moved to dismiss the States' Amended Complaint in its entirety. ECF No. 223. The Court dismissed the States' Count II: Ultra Vires Claim without prejudice and denied DHS's motion in remaining part. ECF No. 248 at 43. Relevant to the instant Motion for Reconsideration, the Court concluded that the

---

[3] 8 U.S.C. §§ 1182(a)(4), 1152, and 1182(a)(1).

[4] 8 U.S.C. §§ 1611−13, 1621−22, and 1641.

[5] 8 U.S.C. §§ 1182, 1183a.

[6] 29 U.S.C. § 794(a).

[7] 7 U.S.C. § 2017(b).

ORDER DENYING DEFENDANTS' MOTION FOR RECONSIDERATION ~ 3

1  States' Count IV: Equal Protection Claim did not meet the standard for dismissal
2  under Fed. R. Civ. P. 12(b)(6) and allowed that claim to proceed. *Id.*
3      In the Court's analysis of the States' equal protection claim, the Court
4  determined that the strict scrutiny review of *Vill. Of Arlington Heights v. Metro*
5  *Hous. Dev. Corp.*, 429 U.S. 252, 264−65 (1977)), governs the particular immigration
6  context in which the Public Charge Rule applies. ECF No. 248 at 36. The Court
7  proceeded to consider DHS's argument that the Public Charge Rule is facially
8  neutral, and the States cannot establish discriminatory intent through the statements
9  of officials outside of DHS. *See id.* The Court further considered DHS's argument
10 that the States' allegations of racial discrimination as a motivating factor behind the
11 Public Charge Rule are analogous to allegations that the Supreme Court found to be
12 insufficient to support a valid equal protection claim in the plurality opinion in *DHS*
13 *v. Regents of the Univ. of California*, 140 S. Ct. 1891, 1915−16 (2020). *See* ECF
14 No. 248 at 36−37. The Court concluded that the States' alleged statements by then-
15 President Trump, a high-level White House official, and a DHS decision-maker do
16 not suffer from the deficiencies identified in *Regents,* in which the plurality found
17 statements made by then-President Trump about Latinos before and after he was
18 elected to be too remote in time, and in contexts too attenuated from the policy at
19 issue, to qualify as "'contemporary statements' probative of the decision at issue."
20 ECF No. 248 at 41 (quoting *Regents*, 140 S. Ct. at 1916 (quoting *Arlington Heights*,
21

ORDER DENYING DEFENDANTS' MOTION FOR RECONSIDERATION ~ 4

429 U.S. at 268)). The Court found that the statements upon which the States rely in this case were made "contemporaneous with DHS's finalizing the Public Charge Rule" and "can reasonably be interpreted as supporting an animus toward nonwhite immigrants." ECF No. 248 at 42.

On the same day as the Court's Order was filed, a United States Court of Appeals for the Ninth Circuit panel issued a 2-1 opinion in *Ramos v. Wolf*, 975 F.3d 872 (9th Cir. 2020), which found that the plaintiffs' allegations in that case regarding their equal protection claim failed to present serious questions on the merits to support a preliminary injunction. *Id.* at 897. The Ninth Circuit found that there was no record of evidence in that case to tie then-President Trump's racial animus against "nonwhite, non-European" immigrants to terminations of Temporary Protective Status ("TPS") by the Secretaries of DHS in 2017 and 2018. *Id.* Referencing the *Regents* plurality and its reasoning, the Ninth Circuit found that the President's "expressed animus . . . occurred primarily in contexts removed from and unrelated to TPS policy or decisions." *Id.* at 898 (citing *Regents*, 140 S. Ct. at 1916). The *Ramos* majority found that "the only 'contemporary statement' might be the President's comments at the January 11, 2018 meeting with lawmakers, during which TPS terminations were discussed; however, the influence of these remarks on the actual decisions to terminate TPS is belied by the fact that the meeting occurred three days after the TPS termination notices for Haiti and El Salvador issued." *Id.*

ORDER DENYING DEFENDANTS' MOTION FOR RECONSIDERATION ~ 5

The *Ramos* majority further found:

> Moreover, while the record contains substantial evidence that White House officials sought to influence the Secretaries' TPS decisions, and that the Secretaries sought and acted to conform their TPS decisions to the President's immigration policy, we find these facts neither unusual nor improper. It is expected—perhaps even critical to the functioning of government—for executive officials to conform their decisions to the administration's policies. The mere fact that the White House exerted pressure on the Secretaries' TPS decisions does not in itself support the conclusion that the President's alleged racial animus was a motivating factor in the TPS decisions.

*Ramos*, 975 F.3d at 897–98.

## LEGAL STANDARDS

Rule 54(b), Fed. R. Civ. P., provides that "any order . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." However, courts in this circuit disfavor motions for reconsideration and deny them "absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in controlling law." *McDowell v. Calderon*, 197 F.3d 1253, 1255 (9th Cir. 1999) (per curiam). "A motion for reconsideration 'may *not* be used to raise arguments or present evidence for the first time whey they could reasonably have been raised earlier in the litigation.'" *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009) (quoting *Kona*

ORDER DENYING DEFENDANTS' MOTION FOR RECONSIDERATION ~ 6

1  *Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (emphasis in

2  original)).

3       A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests whether a complaint

4  states a cognizable legal theory as well as essential facts under that theory. *See Ileto*

5  *v. Glock, Inc.*, 349 F.3d 1191, 1199−1200 (9th Cir. 2003) (observing that Rule

6  12(b)(6) must be read in conjunction with Rule 8, which requires a "short and plain

7  statement showing that the pleader is entitled to relief") (internal quote omitted).

8  When a defendant challenges a complaint's sufficiency under Fed. R. Civ. P.

9  12(b)(6), the court must determine whether the complaint bears "sufficient factual

10  matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

11  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550

12  U.S. 544, 555 (2007)). A claim is plausible when the plaintiff pleads "factual

13  content that allows the court to draw the reasonable inference that the defendant is

14  liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

15  **DISCUSSION**

16       The parties dispute whether *Ramos*, 975 F.3d 872, constitutes a change in

17  controlling law warranting reconsideration. ECF Nos. 258 at 5−7; 263 at 4. DHS

18  argues that *Ramos* undermines the Court's finding that the statements upon which

19  the States rely "made by high-level officials in the Administration contemporaneous

20  with DHS's finalizing the Public Charge Rule, can reasonably be interpreted as

21

ORDER DENYING DEFENDANTS' MOTION FOR RECONSIDERATION ~ 7

supporting an animus toward nonwhite immigrants." ECF Nos. 254 at 11; 248 at 42. DHS maintains that "it is apparent from *Ramos* that that is insufficient to infer that a particular agency policy was motivated by discrimination" and that, "if the law were otherwise, a plaintiff could state an equal protection claim for virtually *any* immigration policy of this administration simply by pointing to the same statements of administration officials as alleged by Plaintiffs here." ECF No. 254 at 11.

The States respond that *Ramos* does not qualify as a change in controlling law because it merely reiterated the analysis of *Regents* in an analogous context to *Regents* without "plow[ing] any new ground that would have better informed this Court's Order." ECF No. 258 at 6–7. The States add that *Ramos* also is inapposite because it determined whether the plaintiffs had met their burden to obtain a preliminary injunction, which requires a greater showing than the States' burden to survive a Rule 12(b)(6) motion to dismiss in this case. *Id.* at 7.

Having reviewed *Ramos*, 975 F.3d 872, the Court finds that the opinion does not compel dismissal of the States' equal protection claim. Both *Ramos* and this Court relied on the plurality in *Regents* and its reasoning to assess whether statements relied on by plaintiffs in both cases are probative of discriminatory intent. *See Ramos*, 975 F.3d at 897–98; ECF No. 248 at 36, 41–42 (portion of this Court's Order considering whether the alleged statements in this case are analogous to the statements examined and deemed insufficient in *Regents*). In *Ramos*, the only

ORDER DENYING DEFENDANTS' MOTION FOR RECONSIDERATION ~ 8

1  statements at issue were made by then-President Trump, and the Ninth Circuit

2  found: "Here, the only 'contemporary statement' might be the President's comments

3  at the January 11, 2018 meeting with lawmakers, during which TPS terminations

4  were discussed; however, the influence of these remarks on the actual decisions to

5  terminate TPS is belied by the fact that the meeting occurred three days *after* the

6  TPS termination notices for Haiti and El Salvador issued." *Ramos*, 975 F.3d at 898

7  (emphasis in original).  The Ninth Circuit acknowledged that circumstantial

8  evidence may suffice to prove a discriminatory intent claim under *Arlington Heights*,

9  but concluded that "the circumstantial evidence here do [sic] not help Plaintiffs

10  much." *Id.*  The Ninth Circuit found the circumstantial evidence to be unhelpful

11  because there was "no indication that the impact of the TPS terminations bear more

12  heavily on 'non-white, non-European' countries." *Id.*

13  By contrast, in this case, the Court considered allegations regarding statements

14  not only by then-President Trump, but also by a then-high-level White House

15  official and a then-DHS decision-maker, and noted that the majority of the

16  statements were made from January 2018 until August 2019, when the Public

17  Charge Rule was published.  ECF No. 248 at 42.  Unlike the January 11, 2018

18  statement in *Ramos*, 975 F.3d at 898, the statements relied on by the States were

19  made during the period in which the Public Charge Rule was being developed and

20  before the final rule was issued.  Also in contrast to *Ramos*, 975 F.3d at 898, the

21

ORDER DENYING DEFENDANTS' MOTION FOR RECONSIDERATION ~ 9

1  Court considered the alleged statements in the context that DHS acknowledges in the

2  "Supplementary Information" for the final rule that the Public Charge Rule is likely

3  to disproportionately affect communities of color.  *See* ECF No. 248 at 38−39 (citing

4  ECF Nos. 31 at 85−86; 233 at 49−50 (quoting 84 Fed. Reg. at 41,369), 42.

5  Consequently, after *Ramos,* the cumulative allegations in the States' Amended

6  Complaint still suffice under *Arlington Heights* to survive under Rule 12(b)(6), a

7  lesser standard than the preliminary injunction standard applied in *Ramos*.

8      Accordingly, **IT IS HEREBY ORDERED** that DHS's Motion for

9  Reconsideration, **ECF No. 254**, is **DENIED**.

10     **IT IS SO ORDERED**.  The District Court Clerk is directed to enter this

11 Order and provide copies to counsel.

12     **DATED** February 1, 2021.

                                        *s/ Rosanna Malouf Peterson*
                                      ROSANNA MALOUF PETERSON
                                       United States District Judge